IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTRAZENECA LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1332-KAJ |
| | ) | |
| TAP PHARMACEUTICAL PRODUCTS INC., | ) | |
| | ) | |
| Defendant. | ) | |

**TAP PHARMACEUTICAL PRODUCTS INC.'S MOTION TO
EXCLUDE CERTAIN TESTIMONY BY MICHAEL RAPPEPORT**

TAP Pharmaceutical Products Inc. moves pursuant to Daubert v. Merrell Dow

Pharmaceuticals, Inc., 509 U.S. 579 (1993), to exclude sections II and III of Michael Rappeport's

report (submitted by AstraZeneca LP) entitled "Ads for Nexium:  Commentary on Two Surveys

by Tom Dupont as Part of a Discussion of Public Understanding of What the Ads Communicate"

(the "Report") (Ex. A hereto).  Section I is merely an introduction to the Report and

sections IV-VII consist of the traditional sorts of survey criticisms frequently offered by survey

experts; these sections are not the subject of this motion.

In contrast, sections II and III of the Report are wholly improper.  They are replete with

unsupported assumptions and opinions based solely on Dr. Rappeport's personal knowledge and

subjective beliefs, rather than methodology, analysis, or factual support.  Any claim to the

contrary by AstraZeneca is belied by Dr. Rappeport's deposition testimony admitting that the

views he espouses in sections II and III are based on conversations he had with himself, co-

workers, and friends.  In addition, these sections contain testimony that is based on incorrect

legal and factual assumptions.

I.    **The Legal Framework for Admissibility of Expert Testimony**

Federal Rule of Evidence 702 deals with the subject of expert testimony.  It provides:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact . . . a witness qualified as an expert by knowledge,
> skill, experience, training, or education, may testify thereto in the
> form of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme

Court held that district courts must act as gatekeepers and "ensure that any scientific testimony

or evidence admitted is relevant and reliable." Chemipal Ltd. v. Slim-Fast Nutritional Foods

Int'l, Inc., 350 F. Supp. 2d 582, 587 (D. Del. 2004) (citing Daubert, 509 U.S. at 592-93).  To be

relevant and reliable, expert testimony "must be grounded in the methods and procedures of

science and based on more than a subjective belief or speculation." Id. at 588 (citing Daubert,

509 U.S. at 589-90).  To assess whether the expert's methodology is valid and whether the

testimony can properly be applied to the facts in issue, courts "'must examine the expert's

conclusions in order to determine whether they could reliably follow from the facts known to the

expert and the methodology used.'" Oxford Gene Tech. Ltd. v. Mergen Ltd., 345 F. Supp. 2d

431, 434-35 (D. Del. 2004) (quoting Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir.

1999)).  No matter how qualified an expert may be, "testimony of an expert that constitutes mere

personal belief as to the weight of the evidence invades the province of the fact-finder." Id. at

435.

The opinions offered by Dr. Rappeport in sections II and III of the Report do not pass

muster under Daubert.

**II.    Dr. Rappeport's Unsubstantiated Quantitative Opinions Are Inherently Unreliable**

Sections II and III of the Report are replete with quantitative conclusions that have no

basis in science or any reliable methodology, as Dr. Rappeport readily concedes.  For example,

Dr. Rappeport testified at his deposition (Dep. 102:7-102:15):

> Most people . . . think at least to some degree heartburn is acid in
> the stomach.  Now, can I prove that?  No.  You asked me my
> opinion, what I'm basing it on.  Is that scientific evidence or the
> basis of a random survey?  No.

Dr. Rappeport further acknowledged that his purported quantitative statements about

consumer perception were based only on "research" that consisted primarily of conversations

with his wife, colleagues, neighbors, and friends (Dep. 97:17-103:17).

Similar expert testimony was excluded in Playtex Products, Inc. v. Procter & Gamble

Company, 2003 WL 21242769, at *10 (S.D.N.Y. May 28, 2003), after the expert acknowledged

in her deposition that the challenged testimony was based on "anecdotal conversations" she had

and was not based on a study or survey.  The court held that the opinions at issue "fail[ed] to

meet the threshold for reliability under Daubert, as they do not rely on any discernable

methodology, have not been subject to peer review, and cannot be tested or verified here." Id.

The unsubstantiated conclusions Dr. Rappeport posits in section II of the Report include

the following:

> Indeed, we believe that many people do not understand even the
> basic idea that while the condition starts with acid in the stomach,
> any pain (heartburn) comes because some of that acid refluxes
> ("backs up") into the esophagus (Report, at 3).
>
> Given the emphasis on stomach acid, it is no surprise that as far as
> we can tell the vast majority of Americans are at most vaguely
> aware that pain and/or damage occurs only from acid reflux into
> the esophagus (Report, at 4).
>
> We believe that for a majority of consumers, the respondent's
> position in the hypothetical is a more reasonable interpretation of

> what is meant then [sic] is the researcher's position in the
> hypothetical (Report, at 5).

> Indeed, we believe it is simply ordinary common sense to feel that
> if I heal a result (complication) of a disease, I am in some sense
> treating that disease (Report, at 6).

