IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTRAZENECA LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | C.A. No. 04-1332-KAJ |
| | ) | |
| TAP PHARMACEUTICAL PRODUCTS, INC., | ) | **REDACTED – PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

## OPENING BRIEF OF PLAINTIFF ASTRAZENECA LP IN
## SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6600
jingersoll@ycst.com

Attorneys for AstraZeneca LP

Of Counsel:

Harold P. Weinberger
Jonathan M. Wagner
Kerri Ann Law
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated: November 23, 2005

Table of Contents

Page

Table of Authorities ..................................................................................................... iii

Nature and Stage of the Proceedings ............................................................................ 1

Summary of the Argument ............................................................................................. 2

Statement of Facts ......................................................................................................... 6

    A.    What is GERD and how is it treated? ............................................................. 7

    B.    Nexium is superior to Prevacid ..................................................................... 9

        1.    Nexium outperformed Prevacid in the Castell Study ......................... 9

        2.    Nexium outperformed Prevacid in the Fennerty Study ..................... 10

        3.    REDACTED ............................................................................. 11

    C.    AstraZeneca's advertising ............................................................................. 12

        1.    The television commercials truthfully describe Nexium's superiority for healing moderate to severe EE ............................................................................. 13

        2.    The print advertisements truthfully describe Nexium's superiority for healing moderate to severe EE ................................... 13

    D.    This litigation ............................................................................................... 15

Argument ...................................................................................................................... 15

Point 1
AS A MATTER OF LAW AND UNDISPUTED FACT,
ASTRAZENECA'S ADS ARE NOT LITERALLY FALSE .................................. 16

    A.    Lanham Act standards .................................................................................. 16

    B.    AstraZeneca's claim of superior healing of moderate to severe EE is truthful ......................................................................................................... 18

Point 2
THE BETTER ADS DO NOT COMMUNICATE ANY IMPLIED
FALSE MESSAGES ............................................................................................. 21

Table of Contents
(continued)

Page

A.    AstraZeneca is not communicating a false message of overall healing
      superiority across all grades of EE...................................................................22

      1.    TAP has no proof than an implied message of overall
            EE healing superiority was communicated by anything
            other than the internet advertising.......................................................23

      2.    TAP has no competent proof that the internet
            advertising communicates a message of superiority
            across all grades of EE.........................................................................23

      3.    The Castell and RESOLVE Studies support a claim of
            overall healing superiority ...................................................................24

Point 3
      THE BETTER ADS DO NOT COMMUNICATE AN IMPLIED
      MESSAGE THAT NEXIUM OFFERS SUPERIOR SYMPTOM
      RELIEF .........................................................................................................26

Conclusion ...............................................................................................................29

DB01:1918289.1                                                                                                    057159.1005

Table of Authorities

Page

Cases:

*Abbott Labs. v. Mead Johnson & Co.,*
    No. IP 91-202C, 1991 U.S. Dist. LEXIS 21010 (S.D. Ind. Oct. 10, 1991)............................20

*Alvord-Polk, Inc. v. F. Schumacher & Co.,*
    37 F.3d 996 (3d Cir. 1994) ...............................................................................................24

*American Express Travel Related Servs. Co., Inc. v. Mastercard Int'l Inc.,*
    776 F. Supp. 787 (S.D.N.Y. 1991) ....................................................................................23

*American Home Prods. v. Procter & Gamble Co.,*
    871 F. Supp. 739 (D.N.J. 1994)..........................................................................................23

*Astra Aktiebolag v. Andrx Pharms., Inc.,*
    222 F. Supp. 2d 423 (S.D.N.Y. 2002) ................................................................................26

*Castrol Inc. v. Pennzoil Co.,*
    799 F. Supp. 424 (D.N.J. 1992), *aff'd,* 987 F.2d 939 (3d Cir. 1993).....................................22

*Castrol, Inc. v. Quaker State Corp.,*
    977 F.2d 57 (2d Cir. 1992) .................................................................................................17

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.,*
    350 F. Supp. 2d 582 (D. Del. 2004).....................................................................................27

*Church & Dwight Co. v. S.C. Johnson & Son, Inc.,*
    873 F. Supp. 893 (D.N.J. 1994)..........................................................................................22

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993).......................................................................................4, 18, 23, 26, 27

*General Elec. Co. v. Joiner,*
    522 U.S. 136 (1997)...................................................................................................26, 27

*Interactive Prods. Corp. v. A2Z Mobile Office Solutions, Inc.,*
    326 F.3d 687 (6th Cir. 2002) ..............................................................................................21

*J&J Snack Foods, Corp. v. Earthgrains Co.,*
    220 F. Supp. 2d 358 (D.N.J. 2002)......................................................................................28

*Johnson & Johnson-Merck Consumer Pharms. Co. v.*
    *Rhone-Poulenc Rorer Pharms. Inc.,*
    19 F.3d 125 (3d Cir. 1994) ..........................................................................................17, 22

- iii -

Table of Authorities
(continued)

Page

*Kreppel v. Guttman Breast Diagnostic Inst., Inc.*,
    No. 95 CIV 10830 (SWK), 1999 WL 1243891 (S.D.N.Y. Dec. 21, 1999)............................24

*Krystal Enters., Inc. v. Hollenbeck*,
    8 Fed. App. 725, 727 (9th Cir 2001)..................................................................................28

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...........................................................................................................16

*McNeil-P.P.C. v. Bristol-Myers Squibb Co.*,
    938 F.2d 1544 (2d Cir. 1991) .............................................................................................17

*Mead Johnson & Co. v. Abbott Labs.*,
    201 F.3d 883 (7th Cir. 2000) .........................................................................................18, 19

*Medtronic Minimed Inc. v. Smiths Medical MD Inc.*,
    373 F. Supp. 2d 466 (D. Del. 2005)................................................................................15, 16

*Nikkal Indus., Ltd v. Salton, Inc.*,
    735 F. Supp. 1227 (S.D.N.Y. 1990) ....................................................................................19

*Novartis Consumer Health, Inc. v.*
    *Johnson & Johnson-Merck Consumer Pharm. Co.*,
    129 F. Supp. 2d 351 (D.N.J. 2000), *aff'd*, 290 F.3d 578 (3d Cir. 2002) ..........................17, 22

*Procter & Gamble Co. v. Chesebrough-Pond's Inc.*,
    588 F. Supp. 1082 (S.D.N.Y.), *aff'd* 747 F.2d 114 (2d Cir. 1984) .........................................19

*Rosco, Inc. v. Mirror Lite Co.*,
    304 F.3d 1373 (Fed. Cir. 2002) .....................................................................................21, 25

