IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTRAZENECA LP, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-1332-KAJ |
| | ) | |
| vs. | ) | **REDACTED – PUBLIC VERSION** |
| | ) | |
| TAP PHARMACEUTICAL PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF OF PLAINTIFF ASTRAZENECA LP
IN SUPPORT OF ITS MOTION TO
EXCLUDE THE EXPERT TESTIMONY OF BERT SPILKER**

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6600
jingersoll@ycst.com

Attorneys for AstraZeneca LP

Of Counsel:

Harold P. Weinberger
Jonathan M. Wagner
Kerri Ann Law
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated:  November 23, 2005

Table of Contents

| | Page |
|---|---|
| Table of Authorities | ii |
| Nature and Stage of Proceedings | 1 |
| Summary of Argument | 1 |
| Facts | 2 |
| Argument | 4 |
| DR. SPILKER'S PROPOSED TESTIMONY DOES NOT COMPORT WITH DAUBERT | 4 |
|     A.    The governing standard | 4 |
|     B.    Dr. Spilker's opinion fails to meet the Daubert standard | 5 |
| Conclusion | 13 |

Table of Authorities

Cases:

*Advanced Medical Optics, Inc. v. Alcan, Inc.*,
  C.A. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803 (D. Del. Apr. 7, 2005) ............. 4, 6, 7, 8, 9

*Amorgianos v. National R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) .................................................................................. 9

*Calhoun v. Yamaha Motor Corp.*,
  *U.S.A.*, 350 F.3d 316 (3d Cir. 2003) .................................................................... 9

*Callaway Golf Co. v. Dunlop Slazenger Group. Ams.*,
  C.A. 01-669-KAJ, 2004 WL. 1534786 (D. Del. May 21, 2004) ......................... 6, 9

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*,
  350 F. Supp. 2d 582 (D. Del. 2004) .................................................................... 12

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................ 1, 2, 3, 4, 5, 9, 10, 12

*Elcock v. Kmart Corp.*
  233 F.3d 734 (3d Cir. 2000) ............................................................................ 9, 10

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) .......................................................................................... 8, 12

*Heller v. Shaw Indus., Inc.*,
  167 F.3d 146 (3d Cir. 1999) ................................................................................. 4

*Koppell v. New York State Bd. of Elections*,
  97 F. Supp. 2d 477 (S.D.N.Y. 2000) .................................................................... 9

*Oxford Gene Technology Ltd. v. Mergen Ltd.*,
  345 F. Supp. 2d 431 (D. Del. 2004) ................................................................ 4, 11

*Pell v. E.I. Dupont & Co.*,
  C.A. 02-21-KAJ, 2005 U.S. Dist. LEXIS 22504 (D. Del. Oct. 4, 2005) .............. 5

*Rezulin Products Liability Litigation*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................................. 11

*Surace v. Caterpillar, Inc.*,
  111 F.3d 1039 (3d Cir. 1997) ............................................................................... 6

DB01:1919752.1                                                                                                              057159.1005

Table of Authorities
(continued)

Page

Statutes:

Fed. R. Evid. 702 ...........................................................................................1, 2, 4, 5, 11, 12

iii

## Nature and Stage of Proceedings

Plaintiff AstraZeneca LP respectfully submits this memorandum in support of its motion to exclude the proposed expert testimony of Bert Spilker pursuant to Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## Summary of Argument

1. In this Lanham Act false advertising action, defendant TAP Pharmaceuticals asserts that AstraZeneca's advertising for its proton pump inhibitor ("PPI") NEXIUM® (esomeprazole magnesium) is literally false in stating that "Nexium heals moderate to severe acid related damage" to the esophagus, also known as erosive esophagitis ("EE"), better than PREVACID® (lansoprazole), TAP's PPI. (Exh. A at ¶¶ 17-18, 24) (D.I. 7).[1] Specifically, TAP asserts that AstraZeneca's claim of superior healing of moderate to severe EE is literally false because the results of the studies purportedly are "clinically meaningless." (*Id.* at ¶ 24). As support for this proposition, TAP proposes to offer the testimony of two expert witnesses, Dr. Malcolm Robinson, a gastroenterologist, and Dr. Spilker.

