IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTRAZENECA LP, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-1332-KAJ |
| | ) | |
| vs. | ) | ~~CONFIDENTIAL – FILED~~ |
| | ) | ~~UNDER SEAL~~ |
| TAP PHARMACEUTICAL PRODUCTS, INC., | ) | |
| | ) | **REDACTED – PUBLIC VERSION** |
| Defendant. | ) | |

**PLAINTIFF ASTRAZENECA LP's OPENING BRIEF
IN SUPPORT OF ITS MOTION TO
EXCLUDE THE EXPERT TESTIMONY OF CREIGHTON HOFFMAN**

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building — 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

Attorneys for Plaintiff AstraZeneca LP

Of Counsel:

Harold P. Weinberger
Jonathan M. Wagner
Kerri Ann Law
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated: December 9, 2005

Table of Contents

Page

Table of Authorities ................................................................................................................ ii

Nature and Stage of Proceedings ............................................................................................ 1

Summary of Argument ............................................................................................................ 1

Statement of Facts................................................................................................................... 3

    A.    The Competitive Marketplace.................................................................................... 3

    B.    The "Better is Better" Advertising Campaign ........................................................... 4

    C.    TAP Claims that the "Better is Better" Advertising Campaign is False and
         Misleading................................................................................................................. 5

    D.    Many Factors Affected AstraZeneca's Revenue for Nexium During the
         "Better is Better" Campaign ..................................................................................... 5

    E.    REDACTED ......................................................................... 12

        1.    ........................................................................... 13

        2.    ........................................................ 14

        3.    ........................ 19

Argument ................................................................................................................................ 22

DR. HOFFMAN'S PROPOSED TESTIMONY DOES NOT COMPORT
WITH FED. R. CIV. P. 702 and *DAUBERT* STANDARDS ............................................ 22

    A.    The governing *Daubert* standard for admissibility................................................. 22

    B.    The governing Lanham Act damages standard......................................................... 23

    C.    The Methodology Used to Calculate AstraZeneca's Gained Profits is
         Unreliable and Does Not "Fit" the Facts of the Case ............................................ 26

    D.    REDACTED ............................................................................ 26

Conclusion ............................................................................................................................. 30

i

KL3:2482302.3

Table of Authorities

Page

Cases:

*3M Innovative Properties Co. v. Dupont Dow Elastomers LLC,*
    361 F. Supp. 2d 958 (D. Minn. 2005)....................................................................................25

*Advanced Medical Optics, Inc. v. Alcan, Inc.,*
    C.A. No. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803 (D. Del. Apr. 7, 2005) ......................23

*Alpo Petfoods, Inc. v. Ralston Purina Co.,*
    913 F.2d 958, 969 (D.C. Cir. 1990)....................................................................................24

*Alpo Petfoods, Inc. v. Ralston Purina Co.,*
    997 F.2d 949 (D.C. Cir. 1993)............................................................................................27

*Amorgianos v. National R.R. Passenger Corp.,*
    303 F.3d 256 (2d Cir. 2002) ...............................................................................................27

*Astra Aktiebolag v. Andrx Pharms., Inc.,*
    222 F. Supp. 2d 423 (S.D.N.Y. 2002) .................................................................................23

*Benjamim v. Peter's Farm Condominium Owners Assoc'n,*
    820 F.2d 640 (3d Cir. 1987) ...............................................................................................27

*Blue Dane Simmental Corp. v. American Simmental Ass'n,*
    178 F.3d 1035 (8th Cir. 1999) .............................................................................................26

*Burndy Corp. v. Teledyne Indus., Inc.,*
    748 F.2d 767 (2d Cir. 1984) ........................................................................................23, 24

*Can-Am Engineering Co. v. Henderson Glass, Inc.,*
    814 F.2d 253 (6th Cir. 1987) ...............................................................................................24

*Castrol, Inc. v. Pennzoil Quaker State Co.,*
    169 F. Supp. 2d 332 (D.N.J. 2001)......................................................................................23

*Chemipal Ltd v. Slim-Fast Nutritional Foods Int'l Inc.,*
    350 F. Supp. 2d 582 (D. Del. 2004)........................................................................22, 23, 28

*Coca-Cola Co. v. Tropicana Prods, Inc.,*
    690 F.2d 312 (2d Cir. 1982) ...............................................................................................28

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993)...........................................................................1, 2, 22, 28, 30

ii

Table of Authorities
(continued)

Page

*General Elec. Co. v. Joiner,*
522 U.S. 136 (1997)...............................................................................................23

