IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTRAZENECA LP, | ) | **PUBLIC VERSION** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | C.A. No. 04-1332 - KAJ |
| TAP PHARMACEUTICAL PRODUCTS INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PUBLIC VERSION OF TAP PHARMACEUTICAL PRODUCTS INC.'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. BERT SPILKER**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant-Counterclaimant
TAP Pharmaceutical Products Inc.*

*Of Counsel:*

Thomas C. Morrison
Karla G. Sanchez
Deborah Steinberger
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

George C. Kokkines
TAP Pharmaceutical Products Inc.

Dated: December 21, 2005

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION AND SUMMARY ........................................................................................1

SUMMARY OF THE FACTS....................................................................................................2

ARGUMENT...............................................................................................................................2

      A.    Dr. Spilker Is an Expert in Clinical Trials ...................................................................2

      B.    Dr. Spilker's Opinions Are Based on His Expertise in Clinical Trials...................................................................................................................4

           1.    The Results of the Castell and Fennerty Trials Do Not Meet the Standard of Clinical Significance Set by AstraZeneca Itself............................................................................4

           2.    Dr. Spilker's Expertise Provides the Basis for His Own Opinion of the Appropriate Level of Clinical Significance........................6

           3.    There is No "20% Rule"...................................................................................10

           4.    Dr. Spilker May Opine on the Concept of Clinical Significance..........................................................................................................10

      C.    AstraZeneca Misconstrues a Number of Pieces of Evidence .................................11

CONCLUSION..........................................................................................................................12

# TABLE OF AUTHORITIES

**PAGE**

## CASES

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
    509 U.S. 579 (1993)..........................................................................................6

Holbrook v. Lykes Brothers Steamship Co., Inc. et al,
    80 F.3d 777 (3d Cir. 1996)..............................................................................4, 7

Kannankeril v. Terminix International, Inc.,
    128 F.3d 802 (3d Cir. 1997)...............................................................................4

McCullock v. H.B. Fuller Co.,
    61 F.3d 1038 (2d Cir. 1995)...............................................................................7

## STATUTES

F.R.E. Rule 702.................................................................................................................6

## **INTRODUCTION AND SUMMARY**

AstraZeneca's motion seeking to exclude the testimony of Dr. Bert Spilker is premised on miscontruing his opinion in two fundamental ways. First, AstraZeneca argues that Dr. Spilker does not have sufficient expertise in the area of gastroenterology, including proton pump inhibitors. But, Dr. Spilker has never presented himself as an expert in the field of gastroenterology or proton pump inhibitors, and his opinions are not based on any expertise in those areas. Instead, Dr. Spilker's opinions are based on his uncontroverted expertise in the design, development and interpretation of clinical trials. Dr. Spilker has worked in this area for decades and written extensively on the subject of clinical trials. In addition, he has written more than any other expert on the definition and concept of clinical significance. It is on the basis of this expertise that he presents his opinions.

Second, AstraZeneca claims that Dr. Spilker opined that "only efficacy differences in excess of 20% are clinically meaningful" and that there is a "rule" or "principle" that clinical differences must equal 20%. Given his declarations and deposition in this case, characterizing Dr. Spilker's opinion in this way is disingenuous at best. Dr. Spilker has repeatedly stated that there is no such rule or principle. Instead, Dr. Spilker has explained that there is a spectrum, and that determining clinical significance depends on a number of factors, including the medication being evaluated. In this case, Dr. Spilker determined 20% was a reasonable number by considering a number of factors and given that the range of both inter- and intra-biological differences between human beings and in their responses to therapies, a fundamental principle that none of AstraZeneca's experts dispute.

Finally, Dr. Spilker is not alone in his opinions. For example, a consensus panel guideline entitled *Improving the Management of GERD, Evidence-based Therapeutic Strategies* (which AstraZeneca attaches to its motion) concludes:

> "[n]o clinical evidence exists to support differences between available PPIs for treatment of endoscopy-negative GERD. For erosive esophagitis, esomeprazole has been inconsistently found to have higher esophagitis healing rates than omeprazole and lansoprazole; the clinical significance of this is not substantiated."

In addition, market research conducted by AstraZeneca found gastroenterologists who "need to see a 20 to 30% difference in an independent trial" to conclude Nexium is better than other PPIs.

