**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ASTRAZENECA LP,                              )
                                             )
                                             )
                       Plaintiff,            )
                                             )    C.A. No. 04-1332-KAJ
              - against -                     )
                                             )
TAP PHARMACEUTICAL PRODUCTS INC.,            )
                                             )
                       Defendant.            )

**TAP PHARMACEUTICAL'S ANSWERING BRIEF IN OPPOSITION TO
ASTRAZENECA'S MOTION TO STRIKE JURY DEMAND**

> ASHBY & GEDDES
> Steven J. Balick (I.D. #2114)
> John G. Day (I.D. #2403)
> Lauren E. Maguire (I.D. #4261)
> 222 Delaware Avenue, 17th Floor
> P.O. Box 1150
> Wilmington, Delaware 19899
> (302) 654-1888
>
> *Attorneys for Defendant-Counterclaimant
> TAP Pharmaceutical Products Inc.*

*Of Counsel:*

Thomas C. Morrison
Karla G. Sanchez
Deborah Steinberger
Amanda K. Kay
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

George C. Kokkines
TAP Pharmaceutical Products Inc.

Dated: January 12, 2006
165584.1

## Table of Contents

**Page**

Table of Authorities ............................................................................................................. ii

INTRODUCTION AND SUMMARY ..................................................................................1

    A.    The Statute .............................................................................................................2

    B.    Dairy Queen and its Progeny .................................................................................3

    C.    The Cases Cited by AstraZeneca Are Not Controlling............................................7

    D.    TAP's Claim for The Cost of AstraZeneca's Advertising Campaign ................................................................................................................9

CONCLUSION......................................................................................................................11

## Table of Authorities

**Page**

### CASES

Alcan Int'l Ltd. v. The S.A. Day Mfg. Co., Inc.,
179 F.R.D. 398 (W.D.N.Y. 1998)............................................................6

Alpo Petfoods, Inc. v. Ralston Purina Co.,
720 F. Supp. 194 (D.D.C. 1989), rev'd in part on
other grounds, 913 F.2d 958 (D.C. Cir. 1990)........................................9

American Cyanamid Co. v. Sterling Drug, Inc.,
649 F. Supp. 784 (D.N.J. 1986) .........................................................7, 8

Burgess v. General Elec. Co.,
285 F. Supp. 788 (D.N.J. 1968) ..............................................................8

Castrol, Inc. v. Pennzoil Quaker State Co.,
169 F. Supp. 2d 332 (D.N.J. 2001) .........................................................8

Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,
494 U.S. 558 (1990)................................................................................7

Dairy Queen, Inc. v. Wood,
369 U.S. 469 (1962)........................................................................*Passim*

Daisy Group, Ltd. v. Newport News, Inc.,
999 F. Supp. 548 (S.D.N.Y. 1998)......................................................5, 6

George Basch Co. v. Blue Coral Inc.,
968 F.2d 1532 (2d Cir. 1992)..................................................................5

In re Hechinger Investment Co. of Delaware,
327 B.R. 537 (D. Del. 2005)....................................................................7

Ideal World Marketing, Inc. v. Duracell, Inc.,
997 F. Supp. 334 (E.D.N.Y. 1998) ......................................................4, 5

Kennedy v. Lakso Co.,
414 F.2d 1249 (3rd Cir. 1969) ............................................................4,8

Oxford Industries, Inc. v. Hartmarx Corp.,
15 U.S.P.Q. 2d 1648 (N.D. Ill. 1990) ...............................................*Passim*

Securities Exchange Comm'n v. Hughes Capital Corp.,
124 F.3d 449 (3d Cir. 1997)....................................................................7

**Table of Authorities**
(continued)

**Page**

Swofford v. B & W, Inc.,
  336 F.2d 406 (5th Cir. 1964) ................................................................8

Tandy Corp. v. Malone & Hyde, Inc.,
  769 F.2d 362 (6th Cir. 1985) ................................................................8

U-Haul Intern. v. Jartran, Inc.,
  793 F.2d 1034 (9th Cir. 1986) ..............................................................9


### STATUTES

Lanham Act, 15 U.S.C. § 1117(a) ..........................................................2

Lanham Act, 15 U.S.C. § 35 ..............................................................2,6

Lanham Act, 15 U.S.C. § 35(a) ..............................................................2

Lanham Act, 15 U.S.C. § 35(b) ..............................................................2


### OTHER AUTHORITIES

5 McCarthy on Trademarks and Unfair Competition,
  § 32:124 (4th ed.) ................................................................................4

