**REDACTED -- Public Version, filed 1/20/06**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTRAZENECA LP, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-1332-KAJ |
| | ) | |
| vs. | ) | ~~CONFIDENTIAL~~ |
| | ) | ~~FILED UNDER SEAL~~ |
| TAP PHARMACEUTICAL PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF OF PLAINTIFF ASTRAZENECA LP
IN SUPPORT OF ITS MOTION TO
EXCLUDE THE PROPOSED EXPERT TESTIMONY OF BERT SPILKER**

Josy W. Ingersoll (No. 1088)
*jingersoll@ycst.com*
John W. Shaw (No. 3362)
*jshaw@ycst.com*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building — 17th Floor
1000 West Street
Wilmington, Delaware  19899-0391
(302) 571-6600

Attorneys for Plaintiff AstraZeneca LP

Of Counsel:

Harold P. Weinberger
Jonathan M. Wagner
Kerri Ann Law
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated:  January 12, 2006

**REDACTED -- Public Version, filed 1/20/06**

<u>Table of Contents</u>

<u>Page</u>

Table of Authorities ................................................................................................................. ii

Preliminary Statement .............................................................................................................. 1

Argument ................................................................................................................................... 1

      DR. SPILKER'S PROPOSED TESTIMONY FALLS WELL SHORT OF
      MEETING THE REQUIREMENTS OF RULE 702 AND *DAUBERT* ................................... 1

          A.     Dr. Spilker is not qualified to opine concerning the clinical
                 significance of the Castell and Fennerty studies ..................................................... 1

          B.     Dr. Spilker has not offered the requisite support for his proposed
                 opinion concerning the clinical significance of the Castell and
                 Fennerty studies .............................................................................................. 4

Conclusion ............................................................................................................................... 9

REDACTED -- Public Version, filed 1/20/06

Table of Authorities

Cases:

*Advanced Medical Optics, Inc. v. Alcon, Inc.*,
    C.A. No. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803 (D. Del. Apr. 7, 2005) ....................3, 6

*Amorgianos v. National R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002) ....................................................................................................4

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
    350 F.3d 316 (3d Cir. 2003) .................................................................................................5, 6

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*,
    No. Civ. A. 01-669-KAJ, 2004 WL 1534786 (D. Del. May 21, 2004) ..................................4

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*,
    350 F. Supp. 2d 582 (D. Del. 2004)........................................................................................4

*Cuffee v. Dover Wipes Co.*,
    334 F. Supp. 2d 565 (D. Del. 2004)......................................................................................6, 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)..........................................................................................................1, 4, 5, 8

*Koppell v. New York State Bd. Of Elections*,
    97 F. Supp. 2d 477 (S.D.N.Y. 2000) ......................................................................................6

*Oxford Gene Technology Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004).......................................................................................8

*Praxair, Inc. v. ATMI, Inc.*,
    2005 WL 2994539 (D. Del. Nov. 8, 2005) .............................................................................6

*In re Rezulin Products Liability Litigation*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ....................................................................................8

*Saldona v. Kmart Corp.*,
    260 F.3d 228 (3d Cir. 2001) ...................................................................................................5

*Surace v. Caterpillar, Inc.*,
    111 F.3d 1039 (3d Cir. 1997) .................................................................................................3

Rules:

Fed. R. Civ. P. 26(a)(2)(B) ..............................................................................................................6

Fed. R. Evid. 702 ....................................................................................................................1, 5, 8

DB01:1962897.1                                                                                        057159.1005

**REDACTED -- Public Version, filed 1/20/06**

<u>Preliminary Statement</u>

Plaintiff AstraZeneca LP respectfully submits this reply memorandum in support of its motion to exclude the proposed expert testimony of Bert Spilker pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

AstraZeneca in its Opening Brief noted that Dr. Spilker's proposed testimony concerning the supposed lack of clinical significance of the treatment differences found in the Castell and Fennerty studies should be barred because, in light of his own definition of clinical significance, Dr. Spilker (i) has no qualifications to opine on the issue, and (ii) has failed to offer proper support for his opinion. Nothing offered by TAP in its opposition papers overcomes these deficiencies.

