**REDACTED -- Public Version, filed 1/20/06**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTRAZENECA LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | C.A. No. 04-1332-KAJ |
| | ) | |
| TAP PHARMACEUTICAL PRODUCTS, INC., | ) | **CONFIDENTIAL – FILED** |
| | ) | **UNDER SEAL** |
| Defendant. | ) | |

**REPLY BRIEF OF PLAINTIFF ASTRAZENECA LP**
**IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Josy W. Ingersoll (No. 1088)
*jingersoll@ycst.com*
John W. Shaw (No. 3362)
*jshaw@ycst.com*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware  19899-0391
(302) 571-6600

Attorneys for AstraZeneca LP

Of Counsel:

Harold P. Weinberger
Jonathan M. Wagner
Kerri Ann Law
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated:  January 12, 2006

**REDACTED -- Public Version, filed 1/20/06**

<u>Table of Contents</u>

                                                                                       <u>Page</u>

Preliminary Statement............................................................................................1

Argument ..................................................................................................................2

Point 1     AS A MATTER OF LAW AND UNDISPUTED FACT,
            ASTRAZENECA'S ADS ARE NOT LITERALLY FALSE.................................2

            A.    There is no "clinical significance" standard under the Lanham Act ...........3

            B.    FDA regulations are irrelevant to this motion .............................................8

Point 2     AS A MATTER OF LAW AND UNDISPUTED FACT,
            ASTRAZENECA'S ADS ARE NOT LITERALLY FALSE BY
            NECESSARY IMPLICATION ...........................................................................10

Point 3     AS A MATTER OF LAW AND UNDISPUTED FACT,
            ASTRAZENECA'S ADS ARE NOT IMPLIEDLY FALSE ...............................11

            A.    The TV Survey fails to raise a triable issue that the Better TV ads
                  communicate an implied false message.....................................................12

            B.    TAP has offered no evidence that the "supers" in the TV ad are
                  ineffective .................................................................................................12

            C.    The Internet Survey fails to raise a triable issue that AstraZeneca's
                  ads communicate an implied false  message of overall EE
                  superiority .................................................................................................15

            D.    TAP's purported "intent evidence" raises no triable issues of fact ...........16

            E.    In any event, Nexium is superior to Prevacid for overall healing of
                  EE...............................................................................................................18

            F.    TAP has offered no other evidence of implied false messages .................19

Conclusion ................................................................................................................20

057159.1005

**REDACTED -- Public Version, filed 1/20/06**

<u>Table of Authorities</u>

<u>Cases:</u>

*Abbott Laboratories v. Mead Johnson & Co.,*
  971 F.2d 6 (7th Cir. 1992) ...................................................................................................5, 6

*Abbott Laboratories v. Mead Johnson & Co.,*
  No. IP 91-202C, 1991 U.S. Dist. LEXIS 21010 (S.D. Ind. Oct. 10, 1991) ............................5

*American Express Travel Related Servs. Co., Inc. v. Mastercard Int'l Inc.,*
  776 F. Supp. 787 (S.D.N.Y. 1991) ...................................................................................15, 19

*American Home Products Corp. v. Procter & Gamble Co.,*
  871 F. Supp. 739 (D.N.J. 1994)...................................................................................15, 17, 19

*American Home Products Corp. v. Johnson & Johnson,*
  436 F. Supp. 785 (S.D.N.Y. 1977) .......................................................................................6, 7

*Avon Prods., Inc. v. S.C. Johnson & Son, Inc.,*
  984 F. Supp. 768 (S.D.N.Y. 1997) ...........................................................................................9

*Castrol Inc. v. Pennzoil Co.,*
  987 F.2d 939 (3d Cir. 1993) ....................................................................................................11

*Castrol, Inc. v. Quaker State Corp.,*
  No. 91 Civ. 8517, 1992 WL. 47981 (S.D.N.Y. Mar. 2 1992) ..................................................4

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,*
  447 U.S. 557 (1980)...................................................................................................................8

*Chemical Fabrics Corp. v. Textiles Coated, Inc.,*
  111 F.3d 143, 1997 WL. 159287 (Fed Cir. Apr. 1, 1997)......................................................11

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.,*
  350 F. Supp. 2d 582 (D. Del. 2004).......................................................................................16

*Ciba-Geigy Corp. v. Thompson Medical Co. Inc.,*
  672 F. Supp. 679 (S.D.N.Y. 1985) .......................................................................................6, 7

*Daubert v. Merrell Dow Pharmaceuticals,*
  509 U.S. 579 (1993).........................................................................................................12, 16

*Ibanez v. Florida Dep't of Bus. & Prof'l. Regulation, Bd. of Accountancy,*
  512 U.S. 136 (1994)..............................................................................................................7, 8

**REDACTED -- Public Version, filed 1/20/06**

Table of Authorities
(continued)

Page

*Johnson & Johnson-Merck Consumer Pharms. Co. v.*
*Rhone-Poulenc Rorer Pharms., Inc.,*
19 F.3d 125 (3d Cir. 1994) ..........................................................................................8, 17

*Mead Johnson & Co. v. Abbott Laboratories.,*
201 F.3d 883 (7th Cir. 2000) ....................................................................................6, 7, 18

*Media Arts Int'l, Ltd. v. Trillium Health Prods.,*
No. Civ. A. 92-2928, 1992 WL. 136081 (E.D. Pa. June 5, 1992)..........................................13

