**REDACTED -- Public Version, filed 2/7/2006**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTRAZENECA LP, | ) | |
| | ) | |
| Plaintiff, | ) | REDACTED |
| | ) | |
| vs. | ) | C.A. No. 04-1332-KAJ |
| | ) | |
| TAP PHARMACEUTICAL PRODUCTS, INC., | ) | ~~CONFIDENTIAL -- FILED~~ |
| | ) | ~~UNDER SEAL~~ |
| Defendant. | ) | |

**REPLY BRIEF OF PLAINTIFF ASTRAZENECA LP
IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE
THE EXPERT TESTIMONY OF CREIGHTON HOFFMAN**

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6600
jingersoll@ycst.com

Attorneys for AstraZeneca LP

Of Counsel:

Harold P. Weinberger
Jonathan M. Wagner
Kerri Ann Law
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated: January 31, 2006

**REDACTED -- Public Version, filed 2/7/2006**

Table of Contents

Table of Authorities .......................................................................................................... ii

Preliminary Statement ........................................................................................................ 1

Argument ............................................................................................................................. 2

A.    Mr. Hoffman's Testimony is Not Based on  a Reliable Methodology and
      Should Be Excluded ................................................................................................ 2

      1.    Mr. Hoffman's Methodology is Not Reliable ............................................... 4

      2.    Mr. Hoffman Failed to Prove that AstraZeneca's Gained Sales Were
            Caused by the Allegedly False Advertising .................................................. 6

B.    There is No Rational Basis to Calculate Gained Profits by Comparing the Sales
      During the Campaign Period with Sales from the Prior Seven Months ...................... 15

Conclusion ........................................................................................................................... 17

Table of Authorities

Cases:

*3M Innovative Properties Co. v. Dupont Dow Elastomers LLC,*
    361 F. Supp. 2d 958 (D. Minn. 2005)...................................................................................10

*Advanced Medical Optics, Inc. v. Alcon Labs, Inc.,*
    C.A. No. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803 (D. Del. Apr. 7, 2005) ......................5

*Alpo Petfoods, Inc. v. Ralston Purina Co.,*
    913 F.2d 958 (D.C. Cir. 1990).............................................................................................12

*BMMG, Inc. v. American-Telecast Corp.,*
    Civ. No. CV92-3308-HLH, 1993 WL 850564 (C.D. Cal. May 6, 1993),
    *aff'd in unpublished table opinion,* 42 F.3d 1398  (9th Cir. 1994).........................................13

*Bazemore v. Friday,*
    478 U.S. 385 (1986)..............................................................................................................11

*Blue Dane Simmental Corp. v. American Simmental Ass'n,*
    178 F.3d 1035 (8th Cir. 1999) .............................................................................................10

*Burndy Corp. v. Teledyne Indus., Inc.,*
    748 F.2d 767 (2d Cir. 1984) ..................................................................................................9

*Castrol, Inc. v. Pennzoil Quaker State Co.,*
    169 F. Supp. 2d 332 (D.N.J. 2001)....................................................................................9, 12

*Chemipal Ltd. V. Slim-Fast Nutritional Foods Int'l,*
    350 F. Supp. 2d 582 (D. Del. 2004).......................................................................................5

*Coleman v. Dydula,*
    139 F. Supp. 2d 388 (W.D.N.Y. 2001)..............................................................................4, 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993)..............................................................................................1, 3, 15, 16

*Harper House, Inc. v. Thomas Nelson, Inc.,*
    889 F.2d 197 (9th Cir. 1989) ...............................................................................................10

*Heller v. Shaw Indus., Inc.,*
    167 F.3d 146 (3d Cir. 1999) ..................................................................................................5

*Jahn v. Equine Services, PSC,*
    233 F.3d 382 (6th Cir. 2000) ...............................................................................................11

**REDACTED -- Public Version, filed 2/7/2006**

Table of Authorities
(continued)

Page

*Minuteman Int'l, Inc. v. Critical-Vac Filtration Corp.*,
   No. 95 C 7255, 1997 WL 370204 (N.D. Ill. June 27, 1997),
   *aff'd by unpublished order*, 152 F.3d 947, 1998 WL 166583
   (Fed. Cir. Ill. Apr. 3, 1998)......................................................................................10