The foundation of an expert's testimony may not be untested, unverified speculation, no

matter how strongly the expert believes such speculation comports with common sense. See

Chemipal, 350 F. Supp. 2d at 592. Instead, an expert must rely on "knowledge, a term that

connotes more than subjective belief or unsupported speculation." In re Rezulin Prods. Liab.

Litig., 309 F. Supp. 2d 531, 543 (S.D.N.Y. 2004). Dr. Rappeport certainly is free to engage in

qualitative research and rely on such research; however, Daubert does not permit "'subjective

belief or unsupported speculation'" to serve as the foundation for quantitative testimony. See

Bethea v. Bristol Lodge Corp., 2002 WL 31859434, at *5 (E.D. Pa. 2002) (quoting Oddi v. Ford

Motor Co., 234 F.3d 136, 158 (3d Cir. 2000)). Dr. Rappeport's unsubstantiated opinions about

what is common sense and what most people believe offer "no benefit in assisting the trier of

fact to understand or determine a fact in issue as required under Rule 104(a) and Daubert." Id.

They should, therefore, be excluded.


**III.   Dr. Rappeport's Opinions Are Contrary to Law**

In sections II and III of the Report, Dr. Rappeport draws conclusions about consumers'

understanding of the ads at issue that are contrary to established false advertising law. "Expert

opinions that are contrary to law are inadmissible" because "[t]hey cannot be said to be

scientific, to be reliable, or to be helpful to the trier of fact." Loeffel Steel Prods., Inc. v. Delta

Brands, Inc., 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005) (citing Langehennig v. Sofamor, Inc.,

1999 WL 1129683, at n. 6 (D. Kan.1999) and Bailey v. Allgas, Inc., 148 F. Supp. 2d 1222, 1245-

46 (N.D. Ala. 2000)).  See also In re Diet Drugs Prods. Liab. Litig., 2001 WL 454586, at *18

(E.D. Pa. Feb. 1, 2001) (excluding expert testimony because, *inter alia*, it is contrary to

controlling law).

Dr. Rappeport offers the opinion in sections II and III of the Report that it is valid and

appropriate for consumers to perceive that Nexium is an overall superior treatment because of its

superiority in treating a complication that affects a small fraction of consumers.  Yet, this

opinion directly contradicts the established rule that a pharmaceutical advertising claim that is

true with respect to a subset of patients becomes false when presented as an unqualified claim.

See American Home Prods. Corp. v. Johnson & Johnson, 654 F. Supp. 568, 585 (S.D.N.Y. 1987)

(enjoining defendant from making broad parity claim because claim was true with respect to only

a small subset of patients); American Home Prods. Corp. v. Johnson & Johnson, 577 F.2d 160,

171 (2d Cir. 1978).

Sections II and III of the Report contain many rhetorical questions and broad statements

that, when taken together, contravene the holding of the American Home Products cases.  That

Dr. Rappeport does not specifically articulate a legal conclusion is beside the point.  The import

of sections II and III contradict established law and, therefore, will not assist the trier of fact.

Accordingly, sections II and III fail to meet the requirements of Federal Rule of Evidence 702

and Daubert.

## IV.    Sections II and III of the Report Are Based on False Medical Assumptions

Similarly, Dr. Rappeport offers opinions in sections II and III of the Report that rely on

unsupported assumptions about the medical treatment of acid reflux disease and, therefore, do

not offer any aid to the jury.  "An opinion based on false assumptions is unhelpful in aiding the

jury in its search for the truth, and is likely to mislead and confuse." Advent Sys. Ltd. v. Unisys

Corp., 925 F.2d 670, 682 (3d Cir. 1991). Dr. Rappeport, under the guise of identifying purported

flaws in the surveys he critiques, advances the opinion that it is preferable to treat a disease with

the most potent medication available (see Report, at 7-8). The Report does not indicate whether

Dr. Rappeport predicated this opinion on any valid medical evidence, and Dr. Rappeport made

clear at his deposition that these opinions are not based on scientific research or discussions with

physicians (Dep. 103:21-105:4, 126:6-126:15). Because Dr. Rappeport's opinions based on false

assumptions are likely to mislead and confuse the fact-finder, they should be excluded.

## CONCLUSION

For the foregoing reasons, this Court should exclude sections II and III of the Report

because they do not meet the reliability standards set forth in Daubert.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick, Esq. (I.D. #2114)
John G. Day, Esq. (I.D. #2403)
Lauren E. Maguire (I.D. 4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for Tap Pharmaceutical*
*Products Inc.*

*Of Counsel:*

Thomas C. Morrison
Karla G. Sanchez
Amanda K. Kay
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

George Kokkines
Associate Senior Counsel -- Litigation
TAP Pharmaceutical Products Inc.

Dated: November 23, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of November, 2005, the attached **TAP PHARMACEUTICAL PRODUCTS INC.'S MOTION TO EXCLUDE CERTAIN TESTIMONY BY MICHAEL RAPPEPORT** was served upon the below-named counsel of record at the address and in the manner indicated:

Josy W. Ingersoll, Esquire                                    HAND DELIVERY
Young Conaway Stargatt & Taylor
1000 West Street
17th Floor
Wilmington, DE  19801

Harold P. Weinberger, Esquire                                 VIA FEDERAL EXPRESS
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY  10036

/s/ Lauren E. Maguire

_____
Lauren E. Maguire

149881.1