*S.C. Johnson & Son, Inc. v. The Clorox Company*,
    241 F.3d 232 (2d Cir. 2001) ...............................................................................................17

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*,
    902 F.2d 222 (3d Cir. 1990) ...............................................................................................25

*Scott Fetzer Co. v. House of Vacuums Inc.*,
    381 F.3d 477 (5th Cir. 2004) ..............................................................................................28

*SmithKline Beecham Consumer Healthcare L.P. v.*
    *Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*,
    No. 01 Civ. 2775 (DAB), 2001 WL 588846 (S.D.N.Y. June 1, 2001), *aff'd*, No. 01-7709,
    2001 WL 1168026 (2d Cir. Sept. 26, 2001) ....................................................19, 20, 21, 26

- iv -

Table of Authorities
(continued)

Page

*Syncsort Inc. v. Sequential Software, Inc.*,
   50 F. Supp. 2d 318 (D.N.J. 1999)..........................................................................17

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*,
   221 F. Supp. 2d 410 (S.D.N.Y. 2002) ...................................................................16

*Unisource Worldwide, Inc. v. Heller*,
   *No. Civ. A 99-266*, 1999 WL 374180 (E.D. Pa. June 9, 1999)..............................16

*Universal City Studios, Inc. v. Nintendo, Co.*,
   746 F.2d 112 (2d Cir. 1984) ..................................................................................28

*Vista Food Exchange, Inc. v. Vistar Corp.*,
   No. 03-CV-5203, 2005 WL 2371958 (E.D.N.Y. Sep. 27, 2005) ...........................28

*Warner-Lambert Co. v. Breathasure, Inc.*,
   204 F.3d 87 (3d Cir. 2000) ....................................................................................17

Statutes:

15 U.S.C. § 1125(a)(1)(B) ............................................................................................16

Fed. R. Civ. P. 56.....................................................................................................1, 15

Fed. R. Evid. 403 ............................................................................................................4

Fed. R. Evid. 702 ......................................................................................................4, 18

Fed. R. Evid. 801(d)(2)................................................................................................24

<u>Nature and Stage of the Proceedings</u>

Plaintiff AstraZeneca LP respectfully submits this memorandum in support of its motion, pursuant to Fed. R. Civ. P. 56, for summary judgment dismissing the counterclaim of defendant TAP Pharmaceutical Products, Inc.

AstraZeneca filed this action on October 6, 2004 seeking a declaration that its "Better is Better" advertising campaign for NEXIUM® (esomeprazole magnesium), intended for the treatment of gastroesophageal acid reflux disease ("GERD"), is not false.    TAP counterclaimed, alleging that AstraZeneca falsely advertised Nexium under the federal false advertising statute, Section 43(a) of the Lanham Act.

In the "Better is Better" advertising campaign for its Nexium, a proton pump inhibitor ("PPI"), AstraZeneca noted the superiority of Nexium to TAP's PREVACID® (lansoprazole) for healing of erosive esophagitis ("EE"), damage caused by acid in the esophagus, in patients with moderate to severe esophageal damage. EE is a common but serious condition associated with GERD. Nexium's superiority over Prevacid in healing EE has been demonstrated in clinical studies conducted by AstraZeneca        REDACTED

This Court has already denied TAP's motion to preliminarily enjoin Nexium's advertising, holding that TAP had not "demonstrated a likelihood of success on literal falsity. At least on this record it is not there." (Prelim. Inj. Hearing Tr. and Order, Dec. 20, 2004; Exh. A at 37) (D.I. 42).[1]    The Court further held that if TAP were able to provide

---

[1]    "Exh. __" references the exhibits set forth in AstraZeneca's Appendix in Support of its Motion for Summary Judgment.

"evidence of actual confusion to show the ad is misleading," the Court would consider and evaluate that evidence to determine whether or not TAP's counterclaim had merit.  (*Id.* at 40).

With the exception of three depositions not relevant to this motion, discovery has now closed.  The undisputed facts adduced in discovery compel two conclusions:  (i) TAP can point to no facts that warrant disturbing the Court's initial conclusion that the Better ads are not literally false, and (ii) TAP can point to no facts that warrant the finding that the Better ads communicate an implied false message.  Summary judgment is therefore appropriate dismissing TAP's counterclaim.

### Summary of the Argument

1.      AstraZeneca makes and markets Nexium, which was introduced in 2001. Nexium is intended to treat patients suffering from Gastroesophageal Reflux Disease ("GERD") — commonly known as "acid reflux disease."  TAP makes and markets Prevacid, which competes with Nexium in the marketplace.  Both Nexium and Prevacid are prescription drugs.

2.      Two studies, the Castell and Fennerty Studies, were conducted to compare Nexium and Prevacid for the healing of patients with acid-related damage in the esophagus ("erosive esophagitis" or "EE"), a condition suffered by a substantial number of patients with acid reflux disease.  These studies, conducted in accordance with rigorous clinical standards, both concluded that by statistically significant margins Nexium was more effective than Prevacid at healing moderate to severe EE.  In addition, the Castell Study showed that Nexium is superior to Prevacid overall for healing EE.  TAP does not dispute the methodology used in these studies or the results.  TAP's experts also concede that these studies prove that Nexium is statistically significantly superior to Prevacid for healing moderate to severe EE.

- 2 -

3.

REDACTED

4.      In September 2004, AstraZeneca began a new advertising campaign for Nexium called "Better is Better." The "Better is Better" campaign, which has since been discontinued in the ordinary course, included a television commercial, print advertisements, website material, and an informational pamphlet. (Exhs. B-F). The central message of the campaign was that the Castell and Fennerty Studies prove that Nexium is significantly more effective than Prevacid at healing moderate to severe acid-related damage in the esophagus.

5.      Despite conceding the reliability of the Castell and Fennerty Studies, TAP asserts that AstraZeneca's claim of superior healing of moderate to severe EE is literally false because (i) the results of the studies are not clinically significant, and (ii) the claim pertains to only a subgroup of patients suffering from acid reflux disease, namely those with moderate to severe EE. TAP is wrong as a matter of law on both points, as the courts have held that advertisers can advertise differences between products as long as those differences are statistically significant and that the Lanham Act does not proscribe advertising based on benefits to subgroups.