2. Dr. Spilker plans to offer the opinion on behalf of TAP that the statistically significant differences in favor of Nexium over Prevacid in the studies at issue in this case are not "clinically significant" because, as a general matter, only efficacy differences in excess of 20 percent are clinically meaningful. Dr. Spilker's personal opinion on the issue of clinical significance fails to meet the standards governing the admissibility of expert testimony

---

[1] "Exh. __" references the exhibits set forth in AstraZeneca's Appendix in Support of its Motion to Exclude the Expert Testimony of Bert Spilker.

set forth in Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

3. Because Dr. Spilker is not a gastroenterologist, has not treated patients for GERD in nearly 30 years, and has no experience with the testing or performance of PPIs, the relevant class of drugs, he is not qualified to offer an opinion on the issue of clinical significance in this case. In addition, Dr. Spilker has offered no support for his opinion, either in the scientific literature in general or in the gastroenterology field in particular, nor does any such support exist. In fact, Dr, Spilker's position has been uniformly rejected by the gastroenterology community and PPI manufacturers, and is inconsistent with Dr. Spilker's own writings.

4. Under these circumstances, admitting his testimony would not "fit" this case and would impermissibly invite the jury to return a verdict based on nothing more than conjecture and speculation.

Facts

AstraZeneca's advertising that "Nexium heals moderate to severe acid related damage better than Prevacid," is based on two large-scale studies referred to as the Castell and Fennerty studies. The studies collectively involved more than 6,000 patients and compared Nexium and Prevacid for the healing of patients with erosive esophagitis, a condition suffered by a substantial number of patients with "GERD," or acid reflux disease. There is no dispute that the studies, conducted in accordance with rigorous clinical standards, both concluded that by statistically significant margins, Nexium was more effective than Prevacid at healing moderate to severe EE. (Exh. B at page 581 & Exh. C at page 455). In addition, the Castell Study showed that Nexium is statistically significantly superior to Prevacid for overall EE healing. (Exh. B at page 575).

TAP does not dispute the methodology used in these studies or the results.

**REDACTED**

Despite conceding the reliability of the Castell and Fennerty Studies **REDACTED** TAP asserts that AstraZeneca's claim of superior healing of moderate to severe EE is literally false because the results of the studies purportedly are "clinically meaningless." (Exh. A at ¶ 24) (D.I. 7). As support for this proposition, TAP proposes to offer the testimony of two expert witnesses, Dr. Malcolm Robinson and Dr. Spilker.

Dr. Spilker admitted that the Castell and Fennerty studies show "a numerical difference" between the performance of Nexium and Prevacid. (Spilker Tr. 249-50).[2] He also stated that this difference "is likely ... a real effect." (*Id.* at 251). Nevertheless, he contends that the differences in performance in these tests in favor of Nexium are not clinically significant. But as demonstrated below, Dr. Spilker is not qualified to give that opinion, nor is there any basis for such an opinion under the governing *Daubert* standards.[3]

---

2      "Tr. __" references the relevant portions of the deposition transcript of Dr. Spilker, attached to AstraZeneca's Appendix at Exhibit G.

3      **REDACTED**

Argument

DR. SPILKER'S PROPOSED TESTIMONY
DOES NOT COMPORT WITH *DAUBERT*

A.   The governing standard

Under Federal Rule of Evidence 702 "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The party offering the expert testimony has the burden of proving admissibility. *Id.* at 592 n.10; *Oxford Gene Technology Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 434 (D. Del. 2004). In addition, the subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than a subjective belief or speculation. *Daubert*, 509 U.S. at 589-90. Further, Rule 702 requires that expert testimony "assist the trier of fact." In other words, the testimony must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Id.* at 591-92.

As this Court has noted, "[i]n determining 'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact,' the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue." *Oxford Gene*, 345 F. Supp. 2d at 434 (quoting *Daubert*, 509 U.S. at 591-92). As part of that inquiry, the Court must "examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999); *Advanced Medical Optics, Inc. v. Alcan, Inc.*, C.A. No. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803, at * 5 (D. Del. Apr. 7, 2005).

- 4 -

As an additional requirement, a party can elicit expert testimony only from someone who has specialized knowledge or training sufficient to qualify him or her to opine on an issue within their field of expertise. *Pell v. E.I. Dupont & Co.*, C.A. 02-21-KAJ, 2005 U.S. Dist. LEXIS 222504, at * 19 (D. Del. Oct. 4, 2005). The expert's opinion must be confined solely to that field. *Id.*

Applying these standards here, Dr. Spilker's testimony should be barred on several independent grounds.