*Harper House, Inc. v. Thomas Nelson, Inc.,*
889 F.2d 197 (9th Cir. 1989) ...............................................................................26

*Heller v. Shaw Indus., Inc.,*
167 F.3d 146 (3d Cir. 1999) ................................................................................23

*Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery,*
179 F.R.D. 450 (D. N.J. 1998)..............................................................................27

*Minuteman Int'l, Inc. v. Critical-Vac Filtration Corp.,*
No. 95C 7255, 1997 WL 370204 (N.D. Ill. June 27, 1997),
*aff'd by unpublished order,* 152 F.3d 947, 1998 WL 166583
(Fed. Cir. Ill. Apr. 3, 1998)....................................................................................26

*Mobius Management Systems, Inc. v. Fourth Dimension Software, Inc.,*
880 F. Supp. 1005 (S.D.N.Y. 1994) .....................................................................23

*Nikkal Industries, Ltd. v. Salton, Inc.,*
735 F. Supp. 1227 (S.D.N.Y. 1990) .................................................................24, 25

*Oxford Gene Technology Ltd. v. Mergen Ltd.,*
345 F. Supp. 2d 431 (D. Del. 2004)..................................................................22, 28

*People Who Care v. Rockford Bd. of Educ.,*
111 F.3d 528 (7th Cir. 1997) ................................................................................25

*Scranton Gillette Communications, Inc. v. Dannhausen,*
No. 96 C 8353, 1999 WL 558134 (N.D. Ill. July 27, 1999).....................................25

*Tambrands, Inc. v. Warner-Lambert Co.,*
673 F. Supp. 1190 (S.D.N.Y. 1987) ......................................................................25

*Williams v. Rene,*
72 F.3d 1096 (3d Cir. 1995) .................................................................................27

Statutes:

Fed. R. Civ. P. 30(b)(6)......................................................................................14, 16

Fed. R. Civ. P. 702..........................................................................................1, 22, 30

KL3:2482302.3

Nature and Stage of Proceedings

Plaintiff AstraZeneca LP respectfully submits this memorandum in support of its

motion, pursuant to Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509

U.S. 579 (1993), to exclude the proposed expert testimony of Creighton Hoffman, the damage

expert offered on behalf of TAP Pharmaceutical Products, Inc. ("TAP").

Summary of Argument

1.    TAP has served AstraZeneca with an expert report on damages prepared

by Creighton G. Hoffman.

REDACTED

2.

REDACTED

REDACTED

3.

REDACTED

4.

REDACTED

KL3:2482302.3

Statement of Facts

The facts set forth below are based on the following, all of which are provided in the accompanying Appendix as indicated by the letter in the parenthetical: (i) the Expert Report of Creighton Hoffman (Exh. A); (ii) the Declaration of Paul Villa, formerly AstraZeneca's Contracting Director for the GI Therapeutic Area, dated December 7, 2005 ("Villa Decl.") (Exh. B); (iii) the Declaration of Christian Keller, AstraZeneca's Brand Director, Consumer Promotions for Nexium, dated December 8, 2005 (Keller Decl.") (Exh. C); (iv) Mr. Hoffman's deposition testimony (Exh. D); (v) Mr. Villa's deposition testimony (Exh. E); (vi) Mr. Keller's deposition testimony (Exh. F); (vii) the deposition testimony of Antoine Pompe, TAP's Director of Marketing for Prevacid (Exh. G); (viii) Transcript from the Preliminary Injunction Hearing, dated December 20, 2004 (Exh. H) (D.I. 42); and (ix) a print advertisement from the "Better is Better campaign (Exh. I).

A.    The Competitive Marketplace

REDACTED

REDACTED

- 3 -

B.     The "Better is Better" Advertising Campaign

          In September 2004, AstraZeneca began a new direct-to-consumer ("DTC")

advertising campaign for Nexium called "Better is Better."  The "Better is Better" campaign,

which included a television commercial, print advertisements, website material, and an

informational pamphlet, ran from September 9, 2004 through May 2005.[1]

          The central message in the "Better is Better" campaign was that clinical studies

(known as the Castell and Fennerty studies) prove that Nexium is superior to Prevacid for

healing moderate to severe erosive esophagitis ("EE").  Prior to running the DTC campaign,

AstraZeneca had provided promotional materials to physicians that contained the same claim.

TAP did not object to the promotional materials directed at physicians.

          The DTC campaign also contained several noncomparative claims.  For example,

the "Better is Better" ads promoted Nexium as the "healing purple pill," and informed consumers

that "[f]or many, one NEXIUM pill a day can mean 24-hour heartburn relief and can heal acid

related damage in the esophagus." (Exh. I)

REDACTED

  The print campaign included a coupon that provided a free seven-day trial offer. ( Exh. I).