## SUMMARY OF THE FACTS

For a complete summary of the facts, TAP respectfully refers the Court to the factual section in TAP Pharmaceutical Products Inc.'s Brief in Opposition to Plaintiff's Motion for Summary Judgment.

## ARGUMENT

### A. Dr. Spilker Is an Expert in Clinical Trials

AstraZeneca has not claimed that Dr. Spilker is not an expert in the design, development and interpretation of clinical trials. In fact, at Dr. Spilker's deposition, AstraZeneca's attorney asked him, "Q. Would you agree with me your field of expertise is clinical trials, correct?" (Exh. A, Spilker Depo. at 35). As such, if Dr. Spilker's opinions are based on his clinical trials expertise, not only has AstraZeneca not moved to exclude them, but it has acknowledged his expertise in this area. Moreover, given Dr. Spilker's actual expertise in this area there is no basis to exclude his opinions.

Although Dr. Spilker's expertise in clinical trials is uncontroverted, a brief description of that expertise may be helpful. (For a complete description of his experience see Dr. Spilker's curriculum vitae, Exh.B). Dr. Spilker has been involved in the design, development and interpretation of clinical trials as they relate to drug development for most of his career. His involvement in clinical trials started in 1979 at Burroughs Wellcome Co., where he worked on all aspects of clinical trials. His expertise continued in his subsequent positions at Chronimed and Orphan Medical. From 1979 through 1997, he was involved in the design, development or interpretation of data from no less than 300 clinical trials. His work, particularly at Orphan Medical (1993-1997) also provided him numerous opportunities to interface with FDA. He was involved in 28 face-to-face meetings with FDA during that five-year period, which included discussions of clinical significance and its relationship to statistical significance. At Orphan Medical, which Dr. Spilker co-founded, he was involved in investigating 16 new drugs, 7 of which were brought to market. (Exh. A, Spilker Depo. at 22).

During the period of 1998 to 2002, Dr. Spilker worked as Senior Vice President of Scientific and Regulatory Affairs for the U.S. trade association (PhRMA) representing the U.S. research-based industry on many committees with FDA, where he presented industry's views at FDA public hearings and at small meetings with FDA personnel. Some of these meetings involved the very issues that are being discussed in this case.

Since 2002, Dr. Spilker has worked for his own consulting business. He has worked for over 100 clients on numerous projects related to the design, development and interpretation of data from clinical trials. Many of these projects have brought him in direct contact with FDA allowing him to gain a further understanding of the clinically significant results required by FDA.

Dr. Spilker has written 15 books on the subject of the design, development and interpretation of data from clinical trials. Some of those books are 1,000s of pages long and for many he was the sole author. He has also written over 17 book chapters in other authors' or editors' books and written nearly 100 papers on this subject. Dr. Spilker has taught a number of classes in the design of clinical trials and the interpretation of the data obtained, including how to assess clinical significance. Given his extensive experience in the field of designing, developing and interpreting clinical trials, Dr. Spilker is an expert in that field and permitted to offer opinions under the Daubert standards. Holbrook v. Lykes Bros. Steamship Co., Inc. et al, 80 F.3d 777, 782 (3d Cir. 1996); Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 809 (3d Cir. 1997).

### B.     Dr. Spilker's Opinions Are Based on His Expertise in Clinical Trials

Dr. Spilker's opinions are premised on his expertise in the field of clinical trials, not on his lack of expertise in the gastroenterology field. AstraZeneca's attempts to inaccurately portray Dr. Spilker's opinions so to exclude them must fail.

#### 1.     The Results of the Castell and Fennerty Trials Do Not Meet the Standard of Clinical Significance Set by AstraZeneca Itself

Dr. Spilker opines that in designing clinical trials like the Castell and Fennerty trials, the trial authors must determine before the trial is initiated what result would be clinically significant. As Dr. Spilker writes in his book, "The criteria used to evaluate clinical significance in terms of a medicine's efficacy are best established before a clinical trial begins. This is most often done by addressing the following question: How large a response in the most important parameter(s) measured would be necessary to convince physicians to use the clinical trial

medicine or noncompliance test therapy in treating their patients?" (Exh. C at 507). Similarly, as explained in Dr. Spilker's declaration:

> In any well controlled trial comparing the efficacy of two drugs, the statistician determining the number of patients to be enrolled in the study needs to know how great a difference between the two drugs is expected, and what difference would be clinically significant. The statistician would need to know the SMALLEST DIFFERENCE between the two groups of patients being tested that will be clinically meaningful (i.e., significant) to the people conducting the clinical trial and to those in the medical community or to any regulatory agency that will evaluate the results of the trial. (Exh. D, Spilker 12/14/04 Decl. ¶ 6).