Koelemay, Monetary Relief in Trademark Infringement Cases,
  497 PLI/Pat 287 (1997) ........................................................................8

## INTRODUCTION AND SUMMARY

AstraZeneca's brief is half correct.  It is correct in the sense that the remedy of an accounting for profits is frequently regarded as equitable in nature.  But in trademark and false advertising cases arising under the Lanham Act, a plaintiff is entitled to recover damages based upon *either* (i) its own measurable damages, such as lost profits or diminished market share, or (ii) the profits earned by the defendant as a result of its infringement or false advertising.  In the latter case, the defendant's profits are merely a substitute for the plaintiff's own lost profits, which are frequently difficult to measure.  Moreover, both types of recovery are characterized by § 35 of the Lanham Act as "compensation and not a penalty".

Beginning with the U.S. Supreme Court's landmark decision in <u>Dairy Queen, Inc.</u> v. <u>Wood</u>, 369 U.S. 469 (1962), the courts have held that where a Lanham Act plaintiff seeks *compensation* for its injury by means of a recovery of defendant's profits, its claim is legal – not equitable – and it is entitled to a jury trial.  TAP will prove at trial that it has been damaged by AstraZeneca's "Better is Better" advertising campaign; it will even prove that there is a rough correlation between the decline in its sales of PREVACID and the increase in AstraZeneca's sales of NEXIUM.  Nevertheless, TAP has chosen to base its damages claim on the profits earned by AstraZeneca as a result of its false advertising.

TAP also seeks damages on an alternative theory, <u>viz.</u>:  the amount of money spent by AstraZeneca on its "Better is Better" campaign, an amount just under $73 million.  This too is a legal – not an equitable – claim.

A. **The Statute**

Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), provides for monetary recovery in both trademark and false advertising cases. It states that a plaintiff is entitled, subject to the principles of equity, to recover:

> (1) [D]efendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cots or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. ***Such sum in either of the above circumstances shall constitute compensation and not a penalty.***

The very next section of the statute, § 35(b), begins as follows: "In assessing ***damages*** under subsection (a). . . ."

Clearly, § 35(a) establishes the mechanism for "assessing damages" in trademark and false advertising cases. These damages can be measured by either the plaintiff's lost profits or the defendant's wrongful profits. In both cases, the remedy is a legal one. This statutory scheme was explained in <u>Oxford Industries, Inc.</u> v. <u>Hartmarx Corp.</u>, 15 U.S.P.Q.2d 1648, 1654 (N.D. Ill. 1990), as follows:

> That profits were combined with damages in Section 1117 into a single monetary recovery which constitutes 'compensation', rather than included in Section 1116, the section authorizing injunctions, suggests that Congress considered an award of profits more in the nature of damages than as incidental to equitable relief.

> While Congress gave the court discretion to adjust the amount to be awarded, this discretion does not render the proceeding

equitable.

## B.  Dairy Queen and its Progeny

AstraZeneca's blanket statement that disgorgement of profits is an equitable remedy reflects an outdated view of Lanham Act remedies.  Modern case law, including the landmark Supreme Court case Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962), recognizes that whether a particular remedy is legal or equitable turns not on the terminology used but rather on the nature of the relief sought.

Dairy Queen involved a trademark licensing dispute in which the trademark owner sought (i) an injunction preventing defendant from continuing to use the DAIRY QUEEN mark and (ii) an accounting to determine the amount of money owed by defendant and a judgment for that amount.  The District Court struck defendant's demand for a jury trial on the ground that the complaint largely sought equitable relief.  The Supreme Court reversed.  The Court first construed the Complaint as requesting a monetary recovery based on breach of contract and trademark infringement.  It stated:

> The most natural construction of the respondents' claim for a money judgment would seem to be that it is a claim that they are entitled to recover whatever was owed them under the contract as of the date of its purported termination plus damages for infringement of their trademark since that date.  Alternatively, the complaint could be construed to set forth a full claim based upon both of these theories – that is, a claim that the respondents were entitled to recover both the debt due under the contract and damages for trademark infringement for the entire period of the alleged breach including that before the termination of the contract.