<u>Argument</u>

DR. SPILKER'S PROPOSED TESTIMONY
FALLS WELL SHORT OF MEETING THE
<u>REQUIREMENTS OF RULE 702 AND *DAUBERT*</u>

A.    Dr. Spilker is not qualified to opine concerning the clinical
      <u>significance of the Castell and Fennerty studies</u>

TAP misconceives the reasons why Dr. Spilker is not qualified to testify concerning the issue of the clinical significance of the Castell and Fennerty studies. According to TAP, Dr. Spilker's testimony on that issue satisfies *Daubert* because of his "uncontroverted expertise in the design, development and interpretation of clinical trials." (TAP Br. at 1) (D.I. 109). Dr. Spilker's experience in clinical testing would be relevant if he were critiquing the methodology used in the tests relied upon by AstraZeneca. He is not, for Dr. Spilker has already opined that the results of the studies are reliable. (*E.g.,* Spilker 145-46: "I have no reason to

**REDACTED -- Public Version, filed 1/20/06**

question the results," AstraZeneca's Reply Appendix in Further Support of its Motion to Exclude

the Expert Testimony of Bert Spilker ("Rep. App."), Exh. A; Spilker Tr. 249-51, AstraZeneca's

Appendix in Support of its Motion to Exclude the Expert Testimony of Bert Spilker ("Op.

App."), Exh. G).                    REDACTED

Rather, Dr. Spilker's lack of qualifications is rooted in his own definition of

clinical significance, described in his report/declaration as follows:

> The minimal amount of change in an important parameter that will
> encourage a physician to alter his or her practice of medicine and
> to use a drug or medical product in his or her patients.

(Spilker decl., ¶4, Appendix Exh. H) (D.I. 11). *See also* TAP Br. at 4 (noting the definition of

clinical significance in Dr. Spilker's textbook:  "How large a response in the most important

parameter(s) measured would be necessary to convince physicians to use the clinical trial

medicine or noncompliance test therapy in treating their patients?").

As demonstrated in AstraZeneca's Opening Brief, Dr. Spilker lacks the expertise

to determine whether the treatment differences demonstrated in the Castell and Fennerty trials

would influence the prescribing habits of physicians, and thus whether these results are clinically

significant.  Most notably, Dr. Spilker himself does not prescribe PPIs and never has, and

therefore he cannot opine as to the impact of the Castell and Fennerty results on his own

prescribing habits.  TAP's opposition papers do not dispute that Dr. Spilker (i) is not an expert in

the field of gastroenterology or a GI specialist (Spilker Tr. 36-37, 162), (ii) has not treated

patients on a full time basis in nearly thirty years (*id.* at 17-18), (iii) has not treated patients for

GERD in 26 years (*id.* at 38-39), (iv) has not seen a patient with erosive esophagitis in 28 years

2

**REDACTED -- Public Version, filed 1/20/06**

(*id.* at 54-55), (v) has never once prescribed a PPI to a patient (*id.* at 41), (vi) has never personally observed the effect of any PPI on any patient (*id.* at 42-43), and (vii) has never seen the reaction of any patient to PREVACID® (lansoprazole) or NEXIUM® (esomeprazole magnesium) in terms of healing erosive esophagitis. (*Id.* at 97). *See Surace v. Caterpillar, Inc.* 111 F. 3d 1039, 1055-56 (3d Cir. 1997) (barring testimony on ground that expert not qualified to opine on subject in question, despite his qualifications in other areas); *Advanced Medical Optics, Inc. v. Alcon, Inc.,* C.A. No. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803, at *26 - *27 (D. Del. Apr. 7, 2005) (same).