*Medtronic Minimed Inc. v. Smiths Medical MD Inc.,*
373 F. Supp. 2d 466 (D. Del. 2005)..........................................................................................1

*Nikkal Indus., Ltd v. Salton, Inc.,*
735 F. Supp. 1227 (S.D.N.Y. 1990) ........................................................................................7

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck*
*Consumer Pharms. Co.,*
129 F. Supp. 2d 351 (D.N.J. 2000), *aff'd,* 290 F.3d 578 (3d Cir. 2002).............3, 4, 10, 12, 13

*Pharmacia v. GlaxoSmithKline,*
292 F. Supp. 2d 611 (D.N.J. 2003)........................................................................................11

*Powerhouse Marks LLC v. Chi Hsin Impex, Inc.,*
No. 04-73923, 2006 WL. 20523 (E.D. Mich. Jan. 4, 2006) ...................................................16

*Procter & Gamble Co. v. Chesebrough-Pond's Inc.,*
588 F. Supp. 1082 (S.D.N.Y.), *aff'd,* 747 F.2d 114 (2d Cir. 1984) ...................................7, 18

*Safas Corp. v. Etura Premier, L.L.C.,*
293 F. Supp. 2d 442 (D. Del. 2003)..........................................................................................3

*Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.,*
902 F.2d 222 (3d Cir. 1990) ..............................................................................................8, 9

*Schwarz Pharma, Inc. v. Breckenridge Pharm., Inc.,*
388 F. Supp. 2d 967 (E.D. Wis. 2005) ....................................................................................9

*Smart Inventions, Inc. v. Allied Commc'ns Corp.,*
94 F. Supp. 2d 1060 (C.D. Cal. 2000) ....................................................................................14

057159.1005

**REDACTED -- Public Version, filed 1/20/06**

Table of Authorities
(continued)

Page

*SmithKline Beecham Consumer Healthcare L.P. v.*
    *Johnson & Johnson-Merck Consumer Pharms. Co.*,
    906 F. Supp. 178 (S.D.N.Y. 1995), *aff'd*, 100 F.3d 943 (2d Cir. 1996). ...............................14

*SmithKline Beecham Consumer Healthcare L.P. v.*
    *Johnson & Johnson-Merck Consumer Pharms Co.*,
    No. 01 Civ. 2775 (DAB), 2001 WL. 588846 (S.D.N.Y. June 1, 2001),
    *aff'd*, No. 01-7709, 2001 WL 1168026 (2d Cir. Sept. 26, 2001).......................................7, 18

*Universal City Studios, Inc. v. Nintendo Co.*,
    746 F.2d 112 (2d Cir. 1984) ................................................................................................16

Statutes:

21 C.F.R. § 202.1(e)(7)(ii) .........................................................................................................8

Fed. R. Civ. P. 56.......................................................................................................................1

REDACTED -- Public Version, filed 1/20/06

Preliminary Statement

Plaintiff AstraZeneca LP respectfully submits this reply memorandum in further support of its motion, pursuant to Fed. R. Civ. P. 56, for summary judgment dismissing the counterclaim of defendant TAP Pharmaceutical Products.  To defeat a motion for summary judgment, "[t]he non-moving party must set forth specific facts showing that there is a genuine issue for trial."  *Medtronic Minimed Inc. v. Smiths Medical MD Inc.*, 373 F. Supp. 2d 466, 468 (D. Del. 2005) *quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  TAP has fallen well short of meeting its burden.

As set forth in AstraZeneca's Opening Brief ("Op. Br."), there is no dispute that 20-60 percent of acid reflux patients suffer from erosive esophagitis ("EE").  (Op. Br. at 8) (D.I. 88).  There is likewise no dispute that most acid reflux patients do not get endoscopies and therefore do not know whether they have EE, nor do they know the severity of their EE.  (TAP Br. at 4) (D.I. 107).  There is also no dispute that healing of EE is a clinically relevant treatment endpoint used in clinical trials of proton pump inhibitors ("PPIs")    REDACTED and is *the* endpoint used by the United States Food & Drug Administration ("FDA") for approving new PPIs.  (AstraZeneca's Appendix in Support of its Motion for Summary Judgment ("Op. App.") Exh. K at ¶¶ 14-15; Exh. L at ¶¶ 5 (D.I. 90):

REDACTED

**REDACTED -- Public Version, filed 1/20/06**

Based on these facts, there can be no dispute that a greater number of people who use Nexium will have their EE healed — a clinically relevant endpoint — than will those who use Prevacid. Nevertheless, TAP claims that there is some rule, which it terms "clinical significance," mandating that the percentage difference in the number of people healed with Nexium as opposed to Prevacid has to be above an arbitrary, undefined number before the study results may be disseminated to the public.

TAP's argument amounts to nothing more than an exhortation to the Court to apply an unprecedented legal standard for advertising that finds no support even in the cases TAP cites and that would improperly bar AstraZeneca from communicating accurate information to the public concerning tests that TAP itself concedes are reliable. TAP also asks the Court to credit consumer surveys that fail to offer relevant probative evidence and whose conclusions are undermined by TAP's own experts. Accordingly, and as fully set forth below, TAP cannot meet its burden of showing genuine triable issues of literal or implied falsity with respect to AstraZeneca's Nexium advertising. Summary judgment is therefore appropriate dismissing TAP's counterclaim in its entirety.