*Nikkal Industries, Ltd. v. Salton, Inc.*,
   735 F. Supp. 1227 (S.D.N.Y. 1990) ......................................................................9, 10

*Oxford Gene Tech Ltd. v. Mergen Ltd.*,
   345 F. Supp. 2d 431 (D. Del. 2004)..................................................................4, 5, 15

*Reilly v. Nat West Markets Group Inc.*,
   181 F.3d 253 (2d Cir. 1999) ....................................................................................16

*Resolution Trust Corp. v. Farmer*,
   No. 92-3310, 1994 WL 317458 (E.D. Pa. June 24, 1994)......................................16

*Scranton Gillette Communications, Inc. v. Dannhausen*,
   No. 96 C 8353, 1999 WL 558134 (N.D. Ill. July 27, 1999)....................................10

*Sefton v. Webbworld, Inc.*,
   Civ. No. 3:00-CV-0042-AH, 2003 WL 21406292 (N.D. Tex. Apr. 16, 2003) .......14

*Stecyk v. Bell Helicopter Textron Inc.*,
   295 F.3d 408 (3d Cir. 2002) .....................................................................................14

*In re TMI Litig.*,
   193 F.3d 613 (3d Cir. 1999) ...................................................................................4, 6

*Tambrands, Inc. v. Warner-Lambert Co.*,
   673 F. Supp. 1190 (S.D.N.Y. 1987) .........................................................................10

*Estate of Vane v. The Fair, Inc.*,
   849 F.2d 186 (5th Cir. 1988) ....................................................................................14

*Zic v. Italian Government Travel Office*,
   130 F. Supp. 2d 991 (N.D. Ill. 2001) .....................................................................4, 5

Statutes:

Fed. R. Civ. P. 702...................................................................................................1, 16

KL3:2491758 2

<u>Preliminary Statement</u>

Plaintiff AstraZeneca LP ("AstraZeneca") respectfully submits this reply brief in further support of its motion to exclude the proposed expert testimony of Creighton Hoffman pursuant to Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

REDACTED

TAP's principal response is that AstraZeneca's arguments go to the "weight of Mr. Hoffman's testimony, not its admissibility" and that they "should be made by way of cross-examination and the introduction of contradictory testimony." (TAP Br. at 1) (D.I. #138).

REDACTED

KL3:2491758.2

**REDACTED -- Public Version, filed 2/7/2006**

Argument

DR. HOFFMAN'S PROPOSED TESTIMONY DOES NOT
COMPORT WITH FED. R. CIV. P. 702 AND *DAUBERT* STANDARDS

A.    Mr. Hoffman's Testimony is Not Based on
      a Reliable Methodology and Should Be Excluded

REDACTED

REDACTED

KL3:2491758.2

REDACTED -- Public Version, filed 2/7/2006

REDACTED

By mischaracterizing certain case law and selectively citing deposition testimony, TAP crafts two principal arguments in response to AstraZeneca's motion.

REDACTED

:

_____

1

REDACTED

KL3:2491758.2

1.    <u>Mr. Hoffman's Methodology is Not Reliable</u>

REDACTED

KL3:2491758.2

As this Court has noted, "[i]n determining 'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact,' the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue." *Oxford Gene*, 345 F. Supp. 2d at 434 (quoting *Daubert*, 509 U.S. at 591-92). As part of that inquiry, the Court must "examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999); *Advanced Medical Optics, Inc. v. Alcon Labs, Inc.*, C.A. No. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803, at *5 (D. Del. Apr. 7, 2005). These principles apply equally to an expert's damage analysis. *See Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l*, 350 F. Supp. 2d 582, 588 (D. Del. 2004) (excluding damage expert because the "proffered testimony fails to satisfy the requirements imposed by *Daubert* and the Federal Rules of Evidence").

The cases cited by TAP do not hold otherwise. In *Coleman v. Dydula*, 139 F. Supp. 2d 388, 395 (W.D.N.Y. 2001), for example, the court allowed an expert to testify concerning future lost wages, future health insurance costs and work-life expectancy after finding that the challenged testimony "is based on established economic theory and a traceable analysis of fact," not "on personal opinion, conjecture and speculation." *Id.* at 397. In that case, the court found that the expert's proffered testimony was admissible because it was based on "methods and techniques [that] are widely known and accepted among forensic economists" and the expert could cite publications supporting his methodology. *Id.* at 391-93.