6.    TAP also contends that AstraZeneca's advertising, even if literally true, communicated two implied and purportedly false claims in the Better ads: (i) Nexium is superior to Prevacid for overall EE healing, not only moderate to severe EE, and (ii) Nexium is superior to Prevacid for the treatment of acid reflux disease generally.  Because the Better ads made no such express statements, TAP can only prevail on its assertion that AstraZeneca was communicating those "implied" claims by offering well-designed, well-conducted and properly analyzed consumer surveys showing that viewers of AstraZeneca's advertising took away these supposed messages.  TAP has commissioned two consumer surveys, each so fatally flawed that neither creates triable issues on summary judgment.[2]

7.    One TAP survey, designed to assess whether consumers perceive a claim that Nexium is superior to Prevacid overall for EE in a Better internet ad (the "Internet Survey"), is fatally flawed because, as TAP's own experts admit, it is incapable of providing valid data to support any conclusions concerning consumer takeaways.  The survey is both inadmissible and insufficient to raise triable issues of fact.

8.    In addition, TAP's Internet Survey, even if valid, cannot under the Lanham Act be used to measure takeaways from AstraZeneca's advertisements in different media — such as AstraZeneca's television ads — and thus cannot be used to show that the television commercial communicated an implied claim of overall EE healing superiority.

---

[2]    Concurrently with this motion, AstraZeneca has moved to exclude TAP's survey evidence under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rules of Evidence 403 and 702.  The grounds for exclusion are set forth in detail in that motion and are summarized here only to the extent that the same grounds support the conclusion that TAP's survey evidence is not competent summary judgment evidence.

- 4 -

9.      Furthermore, a claim of superiority in healing of EE across all grades would not be false,      REDACTED

10.     TAP's second survey, designed to assess whether consumers take away from the Better television commerical a message of overall symptom relief superiority (the "TV Survey"), is flawed because it fails to address questions identified by TAP's own expert as the relevant questions in this case.    In addition, the TV Survey suffers from numerous methodological flaws and faulty analyses. The TV Survey is therefore inadmissible, and even if admissible, insufficient to raise any genuine triable issues of fact.

11.     Finally, as with the Internet Survey, any creditable results of the TV Survey cannot be extrapolated to reach conclusions concerning the messages in Better ads in different media.

12.     In sum, despite nearly a year of discovery and despite conducting two surveys attempting to measure consumer responses to the Better ads, TAP has not been able to demonstrate that the Better ads are false; there are no genuine issues of fact that would preclude dismissal of TAP's counterclaim as a matter of law.   Summary judgment should be granted in AstraZeneca's favor dismissing TAP's counterclaim.

- 5 -

Statement of Facts

        The undisputed facts set forth below are based on the submissions by both sides in

connection with TAP's motion for a preliminary injunction, expert reports exchanged in

discovery and various depositions, all of which are provided in AstraZeneca's Appendix.[3]

---

[3]    The declarations previously submitted in connection with TAP's motion for a preliminary
injunction are those of:

(i) TAP's expert Malcolm Robinson, M.D., FACP, FACG, dated November 12, 2004
(Exh. G) (D.I. 12); (ii) TAP's expert Bert Spilker, Ph.D, M.D., dated November 10, 2004
(Exh. H) (D.I. 11); (iii) Douglas Levine, M.D., AstraZeneca's Executive Director,
Strategic Development, Nexium Development Brand Leader, dated December 12, 2004
(Exh. I) (D.I. 36); (iv) Christian Keller, AstraZeneca's Nexium Brand Director,
Consumer Promotion, dated December 8, 2004 (Exh. J) (D.I. 30); (v) David Johnson,
M.D., Secretary of the Board of Trustees of the American College of Gastroenterology,
Chief of Gastroenterology at Eastern Virginia Medical School, and one of the country's
leading gastroenterologists, dated December 6, 2004 (Exh. K) (D.I. 33); (vi) M. Brian
Fennerty, M.D., Professor of Medicine and Section Chief of Gastroenterology at Oregon
Health and Science University, and one of the principal investigators of the Fennerty
Study, dated December 2, 2004 (Exh. L) (D.I. 31); (vii) Donald O. Castell, M.D., a
Professor of Medicine and Director of the Esophageal Disorders Program at the Digestive
Disease Center at the Medical University of South Carolina in Charleston, and one of the
principal investigators for the Castell Study, dated December 7, 2004 (Exh. M) (D.I. 32).

The expert report submitted in support of AstraZeneca's motion is that of Ronald Marks,
Ph.D., a professional biostatistician and retired professor of statistics at the University of
Florida, dated September 22, 2005 (Exh. N).

The deposition testimony submitted in support of AstraZeneca's motion is that of:

(i) Bert Spilker, TAP's expert. (Exh. O); (ii) Thomas Dupont, TAP's survey expert. (Exh.
P); (iii) Betsy Pilmer, RN, BSN, TAP Associate Director of Clinical Development for
Women's Therapeutics and TAP's Fed. R. Civ. P. 30(b)(6) designee for topics related to
TAP's clinical testing of PPIs (Exh. Q); (iv) Una Ortell, TAP Director of Regulatory
Affairs, (Exh. R); (v) M. Brian Fennerty, M.D. (Exh. S); and (vi) Christian Keller (Exh.
T).

057159.1005

A.    <u>What is GERD and how is it treated?</u>

GERD is a common condition that affects millions of Americans. The primary symptom of GERD is heartburn, a burning sensation in the chest that occurs when stomach acid backs up or "refluxes" into the esophagus. (Exh. G, ¶ 3) (D.I. 12). A significant percentage of GERD patients suffer from frequent and severe heartburn, regurgitation of acid gastric contents, and/or EE, which is characterized by inflammation and breaks in the protective lining of the esophagus. (Exh. K, ¶¶ 14-17) (D.I. 33).

EE is detectable only by performing an endoscopy. Degrees or "grades" of EE are commonly measured by the Los Angeles classification system, a validated grading scale ranging from Grade A to Grade D. Grades A and B are considered mild EE while grades C and D are considered moderate and severe EE, respectively. (Exh. K, ¶¶ 19-20) (D.I. 33). AstraZeneca uses the Los Angeles classification system in its clinical studies. TAP uses its own numerical grading scale for its studies. In TAP's grading system, Grade 4 roughly corresponds with Los Angeles Grade D; Grade 3 roughly corresponds with Los Angeles Grade C; Grade 2 roughly corresponds with Los Angeles Grades A and B. (Exh. G, ¶ 6) (D.I. 12).

Patients with Grades A and B EE have only minor erosions. Patients diagnosed with Grade C typically have more and larger erosions and some bleeding. Grade D is the most severe grade of EE and may be associated with the development of esophageal strictures and a pre-cancerous condition called Barrett's esophagus in which the esophagus changes so that some of its lining is replaced by a type of tissue similar to that normally found in the intestine. In rare cases, this condition can lead to cancer. (Exh. K, ¶¶ 17-18 (D.I. 33); Exh. G, ¶ 7 (D.I. 12).