    B.    Dr. Spilker's opinion fails to meet the *Daubert* standard

In opining that the differences in favor of Nexium demonstrated in the Castell and Fennerty studies are not clinically significant, Dr. Spilker defines clinical significance as follows: "the minimal amount of change in an important parameter that will encourage a physician to alter his or her practice of medicine and to use a drug or medical product in his or her patients." (Spilker Decl., ¶ 4; Appendix Exh. H) (D.I. 11). According to Dr. Spilker, "Because biological variability between patients is often described as accounting for a 20 percent difference around the mean values in biological and clinical sciences, differences below that number should not be considered clinically significant." (*Id.* at ¶ 9). Putting aside whether the supposed absence of clinical significance renders AstraZeneca's claims literally false given the statistically significant results in Nexium's favor in four separate studies sponsored by both parties — a legal issue addressed in AstraZeneca's summary judgment motion filed today — Dr. Spilker's personal opinion that the results are not clinically significant runs afoul of Rule 702 and *Daubert*.

To begin with, Dr. Spilker purports to opine on clinical significance based on what level of EE healing results he believes would affect the prescribing behavior of

gastroenterologists, but he is not a gastroenterologist and has no experience in the field of gastroenterology in general, or with GERD in particular. Although he has an M.D. degree, his specialty for the brief period he actually practiced medicine was internal medicine, not gastroenterology. (Spilker Tr. 20). Dr. Spilker thus acknowledged that "I'm not an expert in the field of gastroenterology" (*id.* at 36-37), and "I'm not a GI specialist." (*Id.* at 162). In addition, Dr. Spilker has not treated patients on a full time basis in nearly 30 years. (*Id.* at 17-18). The last time he treated patients of any kind was more than 10 years ago. (*Id.* at 18-19). The last time Dr. Spilker treated any patients for GERD was 1979. (*Id.* at 38-39). The last time Dr. Spilker ever saw a patient with erosive esophagitis was 1977 — 28 years ago. (*Id.* at 54-55). And Dr. Spilker has never published any articles or abstracts or given any talks on gastroenterology subjects. (*Id.* at 47-49).

When, as here, an expert's background and experience are not sufficiently related to the proffered testimony, the testimony should be excluded. *See Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1055-56 (3d Cir. 1997) (rejecting expert's proffered opinion where it "hinged on habituation, an area in which [electromechanical engineer expert] had no training and no experience," despite expert's contention that through his work experience he has "'become highly familiar with the concept' . . . ."); *Callaway Golf Co. v. Dunlop Slazenger Group. Ams.*, No. C.A. 01-669-KAJ, 2004 WL 1534786, at *2 (D. Del. May 21, 2004) ("[A] party cannot qualify a person as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue"); *Advanced Medical Optics*, 2005 U.S. Dist. LEXIS 5803, at *26-*27 ("Dr. Olson's qualifications as a renowned ophthalmologist are not questioned, but he is not qualified to render an opinion on fluidics

systems or chamber stability . . . Dr. Olson would be outside his area of expertise if permitted to testify in this regard").

Second, Dr. Spilker cannot opine on the level of difference in EE healing rates that would influence gastroenterologists because he has no specific experience with Nexium or Prevacid or with any PPIs for that matter. Although he claims he has expertise with respect to clinical trials, Dr. Spilker has never been involved in clinical trials concerning PPIs, nor has he ever designed a clinical trial for PPIs. (Spilker Tr. 39-40). Equally disqualifying, Dr. Spilker testified that he has never once prescribed a PPI to a patient. (*Id.* at 41). Dr. Spilker also admitted that over the past fifteen years — during which time Prevacid and Nexium were first approved for use by the Food & Drug Administration — he has not personally observed the effect of any PPI on anyone. (*Id.* at 42-43). Finally, Dr. Spilker has never seen the reaction of any patient to Prevacid or Nexium in terms of healing erosive esophagitis. (*Id.* at 97). *See Advanced Medical Optics, Inc.*, 2005 U.S. Dist. LEXIS 5803, at *9 ("Because Dr. Olson lacks expertise in the analysis of sales and market trends for phacoemulsification machines, he will be precluded from testifying on this topic. He has admitted that he has no expertise in this particular area").

Third, Dr. Spilker has done nothing to compensate for his lack of clinical or other experience with PPIs by, for example, assessing the reaction of physicians or gastroenterologists to the Castell and Fennerty studies or to the differences in EE healing rates demonstrated in those studies. Indeed, he has not spoken to any gastroenterologists about the studies (*e.g.*, Spilker Tr. 174-75), nor has he reviewed any literature discussing the results of the studies. (*E.g., id.* at 175).

Likewise, Dr. Spilker has done nothing to assess whether the gastroenterology community has accepted the predicate for his opinion concerning clinical significance — his principle that efficacy differences of less than 20 percent are not clinically significant. Dr. Spilker conceded that he has not spoken to anyone in the GI field — including TAP (*id.* at 55) and TAP's other expert Dr. Robinson (*id.* at 119) — as to what percent difference in EE healing rates is considered clinically significant. (Spilker Tr. 53). Nor did Dr. Spilker look at any literature in the field addressing that issue. (*Id.* at 55). In fact, Dr. Spilker admitted that he has not done *any* empirical work to determine whether a particular level of efficacy in a PPI is clinically significant. (*Id.* at 64). Finally, other than reviewing the protocols of the studies at issue in this case, Dr. Spilker admitted that he did nothing to verify that his "20 percent principle" applies to PPIs. (*Id.* at 118).