REDACTED

REDACTED                              . asked  the  study

participants                                          advertisements (at the

---

1

REDACTED

- 4 -

REDACTED

C.    TAP Claims that the "Better is Better"
      Advertising Campaign is False and Misleading

In this action, TAP has sought injunctive relief and monetary damages based on its claim that the "Better is Better" advertisements are false in three respects. First, TAP contends that the claim that Nexium is superior to Prevacid for healing moderate to severe EE is literally false. TAP also contends that the advertising campaign makes two impliedly false claims: that Nexium is superior to Prevacid for healing all types of EE, not only moderate to severe EE, and that Nexium is superior for the treatment of acid reflux disease generally.

TAP does not claim that the "Better is Better" advertisements are false in any other respect. For example, TAP does not contend that there is anything false and misleading about AstraZeneca's claim that Nexium is "the healing purple pill" or that "[f]or many, one Nexium pill a day can mean 24-hour heartburn relief and can heal acid related damage in the esophagus." Similarly, TAP does not contend that the promotional materials provided to physicians (as opposed to consumers in the DTC campaign), which contain similar claims based on the same clinical studies, are false or misleading. (Exh. H, at 4-5) (D.I. 42).

D.    REDACTED

REDACTED

- 5 -

REDACTED

REDACTED

REDACTED

KL3:2482302.3

REDACTED

REDACTED

_____

2

REDACTED

REDACTED

KL3:2482302.3

REDACTED

KL3:2482302.3

REDACTED

KL3:2482302.3

REDACTED

KL3:2482302.3

REDACTED

KL3:2482302.3

REDACTED

- 13 -

REDACTED

KL3:2482302.3

REDACTED

KL3:2482302.3

REDACTED

KL3:2482302.3

REDACTED

KL3:2482302.3

REDACTED

KL3:2482302.3

REDACTED

       In sum, Mr. Hoffman failed to conduct any reliable analysis to determine whether the increase in Nexium revenues during the campaign period was caused by any of the other factors identified by witnesses as affecting revenues.

REDACTED

KL3:2482302.3

REDACTED

KL3:2482302.3

REDACTED

KL3:2482302.3

REDACTED

Argument

## DR. HOFFMAN'S PROPOSED TESTIMONY DOES NOT
## COMPORT WITH FED. R. CIV. P. 702 and *DAUBERT* STANDARDS

A.    The governing *Daubert* standard for admissibility

Under Federal Rule of Evidence 702 "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). *See also Chemipal Ltd v. Slim-Fast Nutritional Foods Int'l Inc.*, 350 F. Supp. 2d 582, 587 (D. Del. 2004). The party offering the expert testimony has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10; *Oxford Gene Technology Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 434 (D. Del. 2004). The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than a subjective belief or speculation. *Daubert*, 509 U.S. at 589-90. Further, Rule 702 requires that expert testimony "assist the trier of fact." In other words, the testimony must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Id.* at 591-92.

As this Court has noted, "[i]n determining 'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact,' the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue." *Oxford Gene*, 345 F. Supp. 2d at 434 (quoting *Daubert*, 509 U.S. at 591-92). As part of that inquiry, the Court must "examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the

- 22 -

expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999); *Advanced Medical Optics, Inc. v. Alcan, Inc.*, C.A. No. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803, at * 5 (D. Del. Apr. 7, 2005). These principles apply equally to an expert's damage analysis. *See Chemipal Ltd.*, 350 F. Supp. 2d at 588 (excluding damage expert because the "proffered testimony fails to satisfy the requirements imposed by *Daubert* and the Federal Rules of Evidence").

Finally, courts have held that "[i]f the expert has failed to consider the necessary factors or if the analysis is premised upon a faulty assumption, his testimony may be excluded for lack of probative value." *Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 488 (S.D.N.Y. 2002). *See also General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Applying these standards here, Mr. Hoffman's testimony should be barred.

## B.    The governing Lanham Act damages standard

The law is well established that a Lanham Act plaintiff is not entitled to an award of its lost profits or its competitor's gained profits unless it proves that such loss or gain was caused by the allegedly false advertising. *See Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 771 (2d Cir. 1984) ("[A] plaintiff who establishes false advertising in violation of § 43(a) of the Lanham Act will be entitled to such damages as were caused by the violation."); *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 343 (D.N.J. 2001) (finding that Castrol must "prove that Pennzoil's increase in profits is causally related to Pennzoil's multimedia advertising campaign"); *Mobius Management Systems, Inc. v. Fourth Dimension Software, Inc.*, 880 F.