Thus, when reviewing a clinical trial, Dr. Spilker can determine the clinically significant difference sought by the protocol authors because the difference is indicated in the protocol. Dr. Spilker's view is uncontroverted.



Based on his expertise in clinical trial design, Dr. Spilker reviewed the four AstraZeneca studies produced at the time of his opinions and determined that three of the four sought a 10% difference in their design. (Exh. D, Spilker 12/14/04 Decl. ¶¶ 5-11). Using that 10% difference, he opined that the results of the Castell and Fennerty studies were not clinically significant (results of 3.8% and 4.9% were respectively obtained) because they did not achieve the 10% difference that was sought. (Exh. D, Spilker 12/14/04 Decl. ¶¶ 12, 15). Given that this methodology is based on Dr. Spilker's own expertise, an expertise undisputed by AstraZeneca, and an opinion shared by some of AstraZeneca's own witnesses, no basis exists to exclude his opinions on this subject.

Moreover, a number of other sources support Dr. Spilker's opinion. A third-party source states, "[a] treatment difference of 10%-points is often considered as clinically relevant and is used as an anchor." Ola Junghard, et al., Interpreting the Clinical Relevance of Differences in Patient-Reported Outcomes (PROs) in Patients Treated for Reflux Disease, Gastroenterology, Vol. 126, No. 4, Suppl. 2 (April 2004). (Exh. G). Redacted



Finally, contrary to AstraZeneca's arguments, Dr. Spilker's opinion does not address the study authors' "state of mind." (AZ Brief at 11). Rather, his opinion is based on the knowledge of how trials are designed. Dr. Spilker Redacted knows exactly what the 10% (or other %) difference sought represents in the design of a clinical trial. As an expert, he can explain to a jury what that number means. F.R.E. Rule 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591-92 (1993).

2. **Dr. Spilker's Expertise Provides the Basis for His Own Opinion of the Appropriate Level of Clinical Significance**

Dr. Spilker's expertise is in the design of clinical trials. As such, he does not have to have expertise in a particular area of medicine or with a particular medicine to design a trial for that medicine. He routinely designs clinical trials for medications for which he would not be considered an expert. But, he applies his expertise to determine what would be clinically significant in any particular trial and to design both that part of the trial as well as the rest of the trial.

Moreover, as outlined above, Dr. Spilker has extensive expertise with FDA and its decisions regarding clinical significance. Combining his expertise in these two areas provides him with a basis to make a determination of clinical significance. AstraZeneca is of course free to explore on cross-examination the basis for his opinion and establish that Dr. Spilker is not a GI expert or someone with expertise in PPIs. However, that type of information goes to the weight of Dr. Spilker's opinion, not its admission. See Holbrook, 80 F.3d at 782 (stating that the Third Circuit's liberal approach to admitting expert testimony renders most arguments about an expert's qualifications issues of weight rather than admissibility, and that "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate."); see also McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995) (criticisms of expert's alleged shortcomings were raised properly on cross-examination and went to credibility, not admissibility, of his testimony).

Dr. Spilker looks at a number of variables to determine the appropriate level of clinical significance for any given trial. As set out in Dr. Spilker's declaration, "[s]ome of the factors that affect the relevance of clinical trial data for medical practice are: (a) the availability of alternative therapy; (b) the suitability of alternative therapy; (c) the capability of data to be extrapolated to a new situation; and (d) various other factors such as price, convenience, or adverse reactions of the medicine." (Exh. I, Spilker 11/10/04 Decl. ¶ 7). Applying two of these factors, Dr. Spilker explains that if a medication was being used to prevent death a much smaller difference might be clinically significant. (Id. ¶ 8). Or if there were no alternative therapy a lower difference might be acceptable. However, for a drug that is used to prevent the relief of heartburn, a condition that does not lead to death and one for which there are numerous

alternative medications, a larger difference is required for the difference between two drugs to be clinically significant and to influence medical practice.