369 U.S. at 476.

The Court held that the complaint therefore presented a legal claim for which defendant was entitled to a jury trial. This was true despite the fact that Dairy Queen had demanded an "accounting". As the Court explained:

> [T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings. The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies is, as we pointed out in Beacon Theatres, the absence of an adequate remedy at law. Consequently, in order to maintain such a suit on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the "accounts between the parties" are of such a "complicated nature" that only a court of equity can satisfactorily unravel them. In view of the powers given to District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met. But be that as it may, this is certainly not such a case. A jury, under proper instructions from the court, could readily determine the recovery, if any, to be had here, whether the theory finally settled upon is that of breach of contract, that of trademark infringement, or any combination of the two. ***The legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's [defendant's] business records.***

369 U.S. at 477-79.

Dairy Queen has been acknowledged as the seminal case establishing the right to trial by jury in unfair competition cases where a monetary recovery is sought. As the leading commentator on trademark law has stated:

> If a trademark infringement case is brought for both an injunction and money damages or profits, there is a right to trial by jury as to any factual issues arising under the damage or profit claim.

5 McCarthy on Trademarks and Unfair Competition, § 32:124 (4th ed.). Accord Ideal World Marketing, Inc. v. Duracell, Inc., 997 F. Supp. 334, 339 (E.D.N.Y. 1998) ("there is no reason why a properly instructed jury could not assess profits in the same way as it would be expected

to fix damages, subject to the court's considerable discretion"); <u>Oxford Industries, Inc.</u> v.

<u>Hartmarx Corp.</u>, 15 U.S.P.Q.2d 1648, 1654 (N.D. Ill. 1990) (jury trial on plaintiff's claim for

defendant's profits was proper because "a claim for a trademark infringer's profits is more

analogous to a suit for damages than one for restitution").

      In <u>Kennedy</u> v. <u>Lakso Co.</u>, 414 F.2d 1249 (3rd Cir. 1969), the Third Circuit applied

the <u>Dairy Queen</u> ruling to a patent case, and held that a patent infringement action seeking

injunctive relief, damages, and profits was subject to a jury trial.  The Third Circuit explained

that the distinction between a plaintiff's claim for "damages" or for defendant's "profits" was of

no consequence in the context of the right to a jury trial.  It stated:

> [N]o distinction can be drawn which would justify recognition of
> the right to jury trial for "damages" and its denial in a claim for
> "profits" on the theory that "damages" are recoverable in an action
> at law whereas "profits" have their origin in equitable
> principles. . . .  For whether the patentee's recovery is based upon
> "damages" – the loss to him, or upon "profits" – the unjust
> enrichment of the infringer, the underlying issue remains
> essentially the same – infringement.

414 F.2d at 1253.  There is no reason why this decision is not equally applicable to trademark

infringement suits.

      Some courts, such as the courts in <u>Oxford</u> v. <u>Hartmarx</u> and <u>Ideal World</u> v.

<u>Duracell</u>, have held that a trademark plaintiff is **_always_** entitled to a jury trial when pursuing a

claim for defendant's profits, regardless of the theory under which plaintiff seeks recovery.  As

the court in <u>Ideal World</u> said, the right to a jury trial cannot depend on "subtle distinctions"

between various rationales for recovering profits.  997 F. Supp. at 338.

      Other courts have ruled more narrowly, holding that a claim for profits is legal in

nature **_so long as the profits are sought as a proxy for plaintiff's damages_**.  For example, in

<u>Daisy Group, Ltd.</u> v. <u>Newport News, Inc.</u>, 999 F. Supp. 548, 552 (S.D.N.Y. 1998), the court

pointed out that recovery of the infringer's profits is available under several different rationales: (i) if the defendant is unjustly enriched; (ii) if the plaintiff sustained damages; or (iii) if an accounting is necessary to deter infringement. Because the plaintiff in that case sought profits as an alternative measure of damages due to the difficulty of proving actual lost sales, the court found the remedy of profits was "fundamentally compensatory and legal in nature". Accord George Basch Co. v. Blue Coral Inc., 968 F.2d 1532, 1539 (2d Cir. 1992) ("[h]istorically, an award of defendant's profits has . . . served as a rough proxy measure of plaintiff's damages"); Alcan Int'l Ltd. v. The S.A. Day Mfg. Co., Inc., 179 F.R.D. 398, 402 (W.D.N.Y. 1998) ("it is clear that S.A. Day seeks profits as a rough proxy measure of its damages, given the difficulty of establishing damages due to product disparagement. This type of remedy is fundamentally compensatory and legal in nature.")

  As in the above cases, TAP seeks AstraZeneca's profits as a way to approximate its own damages from the "Better is Better" advertising campaign. In his report, Mr. Hoffman notes that:

> During the period of the 'Better' campaign, Prevacid lost sales to Nexium. Some users switched from Prevacid to Nexium. From September 2004 through March 2005, Prevacid sales were $259 million less than the pervious seven months. This represents an average decline of approximately $37 million per month, or slightly more than Nexium's sales gains during the same period.