Additionally, TAP in its opposition papers does not dispute that Dr. Spilker failed to compensate for his lack of clinical experience with the drugs in question by speaking to gastroenterologists concerning their reaction to the Castell and Fennerty data or surveying the medical literature on the issue. There is no dispute that Dr. Spilker (i) has not spoken to any gastroenterologists concerning their reaction to the Castell and Fennerty studies (*e.g.,* Spilker Tr. 174-75), (ii) has not reviewed any literature discussing the results of the studies (*e.g. id.* at 175), (iii) has not spoken to anyone in the GI field concerning what percentage difference in erosive esophagitis healing rates is considered clinically significant (*id.* at 53), (iv) did not look at any literature in the field addressing the issue of what difference in erosive esophagitis healing rates is considered clinically significant (*id.* at 55), and (v) has not done *any* empirical work to determine whether a particular level of efficacy in a PPI is considered clinically significant. (*Id.* at 64). *See Advanced Medical Optics, Inc.,* 2005 U.S. Dist. LEXIS 5803, at *10 (excluding proposed expert opinion concerning the "general preferences of other surgeons" concerning surgical procedures as "speculative and not supported by reliable data," where proposed expert had "no survey, study or scientific literature supporting his position").

3

**REDACTED -- Public Version, filed 1/20/06**

Against this backdrop, on what basis, other than sheer speculation and his own personal views, could Dr. Spilker opine that physicians' prescribing habits would not be influenced by the differences in treatment effect demonstrated in the Castell and Fennerty studies? None. On this ground alone, Dr. Spilker's proposed testimony should be barred. *See Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.,* 350 F. Supp. 2d 582, 594 (D. Del. 2004) (excluding testimony of expert whose opinion "does not provide an even remotely adequate explanation to bridge the 'analytical gap between the data and the opinion offered'"); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,* No. Civ. A. 01-669-KAJ, 2004 WL 1534786, at *4 (D. Del. May 21, 2004) (excluding expert opinion as unreliable where it appeared to be "based solely on his personal knowledge and experience, rather than any methodology, analysis, or factual support.").

B.    Dr. Spilker has not offered the requisite support for his proposed opinion concerning the clinical significance of the Castell and Fennerty studies

There is a second, independent reason why Dr. Spilker's testimony should be stricken. The principal basis for Dr. Spilker's proposed testimony that the results of the Castell and Fennerty studies are not clinically significant is his position that "Because biological variability between patients is often described as accounting for a 20 percent difference around the mean values in biological clinical sciences, differences below that number should not be considered clinically significant." (Spilker Decl., ¶9; Op. App. Exh. H). However, and as demonstrated in AstraZeneca's Opening Brief, Dr. Spilker failed to cite any authority in the gastroenterology field applying that standard. Going even further, the GI community -- including (i) TAP itself in clinical trials and Prevacid advertising, and (ii) TAP's other expert Dr. Robinson -- has rejected Dr. Spilker's approach. *See* AstraZeneca Opening

4

Brief at 9-11 (D.I. 95); *Amorgianos v. National R.R. Passenger Corp.,* 303 F.3d 256, 266 (2d Cir. 2002) (one factor in assessing reliability of expert's opinion under *Daubert* is "whether a particular technique or theory has gained 'general acceptance', in the relevant scientific community"). *Cf. Daubert*, 509 U.S. at 591-92 (expert testimony must 'fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry").

For these same reasons, allowing Dr. Spilker to testify bearing the mantle of an expert concerning any supposed but non-existent 20 percent threshold for clinical significance would be highly prejudicial. As the Supreme Court noted in *Daubert*, the reason why courts "exercise [] more control over experts than over lay witnesses" is that "Expert evidence can be both powerful and quite misleading because of the difficulty of evaluating it." *Daubert*, 509 U.S. at 595 (citation omitted). *See also Saldona v. Kmart Corp.* 260 F.3d 228, 232-33 (3d Cir. 2001)("Even if the evidence offered by the expert witness satisfied Rule 702, it may still be excluded if its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'"). (citation omitted). Given Dr. Spilker's failure to offer any supporting authority for his 20 percent threshold, there would be a strong likelihood of misleading the jury if the Court were to deem Dr. Spilker an expert on this issue.