<u>Argument</u>

Point 1

AS A MATTER OF LAW AND UNDISPUTED FACT,
<u>ASTRAZENECA'S ADS ARE NOT LITERALLY FALSE</u>

The only literal claim in AstraZeneca's Better is Better advertising is that Nexium is better than Prevacid for healing moderate-to-severe EE. (Op. App. Exhs. B-F). This Court has already denied TAP's motion to enjoin preliminarily AstraZeneca's advertising as literally false, holding that TAP had not "demonstrated a likelihood of success on literal falsity. At least

on this record it is not there." (Op. App. Exh. A at 37). TAP has developed no new record evidence that would warrant disturbing this conclusion.

A.    There is no "clinical significance" standard under the Lanham Act

Recognizing that there is no dispute that Nexium is statistically significantly better than Prevacid for healing moderate-to-severe EE, TAP seeks to avoid summary judgment by invocation of its supposed advertising standard of "clinical significance." But there is no requirement under the Lanham Act that study results show a benefit for the advertised product over the competitive product in some undefined number of people, other than that the difference must be statistically significant.[1]

In support of its purported rule, TAP cites to a number of cases, but none of them stand for the rule TAP asserts. For example, in *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 129 F. Supp. 2d 351 (D.N.J. 2000), *aff'd*, 290 F.3d 578 (3d Cir. 2002) (TAP Br. at 32), the court held as false Johnson & Johnson's claims that Mylanta was superior to the competition for treatment of nighttime heartburn, which were predicated on clinical studies showing Mylanta's superior ability to neutralize acid ("ANC") in a beaker over a

---

[1]    TAP seems to define "clinical significance" as "such a meaningful number that physicians would likely switch their Prevacid users to Nexium." (TAP Br. at 16).

REDACTED

, statements by the Oregon Health Resources Commission (TAP Br. at 13), are hearsay that would not be admissible at trial and are therefore inappropriate as summary judgment evidence. *Safas Corp. v. Etura Premier, L.L.C.*, 293 F. Supp. 2d 442, 446 (D. Del. 2003) (hearsay statements that would not be admissible at trial are insufficient to defeat summary judgment).

**REDACTED -- Public Version, filed 1/20/06**

15-minute period. The court found the advertising false not because the studies did not achieve

"clinical significance," but rather because the ANC rating "does not . . . represent an antacid's

effectiveness in the human body (in vivo) or its ability to relieve the symptoms of acid reflux."

*Novartis Consumer Health, Inc.*, 129 F. Supp. 2d at 356. In contrast, TAP does not and cannot

claim that healing EE is irrelevant to the effectiveness of a PPI. Indeed, as its own witness has

acknowledged, EE healing is the primary efficacy measure used by FDA for approving new PPIs

REDACTED

In *Castrol, Inc. v. Quaker State Corp.*, No. 91 Civ. 8517, 1992 WL 47981

(S.D.N.Y. Mar. 2 1992), *aff'd*, 977 F.2d 57 (2d Cir. 1992) (TAP Br. at 33), the defendant

claimed that its motor oil provided better protection against engine wear at start-up because tests

showed that its oil "flowed faster to all vital parts than did competing oils." 1992 WL 47981 at

*3. The district court held that the claim was false because "the record makes it crystal clear that

to the extent tests were performed to demonstrate better wear protection (as opposed to faster

flowing), the tests contradict, rather than support the claim." *Id.* at *8. The Court of Appeals

affirmed, noting the district court's holding as "in substance, a finding that the Quaker State

tests, which proved faster oiling time, are irrelevant to their claim that Quaker State's oil protects

better at start-up." 977 F.2d at 64. Thus, the *Castrol* case stands for the unremarkable

---

[2]    TAP contends that "the data collected by Castell shows that there were no clinically
meaningful differences in the symptom relief experienced by Nexium users as compared
to Prevacid users." (TAP Br. at 7). This is not at all what Dr. Castell concluded. In his
study report, he concluded that "sustained resolution of heartburn occurred significantly
faster with [Nexium] than with [Prevacid]. Significantly faster sustained resolution of
nocturnal heartburn was also achieved with [Nexium]. Lastly, the percentage of
heartburn-free nights was significantly greater for the [Nexium] group." (Rep. App. Exh.
B at 579).

- 4 -

proposition that test results that have no bearing on an advertising claim cannot be used to support that claim, not that test results must achieve "clinical significance" before they may be disseminated to the public under the Lanham Act.

TAP also cites *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992) (TAP Br. at 39), but in that case, too, the court's holding was premised on the fact that the advertising was based on a parameter that did not bear on efficacy.[3]  TAP concedes the point in its brief, stating that the *Abbott* court held that "it was misleading to tout the osmolality when that quality had no therapeutic significance." (TAP Br. at 34).  The court was also concerned that "studies can sometimes detect small but statistically significant differences that are too small to affect the course of therapy." 1991 U.S. Dist. LEXIS 21010, at *61-*62.  That of course is not the case here, where the issue is not one of the degree of benefit with respect to a therapeutic effect, but rather a difference in the number of individuals who will have their EE healed.  It is beyond dispute that the tested parameter in the Castell and Fennerty studies — the healing of EE — has a high degree of therapeutic significance.[4]

---

[3]    In addition, at least some of the data relied upon by the defendant appears not to have shown statistically significant differences.  Thus, the Court noted that "[t]here are no 'near misses' in statistics; differences are either 'significant' or they are not.  To a scientist, a difference that is not statistically significant is not a difference." *Abbott Labs. v. Mead Johnson & Co.*, No. IP 91-202C, 1991 U.S. Dist. LEXIS 21010, at *62-*63 (S.D. Ind. Oct. 10, 1991) (emphasis added).