Similarly, in *Zic v. Italian Government Travel Office*, 130 F. Supp. 2d 991, 1000 (N.D. Ill. 2001), the court allowed an expert to testify with respect to plaintiff's lost earnings, having performed "ten pages of calculations of Mr. Zic's damages with adjustments for cost of

living, social security and period salary increases." As the court explained: "This is not simple arithmetic." *Id.*

In *In re TMI Litig.,* 193 F.3d 613, 665 (3d Cir. 1999), the Court applied the standards set forth in *Daubert* and Federal Rule of Evidence 702 to exclude expert opinions that were not based on a reliable methodology and/or did not fit the facts of the case. TAP suggests that the Third Circuit lowered reliability standards in this case, quoting the Court's statement that "the standard for determining the reliability 'is not that high.'" But when this sentence is read in the context of the case, it is clear that the court was simply explaining that "plaintiffs do not 'have to prove their case twice — they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they *only have to demonstrate by a preponderance of the evidence that their opinions are reliable."* *Id.* at 665. The Court left no doubt that "proposed testimony must be supported by appropriate valuation — i.e., 'good grounds' based on what is known." *Id. at 663 (citing* Daubert, *509 U.S. at 590).*

2.

REDACTED

KL3:2491758.2

**REDACTED -- Public Version, filed 2/7/2006**

REDACTED

KL3 2491758 2

REDACTED -- Public Version, filed 2/7/2006

REDACTED

---
2

REDACTED

- 8 -

REDACTED -- Public Version, filed 2/7/2006

REDACTED

REDACTED

As shown in AstraZeneca's Opening Brief at 23-26, case after case has held that a plaintiff in a

false advertising case is not entitled to an award of its lost profits or its competitor's gained

profits unless it proves that such loss or gain was caused by the allegedly false advertising. *See*

*Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 771 (2d Cir. 1984) ("[A] plaintiff who

establishes false advertising in violation of § 43(a) of the Lanham Act will be entitled to such

damages as were caused by the violation."); *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F.

Supp. 2d 332, 343 (D.N.J. 2001) (finding that Castrol must "prove that Pennzoil's increase in

profits is causally related to Pennzoil's multimedia advertising campaign"). *See, e.g., Nikkal*

*Industries, Ltd. v. Salton, Inc.*, 735 F. Supp. 1227, 1233 (S.D.N.Y. 1990) (excluding the expert

- 9 -

testimony of plaintiff's expert that Nikkal had lost profits as a result of Salton's false advertisements because plaintiff's expert did not "provide for the impact of other significant factors" which could have affected Nikkal's profits); *Tambrands, Inc. v. Warner-Lambert Co.,* 673 F. Supp. 1190, 1197 (S.D.N.Y. 1987) (rejecting damage calculation that was pure speculation and failed to take into account "rapidly changing nature of the Kit market"); *3M Innovative Properties Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 973 (D. Minn. 2005) (discounting an expert report that "simply calculates damages after assuming that the false advertising caused [plaintiff's] lost profits; it does not provide any insight into or evidence on causation"); *Scranton Gillette Communications, Inc. v. Dannhausen*, No. 96 C 8353, 1999 WL 558134, at *3 (N.D. Ill. July 27, 1999) (granting judgment as a matter of law with respect to a Lanham Act plaintiff's claim of lost profits where "plaintiff offered no evidence that even one of the 700 recipients of the Greenhouse Business promotional literature declined to contract with it in reliance on [defendant's] false statements"); *Blue Dane Simmental Corp. v. American Simmental Ass'n*, 178 F.3d 1035, 1043 (8th Cir. 1999) (affirming judgment as a matter of law when the only evidence of causation was plaintiff's own testimony that it believed its sales dropped because of defendant's conduct); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989) (reversing verdict on Lanham Act claim when there was no evidence linking customer confusion to any loss of business); *Minuteman Int'l, Inc. v. Critical-Vac Filtration Corp.*, No. 95 C 7255, 1997 WL 370204, at *13 (N.D. Ill. June 27, 1997) (granting summary judgment dismissing Lanham Act claim when, despite evidence of lost sales, counterclaim plaintiff admitted having "no direct testimony from consumers or survey experts or anything like that which would tend to establish causality between the lost sales" and the false

KL3:2491758.2

advertising), *aff'd by unpublished order*, 152 F.3d 947, 1998 WL 166583 (Fed. Cir. Ill. Apr. 3, 1998).