As TAP's expert Dr. Malcolm Robinson has recognized, there are data indicating that "among all patients who suffer from acid reflux disease, anywhere from 20 to 60 percent suffer from erosive esophagitis." (Exh. G, ¶ 10) (D.I. 12). Data have shown that 25 percent of GERD patients suffer from moderate to severe EE. (Exh. L, ¶ 17 (D.I. 31); Exh. U). Other data show that up to 16 percent of EE sufferers have Grade D EE, the most severe form of EE.

According to Dr. Robinson, there are a number of ways to treat GERD, including with over-the-counter ("OTC") antacids that work to neutralize esophageal acid on contact. (Exh. G, ¶ 13) (D.I. 12). Consumers are also able to purchase OTC histamine-2 receptor antagonists, known as H-2 blockers, which inhibit excess stomach acid production by occupying receptor sites in the acid-producing cells of the stomach, interfering with acid formation. (Exh. G, ¶ 14) (D.I. 12).

In addition to antacids and H-2 blockers, a third class of drugs — proton pump inhibitors ("PPIs") — is available both by prescription and OTC. PPIs work by gradually deactivating acid-producing pumps in the stomach. Unlike antacids and H-2 blockers, which are taken intermittently, PPIs are generally taken on a long-term basis to inhibit acid production continually, thus relieving heartburn and other GERD symptoms and complications. For people with EE, PPIs offer better rates of healing than antacids or H-2 blockers because they reduce the production of stomach acid and allow the esophagus time to heal. (Exh. G, ¶ 15) (D.I. 12).

In 1989, AstraZeneca began marketing the first PPI, PRILOSEC® (omeprazole), which was initially sold as a prescription medication but has more recently become available as an over-the-counter drug. (Exh. I, ¶ 11 (D.I. 36); Exh. J, ¶ 8 (D.I. 30)). Since Prilosec's debut, four other PPIs have been introduced into the marketplace: lansoprazole, sold by TAP under the

name Prevacid, pantoprazole, sold under the brand name PROTONIX®, rabeprazole, sold under the name ACIPHEX® and, more recently, esomeprazole, sold by AstraZeneca under the name Nexium since 2001. (Exh. I, ¶¶ 11, 15 (D.I. 36); Exh. K, ¶ 11 (D.I. 33)).

B.    Nexium is superior to Prevacid

Several well-conducted pharmacodynamic studies, examining the performance of the drugs in the human body, demonstrated that Nexium suppresses acid production better than Prevacid by a statistically significant margin. (Exh. K, ¶¶ 13-14) (D.I. 33). Consistent with the results observed in these pharmacodynamic studies, clinical studies have shown that Nexium is superior to Prevacid for the healing of moderate to severe EE. (Exh. V; Exh. W). One of those studies also demonstrated that Nexium is superior to Prevacid for overall healing of EE. (Exh. V; Exh. M, ¶ 14 (D.I. 32)).

1.    Nexium outperformed Prevacid in the Castell Study

The Castell Study compared Prevacid 30 mg and Nexium 40 mg (the most commonly prescribed doses for healing EE) for healing rates of EE and resolution of heartburn. (Exh. M, ¶ 6) (D.I. 32). Prior to conducting the study, the investigators identified the healing of esophagitis at week eight as the primary efficacy measure. Since GERD symptoms such as heartburn are often difficult to assess objectively, healing of esophagitis is considered the most objective outcome measure in GERD clinical trials and is the efficacy measure used to obtain FDA approval of a PPI. (Exh. M, ¶¶ 10, 12 (D.I. 32); Exh. L, ¶ 7 (D.I. 31);    REDACTED

The results showed that Nexium (92.6%) was more effective than Prevacid (88.8%) for overall healing of EE at week eight by a statistically significant margin. (Exh. M, ¶ 13 (D.I. 32); Exh. K, ¶¶ 24-25 (D.I. 33)). Based on this study, published in *The American*

- 9 -

*Journal of Gastroenterology*, a leading peer-reviewed journal, the investigators concluded that "Esomeprazole (40mg) is more effective than lansoprazole in healing erosive esophagitis and resolving heartburn." (Exh. V at 575).

A second analysis was performed to measure any difference between the compounds for specific grades of EE. That analysis showed that, while EE healing rates for grades A and B were 94.6% for Nexium compared with 93.8% for Prevacid, the corresponding EE healing rates for grades C and D were 86.6% for Nexium compared with 73.9% for Prevacid. (Exh. M, ¶ 15 (D.I. 32); Exh. K, ¶ 25 (D.I. 33)). More specifically, the authors of the study noted that "[t]he differences were 11.0% for Grade C and 17% for Grade D, favoring esomeprazole." These results were found to be highly statistically significant. Thus, the authors concluded that "the difference in healing between esomeprazole and lansoprazole was most striking in patients with severe disease." (Exh. V at 581).

    2.    Nexium outperformed Prevacid in the Fennerty Study

Following up on the results of the Castell study, the Fennerty Study was designed specifically to compare healing rates of moderate to severe EE for Prevacid 30 mg and Nexium 40 mg. (Exh. L, ¶ 4 (D.I. 31); Exh. W). Like the Castell Study, the investigators identified the healing of esophagitis as the primary efficacy measure, although the patient group was limited to those with moderate to severe EE. (Exh. L, ¶ 7 (D.I. 31); Exh. W).

The study showed that Nexium was significantly better at achieving healing than Prevacid, achieving a 4.9% (statistically significant) better healing rate at eight weeks (82.4% vs. 77.5%). (Exh. L, ¶ 9 (D.I. 31); Exh. W at 455; Exh. K, ¶ 29 (D.I. 33)). As in the Castell Study, this result confirmed that Nexium is a superior PPI for healing moderate to severe esophagitis:

- 10 -

"Data from this study shows that esomeprazole 40 mg once daily heals EE faster and in more patients with moderate to severe EE (LA grade C or D) than does lansoprazole 30 mg once daily. Furthermore, esomeprazole resolved heartburn, the most commonly reported symptom of GERD, in a significantly higher proportion of patients than lansoprazole at week 4." (Exh. W at 462).

3.

REDACTED

- 11 -

REDACTED

C.    AstraZeneca's advertising

On September 9, 2004, AstraZeneca began its "Better is Better" advertising campaign.  The campaign, which was discontinued in the ordinary course several months ago (Keller Tr. 31), included two television commercials, print advertisements, website materials, and an informational pamphlet.  (Exhs. B-F).