Dr. Spilker's proposed opinion in this respect falls squarely within the ambit of *Advanced Medical Optics, Inc.*, 2005 U.S. Dist. LEXIS 5803, where this Court excluded a proposed expert opinion concerning the "general preferences of other surgeons" concerning surgical procedures as "speculative and not supported by reliable data." In that case, the proposed expert admitted that "he does not know whether other surgeons" other than one that he had spoken with "agree with [his position], nor has he conducted a survey to find out." *Id.* at *10 -*12. *See also General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert")

Fourth, Dr. Spilker offered no support, other than his own conclusory opinion, for his opinion that clinical significance requires efficacy differences of at least 20 percent. Dr. Spilker admitted that he could not cite any authority holding that differences of 20 percent are

- 8 -

required for clinical significance in any field, let alone for PPIs or other GERD treatments. (Spilker Tr. 136). *See Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003) (excluding expert's opinion where "[t]here was no literature confirming this theory, nor demonstrable tests. Lacking support, his testimony was speculative and unreliable"); *Koppell v. New York State Bd. of Elections*, 97 F. Supp. 2d 477, 481 (S.D.N.Y. 2000) (rejecting expert report where "[t]he explanations in each instance are largely anecdotal and do not cite particular facts, pieces of literature, or articles"); *Advanced Medical Optics*, 2005 U.S. Dist. LEXIS 5803, at *25 (barring expert testimony that surgeons "previously were afraid of using phacoemulsification," where proposed expert had "no survey, study, or scientific literature supporting his position"; "'I don't have anything other specifically than my opinion'") *Callaway*, 2004 WL 1534786 at *4 (excluding expert opinion as unreliable where it appeared to be "based solely on his personal knowledge and experience, rather than any methodology, analysis, or factual support."). To the contrary, Dr. Spilker has previously noted in his textbook on clinical trials that it would be a rare case indeed where a test that showed statistical significance was not clinically significant. As Dr. Spilker wrote: "In most clinical situations the statistical significance and clinical significance of the data are either both positive or they are not. If there is a clinically significant effect it is usually statistically significant and vice versa." (Exh. I).

Fifth, not only has Dr. Spilker offered no support for his position other than his own conclusory opinion, but the gastroenterology community, including TAP itself, has uniformly rejected the approach offered by Dr. Spilker here. *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (one factor in assessing reliability of expert's opinion under *Daubert* is "whether a particular technique or theory has gained 'general acceptance' in the relevant scientific community"); *Elcock v. Kmart Corp.*, 233 F.3d, 734, 741

(3d Cir. 2000) (rejecting expert's opinion based on a "hodgepodge of . . . approaches" that failed to satisfy the "generally accepted" *Daubert* factor and "bore [no] logical relationship to . . . methods that had been established to be reliable, as required by *Daubert's* sixth factor."). For example:

- TAP has itself made comparative claims based on quantitative differences similar to those underlying AstraZeneca's Nexium advertising. TAP has promoted Prevacid as providing effective relief of heartburn associated with GERD, based on data showing differences of (i) six percent — "42% of patient days . . . were free from heartburn with Prevacid® vs 36% . . . with omeprazole", (ii) seven percent — "56% of patient-days . . . were free from heartburn with Prevacid® vs. 49% . . . with omeprazole," and (iii) eight percent – "49% of patient-nights were free from heartburn with Prevacid® vs . . . 41% . . . with omeprazole." (Exh. J). Dr. Spilker admitted that these TAP ads are inconsistent with his 20 percent principle. (Spilker Tr. 138).

- TAP's other expert, Dr. Robinson, has written articles positing that differences in EE healing rates of less than 20 percent demonstrated in clinical tests were "clinically significant." (Exh. K at 1738 & Spilker Tr. 121). Dr. Spilker agreed these results are inconsistent with his opinion in this case. (Spilker Tr. 121).

- Published studies concerning Prevacid and supported by TAP concluded that, based on symptom relief differences in the range of 8.7 percent to 11.2 percent, "Lansoprazole [Prevacid] 30 mg provided greater symptomatic relief than Lansoprazole [Prevacid] 15 mg." (Exh. L at page 1749). Dr. Spilker agreed that this conclusion likewise cannot be reconciled with his 20 percent principle. (Spilker Tr. 123-25).