Supp. 1005, 1022 (S.D.N.Y. 1994) ("[T]he plaintiff must show that he or she suffered actual damages that were causally related to 'actual consumer confusion or deception' of the purchasing public."). *See also Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 969 (D.C. Cir. 1990) ("At the same time, the court must ensure that the record adequately supports all items of damages claimed and establishes a causal link between the damages and the defendant's conduct, lest the award become speculative or violate section 35(a)'s prohibition against punishment."). While a plaintiff seeking relief under the Lanham Act is not required to prove the amount of damages with exacting specificity, it must nevertheless show (i) that the methodology used to calculate damages caused by the alleged false advertising is reliable, and (ii) a causal link between the alleged actionable conduct and plaintiff's alleged damages. *Burndy*, 748 F.2d at 771; *Can-Am Engineering Co. v. Henderson Glass, Inc.*, 814 F.2d 253, 258 (6th Cir. 1987) ("'Although a court may engage in some degree of speculation in computing the *amount* of damages . . . causation must first be established.'") (quotation omitted) (alteration in original).

In *Nikkal Industries, Ltd. v. Salton, Inc.*, 735 F. Supp. 1227 (S.D.N.Y. 1990), for example, the court excluded the expert testimony of plaintiff's expert that Nikkal had lost profits as a result of Salton's false advertisements because plaintiff's expert did not "provide for the impact of other significant factors" which could have affected Nikkal's profits. In that case, Nikkal sought to establish that Salton's ads caused it to lose sales of Donvier ice-cream maker and the profits from those sales. Nikkal attempted to introduce the testimony of Dr. Nye, "an economist who constructed a damage model to calculate the amount of revenues Nikkal allegedly lost as a result of Salton's advertising and the effect the advertising allegedly had on the market for compact freezer-type ice-cream makers." *Id.* at 1233. Dr. Nye calculated, by means of a linear regression analysis, that Nikkal was damaged in excess of $4.1 million to date

- 24 -

and that it would sustain an additional $1.7 million in future damages as a result of Salton's advertisement. The court excluded the testimony, finding that Dr. Nye's "assumption did not provide for the impact of other significant factors, such as the possible effects on sales of a declining trend in the popularity of freezer-type ice-cream makers, the appearance of several competitors, vigorous price competition, and, most importantly, Nikkal's poor marketing strategy." *Id.* at 1233. *See also Tambrands, Inc. v. Warner-Lambert Co.*, 673 F. Supp. 1190, 1197 (S.D.N.Y. 1987) (rejecting damage calculation that was pure speculation and failed to take into account "rapidly changing nature of the Kit market"). *Cf. People Who Care v. Rockford Bd. of Educ.*, 111 F.3d 528, 537-38 (7th Cir. 1997) ("A statistical study is not inadmissible merely because it is unable to exclude all possible causal factors other than the one of interest. But a statistical study that fails to correct for salient explanatory variables, or even to make the most elementary comparisons, has no value as causal explanation and is therefore inadmissible in a federal court").

In *3M Innovative Properties Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 973 (D. Minn. 2005), the court granted summary judgment with respect to plaintiff's Lanham Act claims after finding that "a reasonable jury could not find that Dupont Dow's alleged false advertising is the cause of [plaintiff's] claimed damages." *Id.* In reaching this conclusion, the Court discounted an expert report that "simply calculates damages after assuming that the false advertising caused [plaintiff's] lost profits; it does not provide any insight into or evidence on causation." *Id.* The Court further found that "the change in the parties' sales positions . . . has not been linked to the specific advertising claims challenged." *Id.*

Similarly, in *Scranton Gillette Communications, Inc. v. Dannhausen*, No. 96 C 8353, 1999 WL 558134, at *3 (N.D. Ill. July 27, 1999), the court granted judgment as a matter of

- 25 -

law with respect to a Lanham Act plaintiff's claim of lost profits where "plaintiff offered no evidence that even one of the 700 recipients of the Greenhouse Business promotional literature declined to contract with it in reliance on [defendant's] false statements." *See also Blue Dane Simmental Corp. v. American Simmental Ass'n*, 178 F.3d 1035, 1043 (8th Cir. 1999) (affirming judgment as a matter of law when the only evidence of causation was plaintiff's own testimony that it believed its sales dropped because of defendant's conduct); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989) (reversing verdict on Lanham Act claim when there was no evidence linking customer confusion to any loss of business); *Minuteman Int'l, Inc. v. Critical-Vac Filtration Corp.*, No. 95C 7255, 1997 WL 370204, at \*13 (N.D. Ill. June 27, 1997) (granting summary judgment dismissing Lanham Act claim when, despite evidence of lost sales, counterclaim plaintiff admitted having "no direct testimony from consumers or survey experts or anything like that which would tend to establish causality between the lost sales" and the false advertising), *aff'd by unpublished order*, 152 F.3d 947, 1998 WL 166583 (Fed. Cir. Ill. Apr. 3, 1998).