Dr. Spilker also considered the fact that normal biological variability is about 20%. (Exh. I, Spilker 11/10/04 Decl. ¶¶ 8-9; Exh. D, Spilker 12/14/04 Decl. ¶¶ 2-3). This fundamental principle was not disputed by any of AstraZeneca's experts. In essence, people's own experiences with medication can vary by as much as 20%, and results between patients can vary by as much as 20%. Thus, to seek a 20% difference would be reasonable. (Exh. D, Spilker 12/14/04 Decl. ¶ 2). [Redacted]

[Redacted]

[Redacted] Thus, biological variability can be a consideration in determining clinical significance.

Here again, Dr. Spilker's expertise in the design of clinical trials provides the basis for his opinion that a 20% difference should be sought. He then applies the 20% threshold to the studies in this case finding that there are no clinically relevant differences. (Exh. I, Spilker 11/10/04 Decl. ¶¶ 10-11, 13, 18-20, 23-25, 27-32). If AstraZeneca has points that it believes weaken Dr. Spilker's opinion it is free to cross-examine Dr. Spilker. However, those points go to the weight of Dr. Spilker's opinion not its admissibility.

AstraZeneca's attempts to create the impression that neither gastroenterologists nor FDA would ever seek a 20% difference are inaccurate. Regarding Nexium's own drug application, FDA stated "Although the therapeutic gains [Nexium over Placebo] are clinically meaningful (20% in one trial, 30% in the other), the proportion of patients experiencing complete relief of heartburn after 4 weeks of treatment with the drug is low: 34% in trial 225 and 42% in study 226." (Exh. J at 162). Here, FDA found the 20% and 30% differences to be meaningful, and yet cautions that a number as high as 42% can be considered "low."

Similarly, FDA found that differences of 12% were not clinically meaningful: The Medical Officer's Review of Nexium's NDA stated "a superiority claim of NEXIUM over omeprazole is NOT SUPPORTED by either the comparison of [Nexium]20 vs [omeprazole]20 or the comparison of [Nexium]40 vs [omeprazole]20." (Exh. J at 5). The differences found included 6.2%, 9%, 9.7% and 12%. (Id.). Even in light of these percentage differences, FDA concluded that "[t]here are no studies which demonstrate that [Nexium] is superior to [omeprazole], clinically or even statistically." (Exh. J at 161). Thus, regarding PPIs FDA found that 20% was clinically meaningful but 12% was not.



Redacted

Taking this evidence together demonstrates that there are different opinions regarding clinical significance. Dr. Spilker's opinions are as valid as any of AstraZeneca's experts' opinions. Just because Dr. Spilker's opinions are based on a different expertise than AstraZeneca's experts, does not make his opinion less reliable; in fact, it provides the jury with another viewpoint to consider.

### 3. There is No "20% Rule"

AstraZeneca's repeated attempts to mischaracterize Dr. Spilker's testimony as suggesting or referring to a rule are disingenuous. In his declaration Dr. Spilker stated that there "is no rule of fixed percent for establishing clinical significance." (Exh. D, Spilker 12/14/04 Decl. ¶ 4). He further commented that "because of the large number of variables that influence clinical significance, neither the FDA nor any well-respected groups have established guidelines of the magnitude of difference between two drugs that is clinically significant." (Id.). At his deposition, Dr. Spilker confirmed this view and agreed to call it "the 20% rule" for purposes of the deposition only. (Exh. A, Spilker Depo. at 113-14 ("I'm not aware of this 20 percent rule, and I do take exception to your calling it a rule, because I've described it as a spectrum going from a very low number up to probably 30 percent in some cases. And so to call it a 20 percent rule, I'm happy to deal with that and accept that for the purpose of this deposition, but I would never, ever write that there is anything like a 20 percent rule.")). Thus, AstraZeneca's attempts to describe Dr. Spilker's opinion as a rule are misleading.