Rpt., AstraZeneca Exh. D at p. 5

  Nevertheless, Mr. Hoffman chose to rest his calculation on AstraZeneca's profits. But he did so merely as a method of measuring TAP's damages. This is clear from the following heading in Hoffman's Report:

> Opinion: **TAP's damages, as measured by AstraZeneca's profits** from sales of Nexium resulting from the 'Better is Better' advertising, amount to $247 million excluding prejudgment interest.

Id.

As permitted by § 35 of the Lanham Act, and as recognized by case law, TAP is pursuing AstraZeneca's profits as a measure of its own damages. Its claim is thus "fundamentally compensatory and legal in nature," and it is entitled to a jury trial. Daisy Group v. Newport News, 999 F. Supp. at 552. As stated in Oxford Industries, Inc. v. Hartmarx Corp., 15 U.S.P.Q.2d 1648, 1654 (N.D. Ill. 1990):

> As a practical matter, an award of profits is really a surrogate for damages. Unless he can show diversion of sales, a trademark owner will be hard pressed to prove damages, and even if he shows confusion of the marks and diversion of customers it is difficult to show how many customers bought the infringer's product who would have bought the trademark owner's but for the deception.

## C. The Cases Cited by AstraZeneca Are Not Controlling

The cases on which AstraZeneca relies essentially fall into two categories: (1) non-Lanham Act cases discussing disgorgement of profits and (2) Lanham Act cases that are nonetheless distinguishable based on crucial facts.

AstraZeneca boldly asserts that "it has been uniformly held that disgorgement of profits is an equitable remedy." (Br. 4) But the cases cited by AstraZeneca show that this "uniform" rule is only true, at most, in non-Lanham Act cases. E.g. Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558 (1990) (suit alleging employer's breach of collective bargaining agreement); Securities Exchange Comm'n v. Hughes Capital Corp., 124 F.3d 449 (3d Cir. 1997) (civil suit for securities fraud); In re Hechinger Inv. Co. of Delaware, 327 B.R. 537 (D. Del. 2005) (suit alleging fraudulent conveyance against lenders). These cases do not provide any guidance as to the nature of the "profits" remedy available under the Lanham Act.

Nor do the unfair competition cases cited by AstraZeneca support its contention that TAP is not entitled to a jury. In American Cyanamid Co. v. Sterling Drug, Inc., 649 F. Supp. 784 (D.N.J. 1986), the plaintiff had amended its prayer for relief to *waive* its claim for damages and to seek only disgorgement of defendant's profits "*as trustee ex maleficio*." Significantly, the court cited a number of patent and trademark cases that uphold the right to a jury trial where the plaintiff seeks to recover defendant's profits (649 F. Supp. at 788):

- Kennedy v. Lasko, 414 F.2d at 1250 (where the Third Circuit upheld the right to a jury trial in a patent infringement suit seeking an accounting for profits and damages);

- Tandy Corp. v. Malone & Hyde, Inc., 769 F.2d 362, 364 (6th Cir. 1985) ("the damages or accounting aspect of trademark infringement actions are considered legal actions for purposes of the jury trial clause of the Seventh Amendment");

- Swofford v. B & W, Inc., 336 F.2d 406, 410-11 (5th Cir. 1964) (upholding jury demand in patent infringement action requesting, inter alia, accounting for profits and damages);

- Burgess v. General Elec. Co., 285 F. Supp. 788 (D.N.J. 1968) (same).

In rejecting Cyanamid's request for a jury trial, the court did not discredit these cases; rather, it distinguished them based on the fact that Cyanamid had expressly waived its damages claim Id. at 788-89.

Because TAP has not waived its claim for damages, American Cyanamid is not applicable. Moreover, it is doubtful that American Cyanamid is still good law because its distinction between "profits" and "damages" in trademark cases is inconsistent with the Supreme Court's ruling in Dairy Queen. See Oxford Industries v. Hartmarx, 15 U.S.P.Q.2d at 1653. The Oxford court rejected the holding in American Cyanamid that a claim for trademark profits is equitable, saying:

> With respect, we believe that this [American Cyanamid's] analysis is inconsistent with Dairy Queen.

Id.