TAP offers three responses to this dispositive point, but none saves Dr. Spilker's proposed testimony here. First, TAP argues that AstraZeneca has mistakenly characterized Dr. Spilker's opinion as laying down a "'rule' or 'principle' that clinical differences must equal 20%." (TAP Br. at 1. *See also id.* at 10). But that is precisely what Dr. Spilker stated in his report. *See* Spilker Decl., ¶¶ 8 & 9. Eliminating all doubt, TAP in its Opposition Brief acknowledges that "In this case, Dr. Spilker determined 20% was a reasonable number" to achieve clinical significance and that "a 20% difference should be sought." (TAP Br. at 1, 8).

5

REDACTED -- Public Version, filed 1/20/06

And as noted in AstraZeneca's Opening Brief, Dr. Spilker has admitted that he could not cite any authority holding that differences of 20 percent are required for clinical significance in any field, let alone for PPIs or other GERD treatments. (Spilker Tr. 134-36). *See Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003) (excluding expert's opinion where "[t]here was no literature confirming this theory, nor demonstrable tests. Lacking support, his testimony was speculative and unreliable"); *Koppell v. New York State Bd. Of Elections*, 97 F. Supp. 2d 477, 481 (S.D.N.Y. 2000) (rejecting expert report where "[t]he explanations in each instance are largely anecdotal and do not cite particular facts, pieces of literature, or articles").

Second,                      REDACTED

. It may be that, if admissible, these materials can be used to cross-examine AstraZeneca witnesses and experts at trial. Nevertheless, the documents cannot provide support for Dr. Spilker's proposed testimony. Even were he qualified to review and rely on these documents -- TAP offers no such support -- despite ample opportunity Dr. Spilker's report did not cite them. (Spilker Decl.; Op. App. Exh. H). Nor did the list of documents he reviewed include these materials. (*Id.* at page 14, "Materials Reviewed"). Finally, Dr. Spilker did not cite these materials at his deposition. (*E.g.*, Spilker Tr. 118). *See* Fed. R. Civ. P. 26(a)(2)(B); *Advanced Medical Optics v. Alcon, Inc.*, 2005 U.S. Dist. LEXIS 5803, at *32 (D. Del. Apr. 7, 2005) (precluding expert testimony where none of expert's reports "submitted during discovery contain[ed] the challenged reasons on which [the expert] now [sought] to rely for his opinion" and where such bases were likewise not identified during his deposition). *Cf. Praxair, Inc. v. ATMI, Inc.*, No. Civ. 03-1158-SLR, 2005 WL 2994539, at *463 (D. Del. Nov. 8, 2005) (excluding supplemental expert report that "contained new testing,

6

conclusions and theories . . . not contained in [expert's] original report"); *Cuffee v. Dover Wipes Co.*, 334 F. Supp. 2d 565 (D. Del. 2004) (excluding expert reports that were only disclosed as part of party's brief in opposition to motion for summary judgment).[1]

Third, TAP claims that Dr. Spilker is permitted to infer, based on the statistical plan in the Fennerty study, that the authors of that study protocol must have believed that a minimum of a ten percent difference in EE healing rates was clinically significant and the minimum meaningful difference, and because the difference in healing rates in the Fennerty study was less than ten percent, that difference was not clinically significant. (Spilker Tr. 166-168). As TAP puts it, Dr. Spilker supposedly "knows exactly what the 10% (or other %) difference [in the Fennerty trial] sought represents in the design of a clinical trial." (TAP Br. at 6). Not only is Dr. Spilker wrong as to what was intended by the 10 percent figure, *see* Op. App. Exh. N at ¶¶ 11-14 (D.I. 31) (in which Dr. Fennerty notes that the differences shown in the

---

[1] TAP in any event mischaracterizes much of the material. For example, TAP says that FDA has "caution[ed] that a number as high as 42% can be considered 'low'" in terms of clinical significance. (TAP Br. at 8). The very quote offered by TAP establishes that FDA was not addressing differences in treatment effect, but rather absolute healing rates.