[4]    TAP directs the Court to an incomplete statement in support of its position by arguing that "[F]or the vast majority of patients, there is simply no advantage — statistical or clinical — in taking Nexium rather than Prevacid.  Dr. Castell essentially conceded this point in his conclusion about his own study: 'Clinically, the results of the study confirm that esomeprazole [Nexium] and lansoprazole [Prevacid], like all available medications in this class, are highly effective in healing esophagitis.'" (TAP Br. at 10, citing Castell Decl. ¶ 17).  But TAP omits the very next sentence of that same paragraph of Dr. Castell's Declaration, which states:

**REDACTED -- Public Version, filed 1/20/06**

Moreover, even if *Abbott* could be read to suggest some requirement of "clinical significance," that requirement would have been abrogated by the same Court's subsequent decision in *Mead Johnson & Co. v. Abbott Laboratories.*, 201 F.3d 883, 886 (7th Cir. 2000), which held that competitors are free to advertise small benefits of their products as long as the claimed benefit is demonstrated "by a statistically significant amount." As the court stated, if a difference between products "satisfies normal tests of significance — meaning that the difference is replicable, rather than the effect of chance — then the claim is true and properly may be made." *Id.* In fact, the court was concerned that it would be inappropriate to deny this "valuable information to consumers." *Id.* Again, because the results in favor of Nexium over Prevacid meet that test, as a matter of law AstraZeneca's advertising is not literally false.

TAP's final citations are to *American Home Products Corp. v. Johnson & Johnson*, 436 F. Supp. 785 (S.D.N.Y. 1977) and *Ciba-Geigy Corp. v. Thompson Medical Co. Inc.*, 672 F. Supp. 679 (S.D.N.Y. 1985) (TAP Br. at 34-35). In the former, the court in a footnote referenced the concept of "clinical significance." By this term, however, the court meant only that when claiming superiority with respect to a particular condition, "some substantial clinical testing of the conditions is required" before the claim can be made. 436 F. Supp. at 801. Moreover, the court noted that "[i]n all but one of a number of controlled double-blind clinical studies [comparing the analgesics at issue], the data revealed *no statistically significant*

---

> However, esomeprazole shows a significant degree of superiority, especially in patients with more severe disease. Since it is not possible to predict the severity of esophagitis from the clinical presentation, preferential use of the drug with demonstrated superiority, i.e., [Nexium], is justified from a clinical perspective.

(Op. App. Exh. M at ¶ 17). It is unclear how TAP can colorably assert that Dr. Castell has conceded any lack of significant difference between Nexium and Prevacid.

*differences* between the two drugs. . . ." *Id.* (emphasis added). Similarly, in *Ciba-Geigy*, the court's holding was premised on a complete absence of clinical testing in support of an advertising claim; unlike here, there were no statistically significant clinical results that could be cited to support the claim. 672 F. Supp. at 690-91.

By contrast, the cases cited by AstraZeneca in its Opening Brief all stand for the proposition that under the Lanham Act an advertiser may make a superiority claim based on clinical tests as long as the claim is supported by statistically significant data with respect to a relevant endpoint. TAP's attempts to distinguish these cases do not change their holdings that a party may advertise truthful, statistically significant differences. *See Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d at 886; *SmithKline Beecham Consumer Healthcare L.P. v. Johnson & Johnson-Merck Consumer Pharms Co.*, No. 01 Civ. 2775 (DAB), 2001 WL 588846, at *3-*4 (S.D.N.Y. June 1, 2001), *aff'd*, No. 01-7709, 2001 WL 1168026 (2d Cir. Sept. 26, 2001); *Nikkal Indus., Ltd v. Salton, Inc.*, 735 F. Supp. 1227, 1238-39 (S.D.N.Y. 1990); *Procter & Gamble Co. v. Chesebrough-Pond's Inc.*, 588 F. Supp. 1082, 1090 (S.D.N.Y.), *aff'd*, 747 F.2d 114 (2d Cir. 1984).

Of course, TAP is free in its own advertising to tell the public the percentage differences between Nexium and Prevacid found in the Castell and Fennerty studies and to communicate its apparent belief that those performance differences are not large. But that does not mean that TAP can proscribe AstraZeneca's truthful commercial speech informing the public of the results of those tests. Indeed, for this Court to lay down a new rule barring AstraZeneca from communicating to the public the results of clinical studies TAP itself concedes are accurate and reliable would run afoul of settled Supreme Court precedent prohibiting restrictions on truthful commercial speech under the First Amendment. *Ibanez v. Florida Dep't of Bus. &*

*Prof'l. Regulation, Bd. of Accountancy*, 512 U.S. 136, 142 (1994); *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561-62 (1980).

B.    <u>FDA regulations are irrelevant to this motion</u>

TAP attempts to rescue its "clinical significance" argument by asserting that "FDA's regulations governing prescription drug advertising explicitly prohibit ads that exploit statistical significance in the absence of clinical relevance." (TAP Br. at 35). In doing so, TAP is essentially invoking an FDA regulation, which provides that advertising "may be false, lacking in fair balance, or otherwise misleading or otherwise violative of section 502(n) of the act if it . . . (ii) Uses the concept of 'statistical significance' to support a claim that has not been demonstrated to have clinical significance or validity, or fails to reveal the range of variations around the quoted average results." 21 C.F.R. § 202.1(e)(7)(ii). This, however, is not the standard under the Lanham Act, which provides that advertising is actionable only if it is false or misleading. *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994).