In support of its claim that courts do not require an expert to eliminate all possible factors, TAP cites four cases. Not a single one holds that an expert is not required to prove that the false advertising caused the purported damage to a Lanham Act plaintiff and all are distinguishable factually. For example, in *Jahn v. Equine Services, PSC*, 233 F.3d 382, 390 (6th Cir. 2000), which was a veterinary malpractice case, not false advertising case, the court allowed plaintiff's experts to opine on the cause of death of a pony even though the veterinarian experts could not definitively provide a cause of death. But in that case, the defendant's inability to conclusively determine the pony's cause of death was due to defendant's failure to keep medical records: "[b]oth experts noted that their analysis was hampered by the lack of records, and it seems patently unfair to allow Equine Services to benefit from what seems to be deplorable, or perhaps even negligent, absence of record-keeping." *Id.* at 390.

Similarly, in *Bazemore v. Friday*, 478 U.S. 385, 400 (1986), which was decided before *Daubert* and is also not a Lanham Act case, the Court allowed expert testimony based on a regression analysis that did not include "all measurable variables thought to have an impact on salary level." *Id.* The Court did so, however, only after finding that the regression analysis accounted for all of the major factors: "It can hardly be said, absent some other infirmity, that an analysis which accounts for the major factors 'must be considered unacceptable as evidence of discrimination.'" The court specifically noted that "[t]here may, of course, be some regressions so incomplete as to be inadmissible as irrelevant, but such was clearly not the case here." *Id.* at 400 n.10.

TAP also relies upon *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 969 (D.C. Cir. 1990), which it claims provides that "[w]hen assessing these actual damages, the district court may take into account the difficulty in proving an exact amount of damages from false advertising, as well as the maxim that 'the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." But TAP conveniently omits the very next sentence in the opinion: "At the same time, the court must ensure that the record adequately supports all items of damages claimed and establishes a causal link between the damages and the defendant's conduct, lest the award become speculative or violate section 35(a)'s prohibition against punishment."

Citing *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 343 (D.N.J. 2001), TAP also claims that Mr. Hoffman has no obligation to determine whether the "true claims" in the advertising had any effect on Nexium's sales. According to TAP, the *Castrol* court "found that the defendant's increase in profits was 'causally related to Pennzoil's multimedia advertising campaign,' not to the false and misleading claims within the individual ads that comprise the false and misleading campaign." (emphasis added by TAP). But the issue in *Castrol* had nothing to do with whether an expert is required to determine the impact of the specific false statements in the advertising as opposed to the advertising as a whole. Rather, in that case, the Court was considering whether plaintiff should be entitled to an award of disgorgement of profits. The Court noted that the only one of defendant's arguments that "merits any credence is its causation argument." *Id.* at 343. As the Court explained:

> Surely, Castrol must demonstrate with reasonable certainty the portion of Pennzoil's profits attributable to the willful and intentional false advertising before the Court can order disgorgement. Toward this end, the Court shall afford Castrol reasonable discovery into Pennzoil's profits for the relevant time

- 12 -

period encompassed by the false advertising. Thereafter, the Court shall hold a trial in the nature of an accounting to determine whether Castrol is able to prove that Pennzoil's increase in profits is causally related to Pennzoil's multimedia campaign.