The only literal comparative claim made in AstraZeneca's Better ads was that, based on the Castell and Fennerty Studies, Nexium is more effective than Prevacid in healing moderate to severe EE, a claim the Court has already found literally true.  (Exh. A) (D.I. 42). Even TAP's experts have conceded that there is a "numerical difference between these two groups," and that this difference "is likely . . . a real effect."  (Spilker Tr. at 249-251).

1.    The television commercials truthfully describe
      Nexium's superiority for healing moderate to severe EE

The "Better is Better" campaign featured two similar television advertisements that ran from September 2004 to early 2005: a sixty-second piece and a pared down version that lasts forty-five seconds. In those commercials, AstraZeneca claimed that two medical studies prove that Nexium is more effective than Prevacid at healing moderate to severe acid related damage in the esophagus:

> So if you suffer from acid reflux disease, frequent heartburn, and I told you that prescription Nexium heals acid related damage in the esophagus better, you'd want proof. And now your doctor has that proof. Recent medical studies prove Nexium heals that damage better than the other leading prescription medication.

In both versions of the television commercial, when the spokesman discussed the medical studies proving Nexium's superiority, a super appeared on the screen that stated in legible print: "Studies vs. PREVACID (lansoprazole) in patients with moderate to severe damage." (Exh. B). This super was displayed the entire time the studies were discussed and appeared for a significant portion of the overall commercial (approximately nine seconds, or 20%, of the 45-second commercial, and for ten seconds, or 16.7%, of the 60-second version). (*Id.*).

2.    The print advertisements truthfully describe Nexium's
      superiority for healing moderate to severe EE

In its print advertisements, also since discontinued in the ordinary course, AstraZeneca stated that "NEXIUM heals acid related damage better than the other leading medicine.*" The asterisk directed the reader to a footnote right underneath this claim that was prominently displayed in bright white letters in a font nearly identical to that used for the claim

- 13 -

itself — not in small text at the bottom at the page as is common for footnotes — that stated: "*Studies vs PREVACID (lansoprazole) in patients with moderate to severe damage." (Exh. C). The print advertisements also stated: "If you do [have EE], ask about recent medical studies that prove NEXIUM heals moderate to severe acid related damage in the esophagus better than the other leading prescription medicine." (Exh. D). An AstraZeneca informational pamphlet made similar claims. (Exh. F).

Nexium's web advertising made the claim that Nexium is superior at healing moderate to severe damage in the esophagus. Each time a claim of superior healing was made in the web advertisements, it was accompanied by a statement that the claim applied to patients with moderate to severe erosions in the esophagus. For example, at the top of the web page, the advertisement stated, "NEXIUM heals acid related damage better than the other leading medicine.*" The asterisk directed the reader to a footnote immediately below that text that stated in bright white letters against a purple backdrop: "Studies vs PREVACID (lansoprazole) in patients with moderate to severe damage." The footnote referenced the Castell and Fennerty studies that fully support the claim. Further down the screen, the web advertisement contained the claim that two recent studies were conducted comparing Prevacid and Nexium measuring "how well each medication healed moderate to severe erosions in the esophagus." To the right of that claim, the web advertisement contained a chart with the heading "NEXIUM healed erosions better than Prevacid over 8 weeks, in patients with moderate to severe damage." (Exh. E).

D.    This litigation

Notwithstanding the scientific support for AstraZeneca's advertising claims based on the Castell and Fennerty studies        REDACTED        , TAP's counterclaim alleges that AstraZeneca's ads are false in violation of the Lanham Act. Based on these allegations, TAP sought a preliminary injunction enjoining AstraZeneca from continuing its campaign. On December 20, 2004, the Court denied TAP's motion, holding that TAP failed to show that the Better ads were literally false. (Exh. A) (D.I. 42). TAP therefore set out to demonstrate that the Better ads communicated an implied false message by commissioning two consumer surveys by Dr. Thomas Dupont to ascertain consumer takeaways from the Better ads. TAP hired a second survey expert, Dr. Susan McDonald, to further assess Dupont's data and conclusions. TAP now rests its claims of implied falsity on the results of the Dupont surveys. As set forth below, however, TAP has failed to raise triable issues as to either portion of its claim.

Argument

"Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Medtronic Minimed Inc. v. Smiths Medical MD Inc.*, 373 F.Supp. 2d 466, 467 (D. Del. 2005) (quotations omitted). "In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party." *Id.* at 467-68.

To defeat a motion for summary judgment, "the non-moving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* at 468. "The non-moving party must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quotations omitted) (*quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As set forth below, TAP cannot meet its burden of showing genuine triable issues of literal or implied falsity.

<u>Point 1</u>

AS A MATTER OF LAW AND UNDISPUTED FACT,
<u>ASTRAZENECA'S ADS ARE NOT LITERALLY FALSE</u>

A.    <u>Lanham Act standards</u>

Section 43(a) of the Lanham Act provides a civil remedy to those damaged by any person who, in connection with the sale of goods and services, uses a "false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities ... of his or her or another person's goods." 15 U.S.C. § 1125(a)(1)(B). As courts in this Circuit have held, Section 43(a) "does not have boundless application." *Unisource Worldwide, Inc. v. Heller*, No. Civ. A 99-266, 1999 WL 374180, at *6 (E.D. Pa. June 9, 1999). That is because "comparative advertising is not only permissible, but encouraged," for such advertising "serve[s] the 'beneficial purpose of imparting factual information about the relative merits of competing products.'" *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 423 (S.D.N.Y. 2002) (citation omitted).

For purposes of the Lanham Act, "falsity may be established by proving that ... the advertising is literally false as a factual matter." The plaintiff must affirmatively "prove that

- 16 -

the [advertising] claim [in question] is false or misleading, not merely that it is unsubstantiated." *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms. Inc.*, 19 F.3d 125, 129 (3d Cir. 1994); *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62 (2d Cir. 1992) (same). If the meaning of an advertisement is clear on its face based on the literal words of the advertisement, a plaintiff may assert that the literal claim is false on its face. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586-87 (3d Cir. 2002); *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 92 (3d Cir. 2000).[4]

The burden of proving "literal falsity" varies depending on the nature of the challenged claim. When the advertiser makes no mention of scientific tests or studies, the challenger must prove, usually through tests or studies of its own, that the statement is false. *McNeil-P.P.C. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1548 (2d Cir. 1991). When a party's advertising refers to studies or data — a so-called "establishment claim" — the challenger can satisfy its burden of proving literal falsity by "demonstrat[ing] the tests relied upon [] do not establish the proposition for which they are cited." *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 341-42 (D.N.J. 1999), or that such tests are "not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made." *McNeil-P.P.C*, 938 F.2d at 1549 (quotations omitted).