- The Consensus Panel Guidelines, "Improving the Management of GERD," published by the American Gastroenterological Association — the leading organization in the field — posited that efficacy differences in treatment of GERD as low as seven percent between over-the-counter antacids and placebo are "clinically meaningful." (Exh. M at page 7).

The only response offered by Dr. Spilker on this point is that he purportedly can infer from the statistical plan in the Fennerty study that the authors of that study protocol must have believed that a minimum of a ten percent difference in EE healing rates was clinically significant and the minimum meaningful difference. He then concludes that because the difference in healing rates in the Fennerty study was less than ten percent, it was not clinically significant. (Spilker Tr. 166-68). But this Court has specifically precluded experts from offering opinions inferring the purported intent or state of mind of a third party as inappropriate under Rule 702. *Oxford Gene*, 345 F. Supp. 2d at 443. *See also In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (barring expert testimony in products liability suit concerning the "intent, motive or states of mind of corporations, regulatory agencies and others," including testimony of intent of authors of a drug study report and an article in a medical journal; such testimony has "no basis in any relevant body of knowledge or expertise" and constitutes "'musings as to defendants' motivation [that] would not be admissible if given by any witness — lay or expert'") (citation omitted). This principle applies with particular force here, since (i) the Fennerty study nowhere states that the authors considered a minimum difference of ten percent to be clinically significant, and (ii) Dr. Fennerty himself has stated in this case that the difference in EE healing rates between Nexium and Prevacid shown in his study

*is* clinically significant. (Exh N at ¶¶ 11-14) (D.I. 31). The jury can assess the actual views of the study authors — a factual question — when Dr. Fennerty testifies at trial.[4]

In short, there is no basis for Dr. Spilker to give testimony, bottomed on nothing other than his own unsupported view, that the differences in EE healing between Prevacid and Nexium are not clinically significant. Under *Daubert* and Rule 702, Dr. Spilker's opinion in this case should be stricken. *See General Elec. Co.*, 522 U.S. at 146 (court may exclude expert testimony where there "is simply too great an analytical gap between the data and the opinion proffered."); *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 594 (D. Del. 2004) (excluding testimony of expert whose opinion "does not provide an even remotely adequate explanation to bridge the 'analytical gap between the data and the opinion offered'").

---

[4] Dr. Spilker also claimed that the FDA requires at least a 15 to 30 percent difference for a finding of clinical significance. (Spilker Tr. 65). However, Dr. Spilker could cite no FDA publication or other FDA authority that supports this approach. (*Id.* at 134-35). In fact, several FDA-approved labels, including Prevacid's, predicate findings of clinical significance based on differences of less than 20 percent. *See,* e.g. Exh. O at page 4 (label for Zelnorm, which treats irritable bowel syndrome, showed differences of between 5 and 14 percent compared to placebo); Exh. P at page 16 (label for Prevacid states that "the earlier healing in the higher two doses suggests 30 mg as the recommended dose," where difference in healing rates compared to lower dose was 13.7 percent at week 4 and 7.7 percent at week 6).

## Conclusion

For these reasons, the Court should bar Dr. Spilker's testimony.

                    YOUNG, CONAWAY, STARGATT & TAYLOR LLP

                    Josy W. Ingersoll (#1088)
                    John W. Shaw (#3362)
                    The Brandywine Building
                    1000 West Street, 17th Floor
                    Wilmington, DE 19801
                    (302) 571-6600
                    jingersoll@ycst.com

                    Attorneys for Plaintiff AstraZeneca LP

Of Counsel:

Harold P. Weinberger
Jonathan M. Wagner
Kerri Ann Law
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated: November 23, 2005

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, hereby certify that on November 23, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Steven Balick, Esquire
>Ashby & Geddes
>222 Delaware Avenue
>P.O. Box 1150
>Wilmington, DE 19899

I further certify that on November 23, 2005, I caused a copy of the foregoing document to be served by **hand delivery and e-mail** on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

>**BY E-MAIL and FEDEX**
>
>Thomas C. Morrison, Esquire
>Patterson, Belknap, Webb & Tyler LLP
>1133 Avenue of the Americas
>New York, NY 10036

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>/s/ Josy W. Ingersoll
>Josy W. Ingersoll (No. 1088)
>*jingersoll@ycst.com*
>John W. Shaw (No. 3362)
>*jshaw@ycst.com*
>Karen E. Keller (No. 4489)
>*kkeller@ycst.com*
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, Delaware 19801
>(302) 571-6600
>
>Attorneys for AstraZeneca LP