C.      REDACTED

REDACTED

REDACTED

- 26 -

REDACTED

See *Williams v. Rene*, 72 F.3d 1096, 1101-03 (3d Cir. 1995) (reversing admission of expert damages testimony where, despite significant detail, underlying assumption was "unsupported and speculative"); *Benjamim v. Peter's Farm Condominium Owners Assoc'n*, 820 F.2d 640, 642 (3d Cir. 1987) ("This Court has required more than speculative opinion when determining damages for prospective earnings loss."); *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 179 F.R.D. 450, 460 (D. N.J. 1998) ("Such 'warping' of underlying assumptions cannot support the admissibility of expert testimony.").

Because of this failure, Mr. Hoffman's analysis is not "grounded on sufficient facts or data" to be reliable, nor is it "the product of reliable principles and methods." *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). *See also*

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l Inc.*, 350 F. Supp. 2d 582, 589 (D. Del. 2004) (excluding expert opinion where he "did not conduct any independent analysis, did not use any expertise to evaluate two secondary sources relied upon by the Grey 1997 Plan, and does not know what the data represents, how it was compiled, or how it was evaluated or chosen . . . ."). It takes no specialized expertise to read depositions testimony and documents and make credibility determinations, which is all that Mr. Hoffman did here. *Oxford Gene Tech Ltd. v. Mergen Ltd.,* 345 F. Supp.2d 431, 435 (D. Del. 2004) (stating that no matter how qualified an expert may be, "testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the fact-finder").

REDACTED

The courts have recognized that damages in false advertising cases are typically extremely difficult to quantify; that is one of the reasons why courts presume irreparable harm when a Lanham Act plaintiff moves for a preliminary injunction on a comparative advertising claim. *See Coca-Cola Co. v. Tropicana Prods, Inc.*, 690 F.2d 312, 316 (2d Cir. 1982) ("It is virtually impossible to prove that so much of one's sales will be lost or that one's goodwill will be damaged as a direct result of a competitor's advertisement. Too many market variables enter into the advertising-sales equation. Because of these impediments, a Lanham Act plaintiff who

- 28 -

can prove actual lost sales may obtain an injunction even if most of his sales decline is attributable to factors other than a competitor's false advertising."). At the same time, Lanham Act decisions have developed rigorous rules preventing speculative damage awards that are predicated on nothing more than a finding of a liability. *See* cases cited at pages 23-26 above. These rules would mean nothing if damages for a Lanham Act plaintiff merely reduced to a mathematical exercise — determining the difference in average monthly sales between a base period and a campaign period and then multiplying that entire difference by the length of the campaign period — which anyone with a calculator could perform. Because that is obviously not the law, the Court should exclude Mr. Hoffman's expert opinion.

D.

REDACTED

Hoffman did no analysis and can offer no support to justify his use of this methodology, his opinion is unreliable, does not fit the facts of the case and is therefore inadmissible under *Daubert* and Rule 702 for this additional reason as well.

### Conclusion

For these reasons, the Court should exclude the testimony of Creighton Hoffman in its entirety.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Karen E. Keller (#4489)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com

Attorneys for Plaintiff AstraZeneca LP

Of Counsel:

Harold P. Weinberger
Jonathan M. Wagner
Kerri Ann Law
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated:  December 9, 2005

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on December 9, 2005, I caused to be

electronically filed a true and correct copy of the foregoing document with the Clerk of the Court

using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record:

> Steven Balick, Esquire
> Ashby & Geddes
> 222 Delaware Avenue
> P.O. Box 1150
> Wilmington, DE 19899

I further certify that on December 9, 2005, I caused a copy of the foregoing

document to be served by hand delivery on the above-listed counsel of record and on the

following non-registered participant in the manner indicated:

### BY FEDERAL EXPRESS

> Thomas C. Morrison, Esquire
> Patterson, Belknap, Webb & Tyler LLP
> 1133 Avenue of the Americas
> New York, NY 10036

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Karen E. Keller (#4489)
*kkeller@ycst.com*
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600