### 4. Dr. Spilker May Opine on the Concept of Clinical Significance

Dr. Spilker also offers opinions on the meaning of clinical significance and its interaction with statistical significance. Several of Dr. Spilker's books address this interplay and its importance in the interpretation of data from clinical trials. In fact, Dr. Spilker has written more on this subject, certainly than any of the experts in this case, and possibly more than anyone else. Many leading journals have provided book reviews of his books that attest to their authoritative nature. AstraZeneca has offered no proof that Dr. Spilker's opinion are not widely-accepted in this area; in fact, AstraZeneca quotes Dr. Spilker's book when addressing this very subject matter.

Although AstraZeneca claims that Dr. Spilker's book supports its view that it is the "rare" case that something is not clinically significant if it is statistically significant, Dr. Spilker actually states in both his declaration and his book that it is not unusual to have one without the other. (Exh. I, Spilker 11/10/04 Decl. ¶¶ 4-5; Exh. C at 507, 510-14). And in those pages of his book, after the ones included by AstraZeneca, he explains all the possible resulting iterations between clinical and statistical significance. A jury would find this type of explanation useful when determining the relevance of clinical and statistical significance. AstraZeneca has provided no basis and none exists to exclude Dr. Spilker's explanation of the concept of clinical significance and how it interacts with statistical significance.

C.  **AstraZeneca Misconstrues a Number of Pieces of Evidence**

On pages 9 through 11 of its brief, AstraZeneca lists a number of evidentiary points that it claims demonstrates that TAP and its other expert, Dr. Robinson, have rejected the opinions of Dr. Spilker. Each of these points go to the weight of Dr. Spilker's opinions, not their admissibility. If TAP, Dr. Robinson or anyone else has opined differently, AstraZeneca may cross-examine Dr. Spilker; but that does not mean his opinions do not meet the Daubert criteria. Even so, for each point AstraZeneca misreads the evidence.

For example, AstraZeneca refers to consensus panel guidelines entitled *Improving the Management of GERD, Evidence-based Therapeutic Strategies*. AstraZeneca states that this organization "posited that efficacy differences in treatment of GERD as low as seven percent between over-the-counter antacids and placebo are 'clinically meaningful'". In fact, the actual statement makes no reference to clinical superiority. But more important, when referencing the product here – PPIs (not antacids or $H_2RAs$) – the consensus panel concludes:

> "[n]o clinical evidence exists to support differences
> between available PPIs for treatment of endoscopy–

negative GERD. For erosive esophagitis, esomeprazole has
been inconsistently found to have higher esophagitis
healing rates than omeprazole and lansoprazole; the clinical
significance of this is not substantiated." (Exh. L at 14).

None of these points further AstraZeneca's arguments that Dr. Spilker's opinions should be excluded. In fact, they show that Dr. Spilker's opinions are not only supported by his own expertise but by others, including those in the gastroenterology field.

## CONCLUSION

AstraZeneca's motion to exclude the opinions of Dr. Bert Spilker is without merit and should be denied.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

---

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant-Counterclaimant
TAP Pharmaceutical Products Inc.*

*Of Counsel:*

Thomas C. Morrison
Karla G. Sanchez
Deborah Steinberger
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

George C. Kokkines
TAP Pharmaceutical Products Inc.

Dated: December 14, 2005
164632.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of December, 2005, the attached **TAP PHARMACEUTICAL PRODUCTS INC.'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. BERT SPILKER** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Josy W. Ingersoll, Esquire<br>Young Conaway Stargatt & Taylor<br>1000 West Street<br>17th Floor<br>Wilmington, DE 19801 | HAND DELIVERY |
| Harold P. Weinberger, Esquire<br>Kramer Levin Naftalis & Frankel LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 | VIA FEDERAL EXPRESS |

/s/ Lauren E. Maguire
_____
Lauren E. Maguire

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of December, 2005, the attached **PUBLIC VERSION OF TAP PHARMACEUTICAL PRODUCTS INC.'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. BERT SPILKER** was served upon the below-named counsel of record at the address and in the manner indicated:

Josy W. Ingersoll, Esquire                                            <u>HAND DELIVERY</u>
Young Conaway Stargatt & Taylor
1000 West Street
17th Floor
Wilmington, DE 19801

Harold P. Weinberger, Esquire                                    <u>VIA FEDERAL EXPRESS</u>
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036


*/s/ Lauren E. Maguire*
_____
Lauren E. Maguire