> Citing cases from several jurisdictions, one commentator has concluded that:
>
> > Following the Supreme Court's 1962 decision in Dairy Queen, Inc.
> > v. Wood, most courts have held that claims under Section 35 for
> > damages or for an accounting of profits are 'legal' claims subject to
> > the Seventh Amendment right to trial by jury.

Koelemay, Monetary Relief in Trademark Infringement Cases, 497 PLI/Pat 287 (1997).

The other Lanham Act case cited by AstraZeneca, Castrol, Inc. v. Pennzoil Quaker State Co., 169 F. Supp. 2d 332, 334 (D.N.J. 2001), is also inapposite. First, the court characterized Pennzoil's argument that it was deprived of its right to a jury trial as "woven out of whole cloth" because there was never a mention of a jury trial at case management conferences or at the commencement of the trial on the merits. In contrast, TAP included a jury demand in its Counterclaim (see Exh. A to AstraZeneca's motion), and the probability of a jury trial was specifically discussed in the scheduling conference conducted by telephone on January 10, 2005. Second, the Castrol court followed the logic of American Cyanamid, drawing a distinction that does not exist in the case at bar – that plaintiff sought only disgorgement of profits and not damages. That distinction is inappropriate in light of Dairy Queen and its progeny.

## D.  TAP's Claim for The Cost of AstraZeneca's Advertising Campaign

As an alternative measure of damages, TAP also seeks to recover the amount spent by AstraZeneca on its "Better is Better" advertising campaign. This is an appropriate measure of damages in a false advertising case. E.g., Alpo Petfoods, Inc. v. Ralston Purina Co., 720 F. Supp. 194 (D.D.C. 1989), rev'd in part on other grounds, 913 F.2d 958 (D.C. Cir. 1990). As the District Court stated:

> After considering the various measures of damages, the court finds
> the most appropriate measure would be one that is based on
> Ralston's advertising expenditures as they pertain to the

dissemination of its deceptive message. This form of relief has
support in the case law and would appear to be particularly
appropriate here. See U-Haul Intern. v. Jartran, Inc., 793 F.2d
1034, 1037 (9th Cir. 1986).

720 F. Supp. at 215.

At trial, TAP will present evidence of AstraZeneca's spending on the "Better is

Better" campaign. Mr. Hoffman's report specifically alludes to this fact and points out that,

while the number in question is quite high, it nevertheless understates the injury to TAP from

AstraZeneca's campaign. As Mr. Hoffman states:

> According to AstraZeneca's response to Interrogatory No. 3 from
> TAP's Second Set of Interrogatories, dated August 25, 2005, total
> DTC [Direct to Consumer advertising] spending during the
> "Better" campaign was $72,690,211. I understand that one
> measure of TAP's damages could be simply the amount spent by
> AstraZeneca on its false advertising campaign. However, this
> would understate both the benefit of the advertising to AstraZeneca
> and the damage to TAP. AstraZeneca expected, and realized,
> returns in excess of its expenditures. For example, a Kaiser study,
> conducted by Harvard researchers, indicated that every extra dollar
> spent on direct-to-consumer drug advertising results in an
> additional $4.20 in sales. In fact, AstraZeneca realized slightly
> better returns with incremental sales of approximately
> $382 million.

Rpt., p. 7.

TAP is entitled to measure its damages by several different methods, including

AstraZeneca's profits from its false advertising and the cost to AstraZeneca of disseminating the

false advertising. Both methods of recovery are meant to compensate TAP for its injury, and

both raise legal claims entitling TAP to a jury trial.

## CONCLUSION

For all the reasons set forth above, AstraZeneca's motion to strike TAP's jury demand is without merit and should be denied.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Tap Pharmaceutical Products Inc.*

*Of Counsel:*

Thomas C. Morrison
Karla G. Sanchez
Deborah K. Steinberger
Amanda K. Kay
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

George C. Kokkines
TAP Pharmaceutical Products Inc.

Dated:  January 12, 2006
165584.1

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of January, 2006, the attached **TAP**

**PHARMACEUTICAL'S ANSWERING BRIEF IN OPPOSITION TO ASTRAZENECA'S**

**MOTION TO STRIKE JURY DEMAND** was served upon the below-named counsel of record

at the address and in the manner indicated:

Josy W. Ingersoll, Esquire                                    HAND DELIVERY
Young Conaway Stargatt & Taylor
1000 West Street
17th Floor
Wilmington, DE 19801

Harold P. Weinberger, Esquire                              HAND DELIVERY
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036


                                                    */s/ John G. Day*
                                                    _____
                                                    John G. Day