TAP also cites the FDA Medical Officer's Review of the Nexium NDA, which, according to TAP, concluded that "a superiority claim of Nexium over omeprazole is NOT SUPPORTED by either the comparison of [Nexium] 20 vs. [omeprazole] 20 or the comparison of [Nexium] 40 vs [omeprazole] 20," despite purported "differences [of] 6.2%, 9%, 9.7% and 12%." (TAP Br. at 9, citing TAP Exh. J at 5). In fact, TAP has misquoted the Review, which actually states that "A superiority claim of NEXIUM over omeprazole is NOT SUPPORTED by either the comparison of H2O [Nexium] vs O2O [omeprazole] or the comparison of H4O [Nexium] vs H2O [Nexium]." H2O in the latter comparison is *Nexium, not omeprazole*, as TAP mistakenly claims. The differences of 6.2%, 9%, 9.7% and 12% cited by TAP were found in a test not referenced by the Review in the sentence quoted by TAP. As indicated on the page cited by TAP, the efficacy differences in the two studies actually cited by the Review -- (i) the study comparing H2O and O2O, and (ii) the study comparing H4O and H2O -- were *not* statistically significant. Thus, the Review's finding in no way supports TAP's position concerning clinical significance – and of course does not in any event overcome the obstacles to the admissibility of Dr. Spilker's testimony under *Daubert*.

**REDACTED -- Public Version, filed 1/20/06**

performance of Nexium and Prevacid in his clinical trial are clinically significant), but more importantly for the purposes this motion, and as noted in AstraZeneca's Opening Brief, this Court has joined others in barring expert testimony proposing to infer the purported intent or state of mind of a third party – just as TAP seeks to do here. *Oxford Gene Technology Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 (D. Del. 2004); *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004). TAP's opposition papers do not cite any authority to the contrary.

TAP is of course free at trial to cross-examine Dr. Fennerty concerning the significance of the statistical plan in his study. But TAP cannot, under the guise of "expert" testimony, offer a witness who will testify that Dr. Fennerty meant something other than what Dr. Fennerty has already averred. *Id.* No matter how "liberal" the standard for admissibility of expert opinions in the Circuit (TAP Br. at 7), Dr. Spilker's proposed testimony collides squarely with the requirements of *Daubert* and Rule 702 and should be stricken.

**REDACTED -- Public Version, filed 1/20/06**

<u>Conclusion</u>

For the reasons set forth here and in AstraZeneca's Opening Brief, the Court should exclude the testimony of Dr. Spilker in its entirety.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Josy W. Ingersoll (#1088)
*jingersoll@ycst.com*
John W. Shaw (#3362)
*jshaw@ycst.com*
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600

Attorneys for Plaintiff AstraZeneca LP

Of Counsel:

Harold P. Weinberger
Jonathan M. Wagner
Kerri Ann Law
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York  10036
(212) 715-9100

Dated:  January 12, 2006

DB01:1962897.1

057159.1005

**REDACTED -- Public Version, filed 1/20/06**

REPLY APPENDIX TO
MOTION TO EXCLUDE
SPILKER TESTIMONY

# REDACTED -- Public Version, filed 1/20/06

**AstraZeneca's Reply Appendix in
Further Support Of Its Motion To Exclude The
Expert Testimony of Bert Spilker**

## Table of Contents

<u>Description</u>                                                              <u>Tab</u>

Deposition Transcript of Bert Spilker, Ph.D., M.D.,
  October 28, 2005 ..................................................................................................... A

**REDACTED -- Public Version, filed 1/20/06**

# EXHIBIT A

**REDACTED -- Public Version, filed 1/20/06** Page 1

1

2    IN THE UNITED STATES DISTRICT COURT

3    DISTRICT OF DELAWARE

4    ------------------------------------x    COPY

5    ASTRAZENECA, LP,

6                           Plaintiff,

                            Civil Action No.