Indeed, in a long line of cases, including the Third Circuit Court of Appeals' oft-cited decision in *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 229 (3d Cir. 1990), the courts have held that "it is not sufficient for a Lanham Act plaintiff to show only that the defendant's advertising claims of its own drug's effectiveness are inadequately substantiated under FDA guidelines; the plaintiff must also show that the claims are literally false or misleading to the public." In addition to the fact that there is no private right of action under the Food, Drug, and Cosmetic Act, that FDA regulation "is not focused on the truth or falsity of advertising claims. It requires the FDA to protect the public interest by 'pass[ing] on the safety and efficacy of all new drugs and . . . [promulgating] regulations concerning the conditions under which various categories of OTC drugs . . . are safe, effective and not

misbranded." *Id.* at 230 (quotations omitted). *See also Schwarz Pharma, Inc. v. Breckenridge Pharm., Inc.*, 388 F. Supp. 2d 967, 973 (E.D. Wis. 2005) (citing *Sandoz*); *Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 797 (S.D.N.Y. 1997) ("the standard of falsity under the Lanham Act is distinct from federal licensing standards and, absent an explicit claim that a product has been approved by the relevant federal agency or that the product meets federal standards, a Lanham Act plaintiff must prove that the defendant's efficacy claims are literally false, not simply that they fail to meet current federal licensing standards.").[5]

In sum, the facts remain undisputed that Nexium is statistically significantly better than Prevacid for healing moderate to severe EE, a clinically relevant endpoint for a condition affecting a substantial number of people, thus defeating TAP's counterclaim of literal falsity as a matter of law.

---

[5]     TAP also cites the FDA Medical Officer's Review of the Nexium New Drug Application, which, according to TAP, concluded that "a superiority claim of Nexium over omeprazole is not supported by either the comparison of [Nexium] 20 vs. [omeprazole] 20 or the comparison of [Nexium] 40 vs [omeprazole] 20," despite purported "differences [of] 6.2%, 9%, 9.7% and 12%." (TAP Br. at 36, citing TAP Exh. CC at 5) (D.I. 111). TAP then claims that FDA has concluded that differences of this magnitude are not clinically significant. (TAP Br. at 36). In fact, TAP has misquoted the Review, which actually states that "[a] superiority claim of Nexium over omeprazole is not supported by either the comparison of H2O [Nexium] vs O2O [omeprazole] or the comparison of H4O [Nexium] vs H2O [Nexium]." Neither of these comparisons was even statistically significant and the latter compared different doses of Nexium, not omeprazole, as TAP mistakenly claims. The percentage differences quoted by TAP were found in a test not cited by the reviewer in this quote.

In any event, none of these studies submitted to FDA featured a comparison between Nexium and Prevacid and therefore the studies do not support TAP's contention that Nexium has not been proven superior to Prevacid for healing EE.

REDACTED -- Public Version, filed 1/20/06

Point 2

## AS A MATTER OF LAW AND UNDISPUTED FACT, ASTRAZENECA'S ADS ARE NOT LITERALLY FALSE BY NECESSARY IMPLICATION

In its opposition papers, TAP has reasserted the argument, rejected by the Court at the preliminary injunction hearing, that AstraZeneca's television ads are "literally false by necessary implication" because they necessarily imply a false message of overall superiority for treating acid reflux disease. (TAP Br. at 22-25). By this argument, TAP alludes to a narrow line of cases holding that even if an advertisement does not literally use the words in question to make a particular claim but nevertheless can only be read to communicate that claim, a survey may not be required. As this Court already concluded, this narrow exception has no application to the Better is Better ads.

The Court of Appeals has noted that a literally false message may be "conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Novartis Consumer Health*, 290 F.3d at 586-87 (internal quotations omitted). But "only an *unambiguous* message can be literally false." *Id.* at 587 (emphasis added). Accordingly, "'[t]he greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion . . . the less likely it is that a finding of literal falsity will be supported.'" *Id.* at 587 (quotation omitted).

As this Court recognized at the preliminary injunction hearing, the necessary implication cases all feature "an unbroken logical chain" leading to the "unavoidable" necessarily implied claim. (Op. App. Exh. A at 39). The Court rejected the necessary implication claim, holding that the Better television ad "doesn't lay out the logical chain you

- 10 -

**REDACTED -- Public Version, filed 1/20/06**

have to have." (*Id.*). Nothing has changed since then to warrant a different conclusion now.[6]
*See Chemical Fabrics Corp. v. Textiles Coated, Inc.*, 111 F.3d 143, No. 96-1332, 1997 WL
159287, at *4 (Fed Cir. Apr. 1, 1997) (affirming district court holding that advertisement was not
literally false by "necessary implication.").[7]

Point 3

AS A MATTER OF LAW AND UNDISPUTED FACT,<br>ASTRAZENECA'S ADS ARE NOT IMPLIEDLY FALSE

TAP bottoms its claim of implied falsity on the results of two surveys conducted
by Dr. Thomas Dupont. One survey purported to assess whether a 45-second Better television
advertisement communicated the message that Nexium is superior to Prevacid for treatment of
acid reflux disease generally (the "TV Survey") (TAP Br. at 19-21). The other purported to
assess whether a Nexium internet ad communicated the message that Nexium is superior to
Prevacid for EE overall, rather than only for moderate-to-severe EE (the "Internet Survey")
(TAP Br. at 26-29).                    REDACTED

---

[6]     Moreover, TAP's argument is based on a mischaracterization of the commercial, which,
contrary to TAP's twisted reading, nowhere states, "if I told you that Nexium was better
for acid reflux disease . . . ." (TAP Br. at 25). Rather, the commercial states, "If you
suffer from acid reflux disease, frequent heartburn, and I told you that prescription
*Nexium heals acid related damage in the esophagus better*, you'd want proof." (Op.
App. Exh. C).