Other cases that have directly considered this issue have held that the alleged ill-gotten gains must be caused by the alleged false statements, not the advertisements as a whole. For example, in *BMMG, Inc. v. American-Telecast Corp.*, Civ. No. CV92-3308-HLH, 1993 WL 850564, at *4 (C.D. Cal. May 6, 1993), *aff'd in unpublished table opinion*, 42 F.3d 1398 (9th Cir. 1994), the court granted summary judgment dismissing plaintiff's Lanham Act false advertising claim because plaintiff offered no competent proof that defendant's alleged false statements contained in the challenged commercial caused plaintiff any damage. As here, the allegedly false statements were found in a commercial containing other statements that plaintiff did not dispute. Plaintiff offered the opinion of its damages expert that the commercial in question caused a diminution in plaintiff's sales. The Court held that the expert's opinion did not create a triable issue of fact as to whether plaintiffs suffered any damages:

> In considering the declaration of [plaintiff's expert] on the merits of this motion, it is immediately apparent that his basic assumption (given to him by counsel) is that he is to compare the sales generated by the defendants' infomercial with any drop in sales by plaintiffs to see if the one was the cause of the other. He opines that there is such a causal connection. This would be sufficient to establish a triable issue of fact if that comparison was relevant on this motion, but it is not. Rather than look to the entire infomercial run by the defendants, it is necessary to look at the causal connection between the falsities in the statements ... with the decrease in the sales of the plaintiffs. No attempt has been made to do this. *Since it is the diminution in sales caused by the falsities which is at issue, there is no evidence that the falsities as to which there is sufficient evidence to provide an issue of fact caused any damage.*
>
> There being no evidence that the false advertising caused any damage, judgment must be entered on the Lanham Act claim.

KL3:2491758.2

*Id.* (emphasis added).

Similarly, in *Estate of Vane v. The Fair, Inc.*, 849 F.2d 186 (5th Cir. 1988), the Fifth Circuit Court of Appeals affirmed the lower court's refusal to award plaintiff any of defendant's profits in a copyright infringement claim predicated on defendant's improper use of plaintiff's photographic slides in defendant's commercial. The testimony of plaintiff's expert provided "only a lump-sum figure for profits attributable to the television commercial that contained infringed material as a whole without accounting for the fact that the infringed material constituted only a fraction of any given commercial." *Id.* at 188. The Court noted that "[s]ome portion of the profits may have been attributable to the infringement, but much of the profits must be attributed to noninfringing aspects of the commercials." *Id. See also Sefton v. Webbworld, Inc.*, Civ. No. 3:00-CV-0042-AH, 2003 WL 21406292, at *4 (N.D. Tex. Apr. 16, 2003) (refusing to award plaintiff any portion of defendant's profits where plaintiff "failed to prove that portion of [defendant's] gross profits which were attributable to Defendant's infringement of his copyrighted images").

Finally, TAP claims that AstraZeneca can simply inquire on cross-examination into any factors that Mr. Hoffman failed to consider, citing as support the Third Circuit's decision in *Stecyk v. Bell Helicopter Textron Inc.*, 295 F.3d 408, 414 (3d Cir. 2002). What the court actually held in that case, however, was that once "the foundational requirements for admissibility" are met, then the party can highlight weaknesses in the report through effective cross-examination. *Id.*

REDACTED

- 14 -

KL3:2491758.2

REDACTED

B.      REDACTED

REDACTED

- 15 -

REDACTED

Both TAP

and its expert are bound by the testimony of this witness. *See Reilly v. NatWest Markets Group*

*Inc.,* 181 F.3d 253, 268 (2d Cir. 1999) ("To satisfy Rule 30(b)(6), the corporate deponent has an

affirmative duty to make available 'such number of persons as will' be able 'to give complete,

knowledgeable and binding answers' on its behalf."); *Resolution Trust Corp. v. Farmer,* No. 92-

3310, 1994 WL 317458, *1 (E.D. Pa. June 24, 1994) ("The purpose behind Rule 30(b)(6) is to

create testimony that will bind the corporation."). TAP cannot discount the testimony of its

corporate representative in order to give credence to Mr. Hoffman's choice of a different

comparative period than the one TAP uses to analyze its sales.

REDACTED

KL3:2491758.2

**REDACTED -- Public Version, filed 2/7/2006**

<u>Conclusion</u>

For these reasons, the Court should exclude the testimony of Creighton Hoffman

in its entirety.

Young Conaway Stargatt & Taylor, LLP

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
1000 West Street — 17th Floor
Wilmington, DE 19801
(302) 571-6600
jingersoll@ycst.com

Attorneys for Plaintiff AstraZeneca LP

Of Counsel:

Harold P. Weinberger
Jonathan M. Wagner
Kerri Ann Law
Jeremy A. Cohen
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Dated:  January 31, 2006

- 17 -