---

4      A plaintiff can also prevail by showing that, "although the advertisement is literally true, it is likely to deceive or confuse customers," a showing that must be made through a consumer survey. *S.C. Johnson & Son, Inc. v. The Clorox Company*, 241 F.3d 232, 238 (2d Cir. 2001). *See* Point 2, *infra*.

- 17 -

B.    AstraZeneca's claim of superior healing of moderate to severe EE is truthful

The literal claim at the center of the Better campaign was that the Castell and Fennerty Studies have shown that Nexium is superior to Prevacid for healing moderate to severe EE. Because this literal claim is an establishment claim, to prevail TAP must show that the studies on which the claim is based are either unreliable or do not support the conclusions for which they are cited.

TAP contests neither the methodology used in the Castell and Fennerty Studies, nor the studies' results. (Spilker Tr. 146). Indeed, TAP and its witnesses concede that the results in the studies favor Nexium over Prevacid by a statistically significant margin. (Spilker Tr. 249-51; **REDACTED**

To support its argument that the Better ads are literally false, TAP has invented an advertising standard that would limit advertisers to making claims only when data rises to some undefined level of "clinical significance." Thus, even though the Fennerty and Castell studies show statistically significant superiority of Nexium over Prevacid, TAP contends that the advertising claims are false because those results have no "clinical significance." As a matter of law, however, TAP is wrong.[5]

In *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 886 (7th Cir. 2000), the Seventh Circuit Court of Appeals held that competitors are free to advertise small benefits of

---

[5]    TAP went so far to assert, based on the testimony of its expert Dr. Bert Spilker, that unless a study shows at least a twenty percent difference between two treatments, the difference has no clinical significance. AstraZeneca has today served a motion to strike Dr. Spilker's opinion under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

057159.1005

their products as long as the claimed benefit is demonstrated "by a statistically significant amount." As the court stated, if a difference between products "satisfies normal tests of significance — meaning that the difference is replicable, rather than the effect of chance — then the claim is true and properly may be made." *Id.* In fact, the Court was concerned that it would be inappropriate to deprive this "valuable information to consumers." *Id.*

In *SmithKline Beecham Consumer Healthcare L.P. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, No. 01 Civ. 2775 (DAB), 2001 WL 588846 (S.D.N.Y. June 1, 2001), *aff'd*, No. 01-7709, 2001 WL 1168026 (2d Cir. Sept. 26, 2001), SmithKline sought to prevent Johnson & Johnson from advertising that tests showed its heartburn product, PEPCID, was seven to eleven percent better than TUMS, an antacid, for controlling heartburn. The court denied the injunction, holding that "clinical scientific studies support the truth of this claim" and that "[t]hough the differences are minor in absolute numbers, they are statistically significant (that is, replicable and not the result of chance)." 2001 WL 588846, at *9. Accordingly, the court concluded that Johnson & Johnson "is allowed to advertise their comparative product advantage." *Id. See also Nikkal Indus., Ltd v. Salton, Inc.*, 735 F. Supp. 1227, 1235 (S.D.N.Y. 1990) ("The evidence suggests that the Donvier was a slightly better performer . . . but this was an advantage that Nikkal could have exploited through its advertising; it did not make Salton's claims about the Big Chill false."). *cf. Procter & Gamble Co. v. Chesebrough-Pond's Inc.*, 588 F.Supp. 1082, 1090 (S.D.N.Y. 1984) (rejecting defendant's argument that "the results of the subset [for individuals who had the worst skin problems] may be statistically significant but they are not 'clinically significant'"; "the problem with this argument is that there is no established

criteria to make such a determination, and [plaintiff] is not claiming that the tests showed a 'clinically significant' difference."), *aff'd* 747 F.2d 114 (2d Cir. 1984).[6]

As a related point, TAP has asserted that AstraZeneca's claim is false as well because healing rates for erosive esophagitis of grades C and D are of little significance and purportedly only a small population suffers from Grades C and D erosive esophagitis. Once again TAP is wrong on the law.[7] The claim on its face is literally true, and in any event a company has every right under the Lanham Act to target consumers with a specific problem, even if that problem is relevant only to a small percentage of the patient population. For example, in *Smithkline Beecham*, plaintiff argued that defendant's advertisements claiming superiority for PEPCID Complete over TUMS for patients who need to redose were false because the ads failed to disclose that only a small percentage of Tums users need to redose.

---

[6]     In *Abbott Labs. v. Mead Johnson & Co.*, No. IP 91-202C, 1991 U.S. Dist. LEXIS 21010 (S.D. Ind. Oct. 10, 1991) *vacated on other grounds*, 971 F.2d 6 (7th Cir. 1992) the district court held on an application for a preliminary injunction that the plaintiff demonstrated a likelihood of success of proving false a comparative advertisement promoting a superior rate of "osmolality" between competing oral electrolyte products, where most of the differences were not statistically significant and none were "clinically significant." The court reasoned that "studies can sometimes detect small but statistically significant differences that are too small to affect the course of therapy." *Id.* at *61-*62. That of course is not the case here, where the issue is not one of the degree of benefit with respect to a therapeutic effect, but rather a difference in outcomes in the number of individuals who will have their EE healed. Moreover, the *Abbott Labs* decision predates by nearly a decade the same court's holding in *Mead Johnson*, *supra*, that advertisers may promote any statistically significant product differences.

[7]     TAP is also wrong on the facts. As demonstrated at page 8, *supra*, as many as 20-60 percent of patients with GERD suffer from EE and more than 20 percent of GERD patients suffer from moderate to severe EE. (Exh. L, ¶ 17) (D.I. 31). Moreover, left untreated, EE can progress to esophageal stricture, ulceration and bleeding, and/or Barrett's esophagus, a pre-cancerous condition. All of these conditions are more likely to be associated with moderate to severe EE. To prevent these adverse conditions, it is important to heal EE of grades C and D. (Exh. K, ¶¶ 17-21) (D.I. 33).

- 20 -

*Smithkline Beecham*, 2001 WL 588846 at *4. The district court found that the advertisement was not misleading because it did not contain any assertion that the results depicted therein were "typical." *Id.* at *10. The Court of Appeals affirmed. *SmithKline Beecham*, 2001 WL 1168026 at *3.