7           -against-           04-1332

8    TAP PHARMACEUTICAL PRODUCTS,

     Inc.,

9

                            Defendant.

10   -----------------------------------x

                            October 28, 2005

11                           8:55 a.m.

12        Deposition of BERT SPILKER, Ph.D., M.D.,

13   taken by the Plaintiff, pursuant to notice, at

14   the offices of Kramer, Levin, Naftalis &

15   Frankel, LLP, 1177 Avenue of the Americas, New

16   York, New York, before Marlene Lee, Certified

17   Shorthand Reporter, Certified Realtime

18   Reporter and Notary Public within and for the

19   State of New York.

20

21

22

23

24

25


**LEGALINK**
A **WORDWAVE** COMPANY

LegaLink Manhattan
420 Lexington Avenue, Suite 2108
New York, NY 10170

tel (212) 557-7400    www.legalink.com
tel (800) 325-3376
fax (212) 692-9171

1

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

**REDACTED -- Public Version, filed 1/20/06**

2

1

2  A P P E A R A N C E S:

3        Kramer, Levin, Naftalis & Frankel, LLP
         Attorneys for the Plaintiff
4              1177 Avenue of the Americas
               New York, New York
5
         BY:   JONATHAN WAGNER, ESQ.
6

7
         PATTERSON BELKNAP WEBB & TYLER, LLP
8        Attorneys for the Defendant
               1133 Avenue of the Americas
9              New York, New York  10036-6710

10       BY:   KARLA G. SANCHEZ, ESQ.

11

12       ALSO PRESENT:

13             JEFFREY FLEMING, ESQ.

14

15

16

17

18

19

20

21

22

23

24

25

3

| | 1 | BERT SPILKER, Ph.D., M.D. |
|---|---|---|
| | 2 | B E R T   S P I L K E R , Ph.D. ,  M.D. , |
| | 3 | having been called as a witness and duly sworn |
| | 4 | by the notary (Marlene Lee), was examined and |
| 08:53:33 | 5 | testified as follows: |
| 08:53:33 | 6 | EXAMINATION BY MR. WAGNER: |
| 08:53:37 | 7 | Q.    Dr. Spilker, good morning. |
| 08:53:40 | 8 | What legal papers have you looked at in |
| 08:53:42 | 9 | connection with this case? |
| 08:53:44 | 10 | A.    I looked at the reports that I |
| 08:53:47 | 11 | wrote, the reports written by Dr. Malcolm |
| 08:53:55 | 12 | Robinson, but before I go on, are you |
| 08:53:57 | 13 | referring to the last couple days?  Or ever? |
| 08:54:01 | 14 | Q.    Let's go back to last year. |
| 08:54:05 | 15 | You obviously read your reports; right? |
| 08:54:08 | 16 | A.    Yes. |
| 08:54:08 | 17 | Q.    Did you read the complaint that |
| 08:54:10 | 18 | AstraZeneca filed? |
| 08:54:12 | 19 | A.    I believe so.  There's a list |
| 08:54:14 | 20 | in my report of materials I read at that time. |
| 08:54:18 | 21 | I'm more familiar with, clearly, what I've |
| 08:54:21 | 22 | read over the last three days or so. |
| 08:54:23 | 23 | Q.    Did you read any of the briefs |
| 08:54:25 | 24 | that were submitted by the parties?  The legal |
| 08:54:28 | 25 | briefs. |