[7]     This case is not at all like the cases cited by TAP. For example, in *Castrol Inc. v.
Pennzoil Co.*, 987 F.2d 939, 947 (3d Cir. 1993) (TAP Br. at 22, 24), the court held that
Pennzoil's advertising necessarily implied that "Pennzoil outperforms the other leading
brands with respect to protecting against . . . viscosity breakdown, the cause of engine
failure" because Pennzoil claimed that (i) motor oil viscosity breakdown leads to engine
failure, and (ii) Pennzoil's brand of motor oil outperformed any leading motor oil against
viscosity breakdown. Similarly, in *Pharmacia v. GlaxoSmithKline*, 292 F. Supp. 2d 611,
617 (D.N.J. 2003) (TAP Br. at 25), the court found that Pharmacia necessarily implied
that its Nictorol was superior for aiding sleeping when it claimed that NicoDerm causes
sleep disturbances and that Nictorol was formulated to help consumers sleep. No such
syllogism or logic is presented in the Nexium ads.

- 11 -

**REDACTED -- Public Version, filed 1/20/06**

REDACTED

Neither the surveys nor the purported intent evidence is sufficient to raise a genuine triable issue that the Better ads communicate implied false messages.

A.    The TV Survey fails to raise a triable issue that
      the Better TV ads communicate an implied false message

The TV Survey purports to assess whether a 45-second Better television advertisement communicates the implied message that Nexium is better than Prevacid at treating or relieving acid reflux disease generally, rather than only for healing EE. As fully set forth in AstraZeneca's Opening Brief and its Opening Brief and Reply Brief in support of its motion to exclude Dr. Dupont's testimony, the TV Survey fails to address the relevant questions in this case and therefore does not "fit" the case, as required by the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). On that basis, AstraZeneca has sought to exclude Dr. Dupont's testimony. If the Court grants AstraZeneca's motion to exclude Dr. Dupont's testimony concerning the TV Survey, TAP cannot raise a triable issue of fact as to any implied messages in the Better television ad.

B.    TAP has offered no evidence that the "supers" in the TV ad are ineffective

TAP further contends that even though the "supers" in the Better television ad clearly disclose that Nexium's superiority for healing acid related damage in the esophagus has been demonstrated in patients with moderate-to-severe EE, those supers are ineffective to "cure" an allegedly false claim that Nexium is superior for overall EE healing. (TAP Br. at 29-31). Although we show at pages 18-19, below, that an overall EE healing claim, if communicated, would not be false, TAP has not offered any survey evidence to support its contention that the supers in the television ad limiting the claim to moderate to severe EE damage are not effective.

- 12 -

REDACTED -- Public Version, filed 1/20/06

Instead, TAP asserts that under *Novartis*, 290 F.3d at 599, AstraZeneca bears the burden of showing that the supers are effective. (TAP Br. at 30-31). That is incorrect. In *Novartis*, the reference to supers arose in the context of a discussion of remedies — the court had already found defendant's claims false — and whether a blanket injunction should issue as opposed to a requirement for a disclaimer. *Novartis*, 290 F.3d at 599. On the merits, the burden remains on TAP to show that for purposes of liability, the super is ineffective.[8]

TAP cannot meet its burden. First, TAP has mischaracterized the issue, for there is no "disclaimer" in the Nexium ad that purports to "cure" the alleged falsity of the ad. Rather, the commercial contains a highly conspicuous super that appears in highlighted print throughout the entire discussion of the studies in question and is entirely consistent with the rest of the commercial. (Op. App. Exh. J at ¶¶ 8-9). Additionally, and as noted above, TAP has conducted no survey addressing the effectiveness of the super in the TV ad, as it has attempted to do with respect to the internet ad.[9]

---

[8]   TAP cites *Novartis* as stating that "[w]e are skeptical whether disclaimers can cure false advertising claims (made literally or by necessary implication)." In fact, the complete sentence reads: "Although we are skeptical whether disclaimers can cure false advertising claims (made literally or by necessary implication), they may be able to dispel misleading messages implied by a product's name." 290 F.3d 599. As already demonstrated, TAP's literal falsity claim fails as a matter of law, so TAP bears the burden of proving an implied false message, including that any explanatory super is ineffective.

[9]   Indeed, TAP has effectively conceded that the supers are effective. TAP contends that it has suffered harm because "[t]he commercial conveys the message that Nexium is better than Prevacid for all patients suffering from acid reflux disease. . . ." (TAP Br. at 5). But Prevacid is mentioned only in the supers. If the super is sufficiently large and appears long enough to establish a direct comparison against Prevacid purportedly causing TAP harm, it is certainly sufficient to make clear that the superiority claim is limited to healing moderate to severe EE.