For these reasons, summary judgment is appropriate dismissing TAP's claim of literal falsity. *See, e.g., Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1383 (Fed. Cir. 2002) (affirming summary judgment where "district court dismissed Rosco's unfair competition claim after finding these statements 'literally true,' and that they were not 'implicitly false' so as to cause confusion."); *Interactive Prods. Corp. v. A2Z Mobile Office Solutions, Inc.*, 326 F.3d 687, 699 (6th Cir. 2002) (affirming grant of summary judgment where claim was not literally false and plaintiff "failed to submit any competent evidence of actual deception.").

Point 2

THE BETTER ADS DO NOT COMMUNICATE ANY IMPLIED FALSE MESSAGES

Unable to demonstrate that the Better ads are literally false, TAP is left with the claim that the advertising communicates an implied false message. Separately, TAP has asserted that AstraZeneca is making the implied and purportedly false claims that: (i) Nexium is superior to Prevacid in for overall EE healing, not just moderate to severe EE, and (ii) Nexium is superior to Prevacid for acid reflux disease generally. Both of TAP's claims should be dismissed because there is no competent evidence that AstraZeneca is communicating any false messages. With respect to overall healing of EE, the undisputed evidence also shows that, even if such a claim were being made, it is not false.

- 21 -

The success of an "implied falsity" claim "usually turns on the persuasiveness of a consumer survey." *Johnson & Johnson-Merck Consumer Pharms. Co.,* 19 F.3d,129-30 (3rd Cir. 1994). *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 129 F. Supp. 2d 351, 358 (D.N.J. 2000), *aff'd,* 290 F.3d 578 (3d Cir. 2002). Indeed, without a valid survey the plaintiff cannot make out a claim of implied falsity because "[a] Lanham Act plaintiff cannot obtain relief by arguing how consumers *could* react; it must show how consumers *actually do* react." *Church & Dwight Co. v. S.C. Johnson & Son, Inc.,* 873 F. Supp. 893, 906 (D.N.J. 1994). *See also Castrol Inc. v. Pennzoil Co.,* 799 F. Supp. 424, 436 (D.N.J. 1992) ("If the claims of the advertisement are not literally false, plaintiff must demonstrate through a consumer survey that the advertising claim is in fact deceptive."), *aff'd,* 987 F.2d 939 (3d Cir. 1993). TAP's surveys fail to show that Better is Better advertising communicated an implied false claim.

A.    AstraZeneca is not communicating a false message
of overall healing superiority across all grades of EE

TAP's first contention is that the Better ads communicate the implied and purportedly false message that Nexium is superior to Prevacid for EE healing overall. This claim should be summarily dismissed because (i) as to all but the internet advertising, TAP has no survey evidence, (ii) TAP has no competent proof that such an implied message was communicated in the internet advertising, and (iii) in any event, the Castell Study,

REDACTED   shows the claim to be indisputably true.

1.    TAP has no proof than an implied message of
overall EE healing superiority was communicated
by anything other than the internet advertising

TAP bears the burden of proving that the Better ads communicated an implied message of overall EE healing superiority. To meet its burden, TAP commissioned Dr. Dupont to conduct the Internet Survey. TAP did not conduct any other surveys addressed to this issue with respect to Better ads in any other medium.

Because TAP failed to conduct a survey addressed to this issue concerning AstraZeneca's television ads, print ads, and informational pamphlet, summary judgment should be granted dismissing TAP's claim that any of those ads communicate that studies show Nexium is superior to Prevacid for overall EE healing. *See American Home Prods. v. Procter & Gamble Co.*, 871 F. Supp. 739, 762 (D.N.J. 1994) ("The Court rejects AHP's contention that the FSI and television survey, even if probative, can be employed to assess whether other ALEVE print advertising (*i.e.*, the *New York Times* advertisement) was false or misleading to the public."); *American Express Travel Related Servs. Co., Inc. v. Mastercard Int'l Inc.*, 776 F. Supp. 787, 790 (S.D.N.Y. 1991) (survey addressed to one advertisement had no bearing on slightly revised version of that ad).

2.    TAP has no competent proof that the internet advertising
communicates a message of superiority across all grades of EE

In addition, as set forth in detail in AstraZeneca's accompanying *Daubert* motion, the Internet Survey is insufficient to raise triable issues of fact even when employed solely to assess the Better internet advertising. *See* Opening Brief of Plaintiff AstraZeneca in Support of Motion to Exclude the Expert Testimony of Thomas Dupont and of Susan S. McDonald, November 23, 2005 at 16-17 ("AstraZeneca *Daubert* Brief"). TAP's survey expert, Dr. Dupont,

- 23 -

testified that the Internet Survey was only able to establish confusion based on a combined analysis of responses to both the open-ended and closed-ended questions in the survey. But TAP's second survey expert, Dr. McDonald, testified that the responses to the closed-ended questions in the Internet Survey were obviously guesses and thus not sufficiently reliable to allow any conclusions to be drawn from them. This opinion is binding on TAP. *See* Fed. R. Evid. 801(d)(2); *Kreppel v. Guttman Breast Diagnostic Inst., Inc.*, No. 95 CIV 10830 (SWK)(MHD), 1999 WL 1243891, at *1 (S.D.N.Y. Dec. 21, 1999) (retention of a trial expert who provided opinions in a Rule 26(a)(2)(B) report "cannot reasonably be viewed as anything but adoption of or acquiescence in those opinions."); *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1005 n.6 (3d Cir. 1994) (statements of agents are adoptive admissions). Accordingly, based on the opinions of TAP's own experts, the Internet Survey does not contain sufficient valid data to prove that an implied claim of overall EE healing has been communicated.

> 3.  The Castell and RESOLVE Studies support
>     a claim of overall healing superiority

Even if the Internet Survey had provided competent evidence that the Internet ad communicated an implied message of Nexium's overall EE healing superiority, the undisputed evidence demonstrates that such a claim is not false.[8] The Castell Study offers ample proof of Nexium's overall superiority. The primary endpoint of the study was healing of EE at week

---

[8] It is unclear whether TAP is asserting that AstraZeneca is communicating an implied claim that tests prove overall EE healing superiority. Dr. Dupont conceded that he did nothing to test "whether consumers took away a message that clinical tests proved . . . overall superiority in healing of EE . . . ." (Dupont Tr. 6). Nevertheless, for purposes of this motion only, we assume that TAP is asserting that the Better ads communicate a claim of overall healing superiority predicated on tests.

eight. On that measurement of EE healing for all grades combined, Nexium healed 92.6% of patients while Prevacid healed 88.8% of patients. This difference was statistically significant. Based on these results, the investigators in the Castell study specifically concluded, "Esomeprazole (40mg.) is more effective than lansoprazole (30mg.) in healing erosive esophagitis and resolving heartburn." (Exh. V at 576). The Castell Study thus affords unrebutted support for any implied claim that Nexium is superior to Prevacid for EE healing overall.[9]

REDACTED

Because the data from both the Castell Study    REDACTED

show Nexium's undisputed superiority to Prevacid for overall healing, summary judgment should be granted dismissing the claim that the Better ads communicate an implied false message that Nexium is better than Prevacid for EE overall. *See, e.g., Rosco*, 304 F.3d at 1383 (Fed. Cir. 2002) (affirming summary judgment where advertisements "were not 'implicitly false' so as to cause confusion.").