**REDACTED -- Public Version, filed 1/20/06**

|          |    |                                                |
|----------|----|------------------------------------------------|
|          | 1  | BERT SPILKER, Ph.D., M.D.                       |
| 12:13:21 | 2  | Q.    Is there anything indicating to           |
| 12:13:22 | 3  | readers of this ad that the results are not     |
| 12:13:25 | 4  | clinically significant?                         |
| 12:13:28 | 5  | MS. SANCHEZ:  Objection.                         |
| 12:13:28 | 6  | A.    No.  No.                                   |
| 12:13:36 | 7  | Q.    Let's turn to your declaration,            |
| 12:13:40 | 8  | paragraph 11.  Did you review the -- strike     |
| 12:13:56 | 9  | that.  Do you see the Castell -- you report     |
| 12:13:59 | 10 | that the Castell study enrolled 5,241           |
| 12:14:03 | 11 | patients?                                        |
| 12:14:03 | 12 | A.    Yes.                                       |
| 12:14:04 | 13 | Q.    Would you consider that a                  |
| 12:14:05 | 14 | large-scale study?                               |
| 12:14:07 | 15 | A.    Definitely.                                |
| 12:14:10 | 16 | Q.    Did you review the protocol?              |
| 12:14:11 | 17 | A.    Yes.                                       |
| 12:14:12 | 18 | Q.    And in your view was the                   |
| 12:14:14 | 19 | protocol an appropriate protocol?              |
| 12:14:18 | 20 | MS. SANCHEZ:  Objection.                         |
| 12:14:18 | 21 | A.    No, because they were                      |
| 12:14:21 | 22 | looking -- the study -- the sample size was     |
| 12:14:27 | 23 | determined using a difference -- clinical       |
| 12:14:31 | 24 | difference they were looking for of 3 percent.  |
| 12:14:34 | 25 | I think that's totally inappropriate.           |

146

|         |    |                                                      |
|---------|----|------------------------------------------------------|
|         | 1  | BERT SPILKER, Ph.D., M.D.                             |
| 12:14:36 | 2  | Q.    Any other criticisms of the                    |
| 12:14:37 | 3  | protocol?                                            |
| 12:14:39 | 4  | A.    No.                                            |
| 12:14:42 | 5  | Q.    Do the results have what we'll                 |
| 12:14:44 | 6  | call internal validity?                              |
| 12:14:46 | 7  | A.    If you tell me what you mean by                |
| 12:14:48 | 8  | "internal validity," I will answer the               |
| 12:14:50 | 9  | question.                                            |
| 12:14:51 | 10 | Q.    Well, are the results reliable?                |
| 12:14:55 | 11 | A.    I have no reason to question                   |
| 12:14:56 | 12 | the results.                                         |
| 12:15:02 | 13 | Q.    But you do have --  you do have                |
| 12:15:12 | 14 | criticisms of the use of patient diaries in          |
| 12:15:15 | 15 | this study; correct?                                 |
| 12:15:17 | 16 | A.    No.  It's not really a                         |
| 12:15:19 | 17 | criticism.  It's really a comment that they're       |
| 12:15:23 | 18 | less objective than certain other types of end       |
| 12:15:27 | 19 | points, and that patient diaries are widely          |
| 12:15:32 | 20 | used in clinical trials.  I mean, sometimes          |
| 12:15:36 | 21 | people, I think rightfully, try to avoid them        |
| 12:15:39 | 22 | if possible, but they're still widely used in        |
| 12:15:44 | 23 | many, many therapeutic areas.  So -- where you       |
| 12:15:47 | 24 | have a chronic problem.                              |
| 12:15:49 | 25 | Q.    Would you agree that patient                   |

**REDACTED -- Public Version, filed 1/20/06**

**CERTIFICATE OF SERVICE**

I, John W. Shaw, hereby certify that on January 12, 2006, I caused copies of the

foregoing document to be served upon the following counsel of record as indicated below:

<u>BY HAND DELIVERY & E-MAIL</u>

Steven Balick, Esquire
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

<u>BY FEDEX & E-MAIL</u>

Thomas C. Morrison, Esquire
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
*jshaw@ycst.com*
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600