**REDACTED -- Public Version, filed 1/20/06**

Beyond that, numerous courts have made clear that explanatory language like AstraZeneca's is an effective way to communicate truthful advertising claims and cannot be read out of the challenged advertisement. *See, e.g., Media Arts Int'l, Ltd. v. Trillium Health Prods.*, No. Civ. A. 92-2928, 1992 WL 136081, at *8 (E.D. Pa. June 5, 1992) ("After reviewing the infomercial and the demonstrations in court, I conclude that plaintiff has not proved that defendant misused the Juice Tiger in such a way as to make the demonstration a literal falsehood. The disclaimer notifies the consumer that the carrot test may not be done in accordance with some juicer's instructions, and that what Trillium is showing on the infomercial is normal use, but not necessarily use in compliance with instructions"); *Smart Inventions, Inc. v. Allied Commc'ns Corp.*, 94 F. Supp. 2d 1060, 1075 (C.D. Cal. 2000) (plaintiff unlikely to prevail on false advertising claim where alleged falsity in television commercial clarified by disclaimer in "readable text on the bottom of the screen").

The only case cited by TAP that addresses the adequacy of a super in an advertisement is *SmithKline Beecham Consumer Healthcare L.P. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 906 F. Supp. 178 (S.D.N.Y. 1995), *aff'd*, 100 F.3d 943 (2d Cir. 1996). (TAP Br. at 30-31). In *SmithKline*, the court found a super inappropriate where it was "inconspicuously located" in the lower corner of the advertisement and was "in such fine print that readers tend to overlook it." *Id.* at 186. This is categorically distinct from this case where the super in the Nexium commercial is displayed the entire time that the studies are referenced and is in large legible letters that are easily contrasted against the background of the advertisements.

# REDACTED -- Public Version, filed 1/20/06

C.     The Internet Survey fails to raise a triable issue
       that AstraZeneca's ads communicate an implied
       false message of overall EE superiority

TAP offers the Internet Survey in an effort to show that a Better internet advertisement communicates the implied message that Nexium is better than Prevacid at healing EE overall rather than only for moderate-to-severe EE and that the supers in the internet ad are not effective in limiting the claim to moderate-to-severe EE. While again, we show at pages 18-19, below, that such a claim would not be false, the survey cannot defeat AstraZeneca's motion.

To begin with, even were the Court to credit the Internet Survey, TAP cannot prevail on its claim that the television ad communicates an implied false message that Nexium is superior to Prevacid for all patients suffering from EE because neither the TV Survey nor the Internet Survey assesses whether the television ad communicated such a message. TAP cannot use the results of the Internet Survey to assert the existence of this implied message in the television ad because as a matter of settled Lanham Act precedent, the results of the Internet Survey cannot be extrapolated to AstraZeneca's other advertising. *See American Home Prods. Corp. v. Procter & Gamble Co.*, 871 F. Supp. 739, 762 (D.N.J. 1994) ("The Court rejects AHP's contention that the FSI and television survey, even if probative, can be employed to assess whether other ALEVE print advertising (*i.e.*, the *New York Times* advertisement) was false or misleading to the public."); *American Express Travel Related Servs. Co., Inc. v. Mastercard Int'l Inc.*, 776 F. Supp. 787, 790 (S.D.N.Y. 1991) (survey addressed to one advertisement had no bearing on slightly revised version of that ad).

Even as to the internet ad, as set forth in AstraZeneca's Opening Brief and its briefs in support of the motion to exclude Dr. Dupont's testimony, the Internet Survey offers no relevant, probative evidence. That is because, as the motion to exclude his testimony details, Dr. Dupont admitted that the only conclusions he could reach based solely on the responses to the

- 15 -

**REDACTED -- Public Version, filed 1/20/06**

open-ended questions in the Internet Survey were that "all you know from the open-ended results is that there is a lower bound estimate of 11 percent of people who saw the test ad who understood the limitation" and that "if you want further information . . . you have to go to the close-ended questions." (Dupont Tr. at 142, Rep. App. Exh. E). Dr. Dupont further agreed that "[y]ou need them both together" — the closed-ended and open-ended responses — "to reach that conclusion" that an overall EE healing message was conveyed. (Dupont Tr. 146-147).

It is thus clear that Dr. Dupont could not reach any conclusions without considering responses to both his open-ended and closed-ended questions. But TAP's second survey expert, Dr. Susan McDonald, testified that the responses to the closed-ended questions in the Internet Survey were obviously guesses and thus not sufficiently reliable to allow any conclusions to be drawn from them. (McDonald Tr. 18, Rep. App. Exh. C). Since TAP's experts collectively admitted that the closed-ended questions provide no reliable data, and that no conclusions can be reached solely on the basis of the open-ended questions, there is no reliable data from which to draw *any* conclusions in the Internet Survey. Accordingly, the Internet Survey fails to raise any genuine issues for trial. *See Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 597 (D. Del. 2004) (excluding expert testimony under both *Daubert* and the Federal Rules of Evidence and granting summary judgment because in the absence of expert testimony, there was a "lack of record evidence" supporting the plaintiff's claims); *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir. 1984) ("We find that Universal's survey is so badly flawed that it cannot be used to demonstrate the existence of a question of fact on the likelihood of consumer confusion.").