---

[9]    REDACTED

Whether FDA would require more than that is irrelevant for purposes of determining whether a claim is false under the Lanham Act. *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 229-230 (3d Cir. 1990).

Point 3

THE BETTER ADS DO NOT COMMUNICATE AN IMPLIED
MESSAGE THAT NEXIUM OFFERS SUPERIOR SYMPTOM RELIEF

TAP likewise cannot create triable issues as to whether AstraZeneca is communicating a claim of overall superiority with respect to symptom relief. The TV Survey cannot be applied to anything beyond the television commercial and, as to that commercial, it is incompetent evidence and should be stricken.

At the outset, the TV Survey addressed only the Nexium television commercial. As noted above, under established case law the results of this survey cannot be extrapolated to AstraZeneca's advertising in print and over the Internet. (*See* p. 23, *supra*).

Moreover, the TV Survey failed to address the relevant questions identified by TAP's own expert — that is, whether the commercial was making a claim addressed to "typical" consumers for the claims they "routinely experience." As was true in *SmithKline Beecham*, 2001 WL 588846, at *10, there is nothing in the Nexium commercial asserting that the results were relevant to the routine experiences of typical consumers, and nothing in the survey found that consumers took away such a message. AstraZeneca *Daubert* Brief at 11-12. Indeed, both of TAP's consumer survey experts conceded that TAP's surveys did nothing to address the "routine experiences" of "typical users" of PPIs. (*Id.*). Courts have held that "[i]f the expert has failed to consider the necessary factors or if the analysis is premised upon a faulty assumption, his testimony may be excluded for lack of probative value." *Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 488 (S.D.N.Y. 2002). Because Dr. Dupont failed to consider necessary factors, his opinion is nothing more than the "*ipse dixit* of the expert," which the courts have rejected as a matter of course. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)

("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Third, Dr. Dupont has admitted that he did nothing to ascertain why the subjects responded as they did. (AstraZeneca *Daubert* Brief at 13-15). That admission is critical because a subject who provides a response to the open-ended question that Nexium is superior for acid reflux disease or EE overall may simply have believed that, all other things being equal, if one drug heals moderate to severe EE better than another, it is therefore a better drug. Indeed, the two respondents who were inadvertently asked questions beyond what the interviewers were instructed to probe in the survey gave answers illustrating this point by stating that Nexium is better than Prevacid for healing damage caused by acid reflux only after being asked "why" they initially stated Nexium was superior to Prevacid. (*Id.* at 13-14).

Fourth, Dr. Dupont counted as misled numerous respondents who gave answers that TAP's other expert, Dr. McDonald, indicated were not misled. (*Id.* at 14).

Finally, Dr. Dupont ignored data in his surveys that contradicted his conclusions. (*Id.* at 15-16).

These flaws make TAP's TV Survey inadmissible and thus leave TAP with no evidence of consumer response, requiring that its claim be dismissed. *See Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 597 (D. Del. 2004) (excluding expert testimony under both *Daubert* and the Federal Rules of Evidence and granting summary judgment because in the absence of expert testimony, there was a "lack of record evidence"

- 27 -

supporting the plaintiff's claims). Even if admissible, the TV Survey is insufficient to raise any genuine issues of fact. *See, e.g., J&J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 368 (D.N.J. 2002) ("If the expert report . . . is not admissible or if it would be confusing or unhelpful, the court may decline to consider the expert evidence on a motion for summary judgment . . . . this Circuit has held that a court may grant summary judgment even where the opponent presents admissible expert testimony, if that testimony is insufficient to support a jury verdict in favor of the party offering the evidence on a crucial element of the claim.") (citing *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000)); *Universal City Studios, Inc. v. Nintendo, Co.*, 746 F.2d 112, 118 (2d Cir. 1984) ("We find that Universal's survey is so badly flawed that it cannot be used to demonstrate the existence of a question of fact on the likelihood of consumer confusion."); *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004) ("[F]laws in the questions asked prevent the survey from proving confusion . . ."); *Krystal Enters., Inc. v. Hollenbeck*, 8 Fed. App. 725, 727 (9th Cir 2001) (surveys failed to raise triable issue of fact when they "have nothing to do with whether the advertisements conveyed an implied message and deceived the viewing public."); *Vista Food Exchange, Inc. v. Vistar Corp.*, No. 03-CV-5203, 2005 WL 2371958, at *7 (E.D.N.Y. Sep. 27, 2005) ("Because it is axiomatic that inadmissible information cannot defeat a well-grounded motion for summary judgment, Plaintiff's reliance on the Berger survey is misplaced. Moreover, even assuming arguendo that the survey was admissible, its weight would be de minimus and, thus, insufficient to raise a triable issue of fact on the likelihood of consumer confusion.").

Conclusion

TAP has put forth no competent evidence demonstrating that the Better ads are either literally or impliedly false. Because TAP has failed to raise any genuine issues of material fact, the Court should grant summary judgment in favor of AstraZeneca dismissing TAP's counterclaim in its entirety.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jingersoll@ycst.com

Attorneys for Plaintiff AstraZeneca LP

Of Counsel:

Harold P. Weinberger
Jonathan M. Wagner
Kerri Ann Law
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated:  November 23, 2005

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, hereby certify that on November 23, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven Balick, Esquire
> Ashby & Geddes
> 222 Delaware Avenue
> P.O. Box 1150
> Wilmington, DE 19899

I further certify that on November 23, 2005, I caused a copy of the foregoing document to be served by **hand delivery and e-mail** on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL and FEDEX

> Thomas C. Morrison, Esquire
> Patterson, Belknap, Webb & Tyler LLP
> 1133 Avenue of the Americas
> New York, NY 10036

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
*jingersoll@ycst.com*
John W. Shaw (No. 3362)
*jshaw@ycst.com*
Karen E. Keller (No. 4489)
*kkeller@ycst.com*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Attorneys for AstraZeneca LP