D.    TAP's purported "intent evidence" raises no triable issues of fact

**REDACTED**

REDACTED -- Public Version, filed 1/20/06

REDACTED                                    But

nothing in the documents authored by AstraZeneca demonstrates an intent to communicate a

false message and the Saatchi documents cannot be imputed to AstraZeneca even if they could

be construed as evidencing such an intent. *Powerhouse Marks LLC v. Chi Hsin Impex, Inc.*, No.

04-73923, 2006 WL 20523, *18 (E.D. Mich. Jan. 4, 2006) (granting summary judgment

dismissing Lanham Act trademark suit; statements made by trademark holder's contractor

"cannot be imputed" to trademark holder).[10]

Even if the documents cited by TAP suggest some level of "intent" to

communicate a false message of overall superiority, that is insufficient to raise a triable issue

under Third Circuit authority. In *Johnson & Johnson-Merck Consumer Pharms. Co.*, 19 F.3d at

132, the Court of Appeals held that evidence of intent can be considered in determining whether

an advertisement conveys an implied false message in the place of the required consumer survey

only when such evidence reflects "deliberate conduct" "of an egregious nature." The Court thus

held that in a trial on the merits, it was inappropriate to consider supposed evidence of an

advertiser's intent to leverage a claim of a higher ANC into an implied claim of greater relief.

*Id.* at 126-27. *See also American Home Prods. Corp.*, 871 F. Supp. at 751-52 ("even if I were to

find that plaintiff's evidence establishes defendant's intent to mislead, under recent Third Circuit

---

10

REDACTED

**REDACTED -- Public Version, filed 1/20/06**

precedent this finding is insufficient to warrant the grant of injunctive relief. I must also determine that the defendant's conduct rose to 'egregious proportions.'") (citing *Johnson & Johnson-Merck*, 19 F.3d at 132). Giving TAP's argument more than its due, the evidence cited by TAP, if somehow admissible, falls well short of meeting this stringent standard.

E.     In any event, Nexium is superior to Prevacid for overall healing of EE

Even were TAP able to offer competent evidence showing that the Better internet ad communicates the message that Nexium is superior to Prevacid for overall healing of EE, TAP has failed to offer facts proving such a claim false. To the contrary, the Castell Study was designed to compare Nexium and Prevacid for healing of EE in patients with all grades of EE and demonstrated that, for all study subjects, Nexium proved better at healing EE than Prevacid, 92.6% to 88.8%, a statistically significant difference. (Op. App. Exh. M at ¶ 13).


REDACTED


Faced with these undisputed numbers   REDACTED TAP once again invents an advertising rule, this time arguing that even though Nexium is demonstrably superior to Prevacid for overall healing of EE, it is false for AstraZeneca to advertise that superiority because the study data does not show statistically significant superiority in *each grade* of EE. But there is no authority under the Lanham Act holding that a claim must be true with respect to


REDACTED

057159.1005

**REDACTED -- Public Version, filed 1/20/06**

each and every subgroup and none is cited by TAP in its brief.  To the contrary, courts construing claims under the Lanham Act routinely permit advisers to promote statistically significant differences, even when those differences apply only to a limited population.  *See SmithKline Beecham Consumer Healthcare L.P.*, 2001 WL 588846, at \*11.  *See also Mead*, 201 F.3d at 886-87 (finding injunction inappropriate where claim was proven by statistically significant amount, even if the benefits were not necessarily applicable to the majority of consumers); *Procter & Gamble Co v. Chesebrough-Ponds, Inc.*, 588 F. Supp. at 1084, 1088 (refusing to enjoin advertisement that claimed hand lotion was more effective in relieving "dry skin better than any other leading lotion" even though "advertising claims were qualified to refer only to the treatment of dry, rough skin").

F.    <u>TAP has offered no other evidence of implied false messages</u>

Finally, even if both of TAP's surveys were to be credited, TAP has offered evidence of purported implied claims in only two instances:  (i) that the 45-second television ad purportedly communicates a message that Nexium is better than Prevacid overall for acid reflux disease, and (ii) that the internet ad supposedly communicates a message that Nexium is better than Prevacid for overall EE.  As noted at pages 14-15, above, as a matter of law TAP's survey results cannot be extrapolated to AstraZeneca's other advertisements.  At minimum, therefore, summary judgment is appropriate dismissing TAP's counterclaim to the extent it alleges that the television ad communicates any message other than an overall acid reflux claim.  Based on the same principle, summary judgment should be granted dismissing:  (i) any claim of implied falsity with respect to AstraZeneca's print ads and informational booklet, both of which TAP failed to subject to a survey; and (ii) any claim that the internet ad communicates any messages other than an overall EE healing claim. *See American Home Prods.*, 871 F. Supp. at 762; *American Express Travel Related Servs. Co.,* 776 F. Supp. at 790.

- 19 -

**REDACTED -- Public Version, filed 1/20/06**

<u>Conclusion</u>

For these reasons, the Court should grant summary judgment in favor of AstraZeneca dismissing TAP's counterclaim in its entirety.

> YOUNG CONAWAY STARGATT
> & TAYLOR, LLP
>
> _[signature]_
> _____
> Josy W. Ingersoll (#1088)
> *jingersoll@ycst.com*
> John W. Shaw (#3362)
> *jshaw@ycst.com*
> The Brandywine Building, 17th Floor
> 1000 West Street
> Wilmington, DE 19801
> (302) 571-6600
>
> Attorneys for Plaintiff AstraZeneca LP

Of Counsel:

Harold P. Weinberger
Jonathan M. Wagner
Kerri Ann Law
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated:  January 12, 2006